1  TAMANY J, VINSON BENTZ (SBN 258600)
   *tamany.bentz@us.dlapiper.com*
2  JASON T. LUEDDEKE (SBN 279242)
   *jason.lueddeke@us.dlapiper.com*
3  BENJAMIN GRUSH (SBN 335550)
   *benjamin.grush@us.dlapiper.com*
4  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars
5  Suite 400 North Tower
   Los Angeles, California 90067-4735
6  Telephone:  310.595.3000
   Facsimile:   310.595.3300
7
   Attorneys for Plaintiff
8  BREAKING CODE SILENCE

9  DIRK O. JULANDER (SBN 132313)
   *doj@jbblaw.com*
10 CATHERINE A. CLOSE (SBN 198549)
   *cac@jbblaw.com*
11 M. ADAM TATE (SBN 280017)
   *adam@jbblaw.com*
12 **JULANDER, BROWN & BOLLARD**
   9110 Irvine Center Drive
13 Irvine, California 92618
   Telephone:  949.477.2100
14 Facsimile:   949.477.6355

15 Attorneys for Defendants
   KATHERINE MCNAMARA and
16 JEREMY WHITELEY

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19

20 BREAKING CODE SILENCE, a            Case No. 2:22-cv-02052-MAA
   California 501(c)(3) nonprofit,
21
22              Plaintiff,            **STIPULATED ORDER RE:**
                                      **AMENDED JOINT**
23      v.                           **E-DISCOVERY PLAN AND**
                                      **PROTOCOL FOR DISCOVERY OF**
24 KATHERINE MCNAMARA, an             **ELECTRONICALLY STORED**
   individual; JEREMY WHITELEY, an    **INFORMATION**
25 individual; and DOES 1 through 50,
   inclusive,
26
27              Defendants.
28

1    **1.    INTRODUCTION**

2    Plaintiff and Defendants (collectively, the "Parties") mutually agree to the

3    following protocol ("Protocol") regarding the discovery of electronically stored

4    information ("ESI") and hard copy documents in the above-captioned case.  This

5    Protocol is intended to provide for effective and efficient discovery in accordance

6    with the Federal Rules of Civil Procedure.  Nothing in this Protocol alters either

7    Party's rights, obligations, and responsibilities under the Federal Rules of Civil

8    Procedure.

9    **2.    DEFINITIONS**

10    2.1    <u>Action</u>:  the above captioned matter, *Breaking Code Silence vs.*

11    *Katherine McNamara et al.*, Case No. 2:22-cv-02052-MAA (C.D. Cal.).

12    2.2    <u>Document</u>:  a collection of pages, or a digital file, constituting a

13    logical single communication of information produced or inspected as a single

14    record pursuant to Federal Rules of Civil Procedure 26 and 34, including hard copy

15    and ESI.

16    2.3    <u>Electronically Stored Information or "ESI"</u>:  any information or

17    data that is originally created, manipulated, or used, communicated, and stored in

18    digital format.  This definition expressly excludes information that was prepared or

19    previously available in hard copy but which converted and now maintained in digital

20    format for reasons of business convenience or as otherwise may have been

21    necessary.

22    2.4    <u>Native Format</u>:  the associated file format defined by the original

23    application with which an electronic file was created.

24    2.4.1    <u>Native File</u>: ESI that is stored and produced in the file

25    format in which it was originally created, such as .DOCX, .XLSX, .PPTX, etc., as

26    opposed to a Processed File.

27

28

2.4.2    Processed File: a Native File that has been processed into a .PDF file, a .TIFF file, a .CSV file, a .TXT file, or a similar format used for document productions allowing for searchable ESI.

2.5    Hard Copy Document:  any Document that, in the usual course of business, is kept in physical or paper form, as opposed to as ESI.

2.6    Metadata: (i) all information embedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File which describes the characteristics, origins, usage or validity of the electronic file or (ii) all information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

2.7    Bates Number:  a page level unique alpha-numeric identifier associated with every document produced, including physical sheets of paper, electronically stored TIFF images, PDF pages, or other tangible thing, consisting of (1) an alphabetic portion identifying the Producing Party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each page of physical sheets of paper, electronically stored TIFF images, or other tangible thing is unique.  Parties producing Documents as Native Files will assign a single Bates number to the Native File, in sequence with the other numbers in the production of Documents.

2.8    Extracted Text:  the text extracted from a Document, and includes all header, footer, and document body information when available.

2.9    OCR Text:  searchable text from a Document generated by means of optical character recognition performed using appropriate software.

2.10    Load File:  an electronic file containing information identifying a set of paper-scanned images or Processed Files and indicating where individual

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load File should also contain data relevant to the individual Documents, including extracted and user-created Metadata as required by Exhibit A.

2.11   <u>Forensic Copy or Clone</u>:  a bitsream image, i.e., an exact, bit-for-bit copy of a digital file storage device, such as, without limitation, computer hard drive, mobile device flash memory, USB drives, external hard disk drives, and any other device that stores digital data, in which every bit of data is written onto a new file storage device.

2.12   <u>Discoverable Information</u>:  all documents and ESI that are discoverable in this litigation pursuant to the Federal Rules of Civil Procedure.

2.13   <u>Party</u>:  any party to this Action, including all its officers, directors, employees, consultants, retained experts, and Outside Counsel (and their support staffs).

2.14   <u>Custodian</u>:  the person from whom a Document was collected.

2.15   <u>Non-Custodial Sources</u>:  shared data repositories maintained in the ordinary course of business and not necessarily associated with the individual Custodian(s).  Examples of Non-Custodial Sources may include, but are not limited to, shared file cabinets, shared network drives or fileservers, electronic document management systems, or databases.

2.16   <u>Outside Counsel</u>:  the attorneys and employees of any external law firm representing a Party to this Action.

2.17   <u>Producing Party</u>:  a Party which is producing Discoverable Information.

2.18   <u>Receiving Party</u>:  a Party which is receiving Discoverable Information.

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

2.19   <u>Privileged Information</u>:  Documents or ESI protected from disclosure by the attorney client privilege, work production protection, or other applicable protections or privileges.

2.20   <u>Sensitive Personal Identifying Information ("PII")</u>:  includes information protected from disclosure by specific laws or standards as well as sensitive personal information which is not likely to be relevant to the issues in this matter, including:

2.20.1   Protected Health Information ("PHI") includes information protected from public disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), pursuant to Title 45, Chapter 164 of the Code of Federal Regulations;

2.20.2   Payment Card Information ("PCI") that identifies payment card details, account numbers of individual customers; and

2.20.3   Social Security numbers, driver's license number, tax payer identification numbers, passport numbers, state-issued identification numbers, financial account numbers, dates of birth, home address, personal mobile telephone number, or personal email address.

**3.     PRESERVATION**

3.1   <u>What and Whose Devices</u>.  Each Party represents that it has taken reasonable steps to preserve reasonably accessible sources of ESI with respect to the Custodians set forth in paragraph 4.3 and the data sources set forth in paragraph 4.4

3.2   <u>Interdiction of any Document Destruction Program</u>.  To the extent the Parties have not already done so, they agree to disable any automatic deletion program with respect to discoverable sources of ESI.

3.3   <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>.  By preserving documents or ESI for the purposes of this Action, the

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

1   Parties are not conceding that such material is discoverable, nor are they waiving
2   any claim of privilege.

3   **4.     SEARCH PROTOCOL**

4       4.1     <u>Production in Accordance with Federal Rules</u>.  The Parties agree
5   to identify, collect, and produce responsive documents and ESI in accordance with
6   the Federal Rules of Civil Procedure.

7       4.2     <u>Date Range</u>.  The Parties agree that the applicable date range for
8   ESI searches is February 1, 2020 through the present.

9       4.3     <u>Custodians</u>.  Plaintiff designates Vanessa Hughes, Jennifer
10  Magill, Katherine McNamara, and Jeremy Whiteley as Custodians whose ESI it will
11  search.  Defendants designate Breaking Code Silence ("BCS"), Vanessa Hughes,
12  Jennifer Magill, Jesse Jensen, Noelle Beauregard, Lenore Silverman, Eugene
13  Furnace, the entire BCS Board of Directors, Bobby Cook, Megan Hurwitt, Arianna
14  Conroyd, Shelby Kirchoff and anyone else who had administrative permissions on
15  the website or any of BCS's accounts or systems at the time the alleged hacking
16  took place.

17      4.4     <u>Data Sources</u>.  The Parties agree that the data sources include the
18  following, so long as they are in the possession, custody, or control of any of the
19  Parties and reasonably accessible:  E-mail accounts, cell phones, Facebook
20  accounts, Twitter accounts, Skype accounts, and Slack accounts, Google Drives, cell
21  phones (including any backups of the cell phones and all personal and BCS-
22  controlled computing devices of Vanessa Hughes, Jennifer Magill, Jesse Jensen,
23  Bobby Cook, Katherine McNamara, and Jeremy Whiteley), text messages, Apple
24  Messages, computers, Zoom accounts, Hootsuite logs, Hootsuite audit data,
25  Hootsuite billing history, Instagram logs, Instagram audit history, PayPal audit logs,
26  Slack audit logs, server logs, Cloudways databases, server and audit and access logs
27  (including all backups of the Cloudways web server 90 days before and after the
28  alleged incidents), WordPress databases, server and audit and access logs (including

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

1    all backups of the Wordpress files 90 days before and after the alleged incidents),

2    WhatsApp chat logs, Telegram chat logs, Google admin audit logs, AdWords audit

3    logs, iCloud, Box.net, Google admin security logs, system logs, TikTok audit logs,

4    Facebook messages, Facebook audit logs for BCS page, YouTube audit logs, Signal

5    chatlogs and any other tech-based communications exchanged between the

6    custodians pertinent to this matter or the alleged hacking incident.

7         To the extent a Party determines that any source is outside its possession,

8    custody, or control or reasonably searchable and/or accessible, the Parties agree to

9    meet and confer regarding any such source, and if no agreement is reached, any

10   Party may submit the issue to the Court.

11              4.5    Searching ESI for Responsive Information.  Each Producing

12   Party shall design and implement the industry standard and approved methods it

13   uses to identify, cull, and review its potentially responsive ESI based on its

14   knowledge and understanding of its own data, the facts and issues involved in the

15   Action, and the Receiving Party's discovery requests.  Before conducting a

16   document collection and review, the Parties will exchange the search terms they

17   intend to use to identify potentially relevant documents for production, and will

18   meet and confer regarding any requested revisions.  The Producing Parties also have

19   the right to utilize predicative coding or technology assisted review, filters, email

20   threading, or other analytics to identify and review potentially responsive ESI to

21   identify relevant Documents.  A Producing Party may also conduct a targeted

22   collection of sources likely to contain responsive materials (e.g., file folders on a

23   given hard drive).  In the event one Party has a good faith belief the other Party has

24   violated this Order, the Parties agree to mutually disclose the methods used to

25   identify and cull potentially responsive ESI, including but not limited to search term

26   syntax, sources searched, predictive coding, technology assisted review or other

27   analytics.

28

**5.     NOT REASONABLY ACCESSIBLE ESI**

5.1     <u>Not Reasonably Accessible ESI</u>.  The Parties need not preserve, collect, produce, or identify on a privilege log the following categories of ESI for this Action:

(a)     With the exception of the Cloudways and Wordpress server backups, server logs, application logs and the other backups of data sources identified in Section 4.4 above (to the extent they are reasonably accessible), data stored in backup system for purposes of system recovery or information recovery, including but not limited to, disaster recovery back up tapes, continuity of operations systems, and data or system mirrors or shadows except to the extent that such sources are known to be the only sources of Discoverable Information;

(b)     Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

(c)     Deleted, erased, or overwritten computer files, whether fragmented or whole which were deleted in the regular course of business before there was a duty to preserve ESI.

(d)     Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, includes internet history, web browser cache and cookie files wherever located.

(e)     Data stored on photocopiers, scanners, and fax machines;

(f)     Server, system, or network logs, except as set forth in Section 4.4 or 5.1(a).

5.2     <u>Other Types of ESI May Not Be Reasonably Accessible</u>. Nothing in this Protocol prevents any Party from asserting, in accordance with the

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

## 6.   PROPORTIONALITY

6.1    The Parties agree to take into account the proportionality considerations addressed in Federal Rules of Civil Procedure for purposes of preservation and production of ESI and hard copy documents in this Action.  This Protocol is not intended to expand the Parties' obligations under Federal Rules of Civil Procedure 1, 26, and 34.

6.2    The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol.

## 7.   PHASING

7.1    The Parties agree to phase ESI production as follows:

Phase I:  The Parties will immediately produce all Hard Copy Documents responsive to any Requests for Production of Documents previously propounded prior to the date of this Stipulated Order.

Phase II:  The Parties will produce, on a rolling basis, ESI from the data sources and Custodians identified in paragraphs 4.3 and 4.4.

Phase III:  To the extent that a Party requests that the other Party search additional data sources or Custodians, the Parties agree to meet and confer regarding any such request.

## 8.   PRODUCTION

8.1    Production Format and Metadata.   Where practicable, the Parties shall produce documents and ESI, including metadata, according to the format specified in Exhibit A, attached hereto.  To the extent a Producing Party reasonably expects production of specific documents or ESI in the format described in Exhibit A will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to

DLA Piper LLP (US)
WWW.DLAPIPER.COM

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

1    Federal Rule of Civil Procedure 34(b)(2)(E).  The Parties will transmit production
2    files digitally, via download from a password-protected file-store.

3             8.2    <u>Privacy Redactions</u>.   Producing Parties may redact Protected
4    Personally Identifying Information from responsive Documents prior to production.
5    If Personally Identifying Information is redacted, the Producing Party will label the
6    redactions as "Redacted-PII."  Any Receiving Parties who receive Documents
7    including Protected Personally Identifying Information shall treat such documents as
8    Confidential pursuant to the Stipulated Protective Order entered in this matter.

9             8.3    <u>Deduplication</u>.  Producing Parties will not remove duplicate ESI
10    from their respective productions.

11             8.4    <u>Review and Production of Hard Copy Documents</u>.  Each
12    Producing Party is entitled to collect, scan, and review its hard copy documents
13    before producing only those documents which are responsive and not privileged or
14    subject to other protection in the document production format described in Exhibit
15    A.

16    **9.     PRIVILEGE**

17             9.1    <u>Non-Waiver</u>.  Pursuant to Fed. R. Evid. 502(d), the production of
18    a privileged or work-product-protected document, whether inadvertent or otherwise,
19    is not a waiver of privilege or protection from discovery in this case or in any other
20    federal or state proceeding. For example, the mere production of privileged or work-
21    product-protected documents in this case as part of a mass production is not itself a
22    waiver in this case or in any other federal or state proceeding.

23             9.2    <u>Privilege Logs</u>.  The parties shall comply with the Federal Rules
24    of Civil Procedure regarding the production of privilege logs, as set forth more fully
25    below. With the exception of those materials described in paragraph 9.3 that need
26    not be logged, any document falling within the scope of any request for production
27    or subpoena that is withheld on the basis of a claim of privilege, work product, or
28    any other legal privilege is to be identified by the Producing Party in a privilege log,

1  which the Producing Party shall produce in an electronic format (i.e., Excel format)

2  that allows text searching, sorting, and organization of data.

3          9.3    The parties may elect to produce a categorical privilege log, a

4  metadata privilege log, or a log in any other format, provided that the parties include

5  the information required by Fed. R. Civ. P. 26(b)(5) in a manner that will enable the

6  Receiving party to assess the claim.

7          9.4    No privilege log entries shall be required as to the following

8  categories of materials, and any applicable privilege or protection shall be preserved

9  even if such materials are not listed on a Producing Party's privilege log:

10         (a)    Attorney-client communications between a party and its counsel

11  after the start of litigation as to that party. For purposes of this Order only, the

12  litigation is deemed to have started on the day that a party first consulted an

13  attorney regarding any of the issues out of which this lawsuit arises.

14         (b)    Attorney work product created after the Party's retention of

15  counsel.

16         (c)    Internal communications within a law firm or the legal

17  department of a party after the start of litigation.

18         (d)    Documents and communications between outside counsel or

19  outside counsel and in-house counsel for the parties after the start of the

20  litigation.

21         (e)    Documents and communications between and/or among outside

22  counsel that has been retained by a party to this litigation and the party,

23  litigation technology consultants or providers, any non-testifying experts, and,

24  with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying

25  experts.

26         (f)    Communications between Parties and their respective spouses.

27         (g)    Documents and Communications between Parties and their

28  respective medical providers.

(h)     Tax returns and related documents.

(i)     Privilege redactions made on the face of produced documents, provided that the redaction clearly indicates that privilege is being asserted and the context of the document enables the Receiving party to reasonably assess the claim.

**10.     FORENSIC EXAMINATION**

10.1    If any Party requests a Forensic Copy of the entirety of a device or drive with potentially responsive or relevant data, files, or information for the purpose of a forensic examination, the independent third-party examiner retained by the Party requesting the Forensic Copy or Copies will be given access to the device or drive for the purpose of making the Forensic Copy or Copies upon reasonable notice during regular business hours. The Party requesting the Forensic Copy or Copies shall bear the cost of the creation and storing of the Forensic Copy or Copies.  The Parties will ensure the Forensic Copy or Copies remain(s) intact and accessible throughout the duration of this litigation and any appeals thereto.

10.2    The Parties will meet and confer if any party believes that a forensic examination of any device(s) is necessary to recover latent data (e.g., deleted or partially overwritten data). If the Parties agree that a forensic examination is appropriate, they will select a third-party neutral qualified to perform the forensic examination. The neutral will prepare a detailed forensic examination protocol for each type of device to be examined. The Parties will meet and confer to resolve any objections to the protocol. Each Party will receive a complete copy of all forensic images and any accompanying report prepared by the neutral.  If the Parties are unable to agree on either the need for a forensic examination or any part of the protocol prepared by the third-party neutral, the Party requesting the forensic examination or objecting to the protocol shall file a motion within 10 days of the parties' conference, including a written statement by each party of its position

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

concerning the matter. The cost of any forensic examination will be borne by the Party requesting it unless otherwise ordered by the Court.

**11.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.


Dated:  September 6, 2022        /s/ Tamany J. Vinson Bentz
                                 Counsel for Plaintiff

                                 /s/ Catherine Close
                                 Counsel for Defendants


**IT IS SO ORDERED** that the foregoing Stipulation is approved.

Dated: _____, 2022    _____
                                       HON. MARIA A. AUDERO

**EXHIBIT A**

**Production of Data**

**I.     Hard Copy Documents:**

1.      All hard copy documents should be scanned and produced as single-page, Group IV, 300 DPI TIFF images with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT). The database/metadata load file should contain the metadata fields listed below in Section I.A. All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. the OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

2.      All image files and text files shall be named the same as the starting bates number for each document.  Each TIFF image shall be endorsed with bates numbers that increment by one for each page.

3.      The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks. The Producing Party is not required to unitize if the documents are not kept that way in the ordinary course of business.

4.      Documents shall be produced as black and white TIFF images. Upon written request, a party shall produce color images for a reasonable number of selected documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting 75% or higher. Each color document image file shall be named with the unique Bates Number of the first page of the document in question followed by the file extension JPG. This includes, but is

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

not limited to, color on graphs, charts, presentations, edits, or highlights that were made by hand, or electronically, on the original.

     5.    **Database/Metadata Fields for Hard Copy Documents**:

1.     Production Number Begin

2.     Production Number End

3.     Production Attachment Range Number Begin

4.     Production Attachment Range Number End

5.     Confidentiality Designation

6.     Production Doc Page Count

7.     All Custodians

8.     Source

9.     Volume

**II.**    **Electronically Stored Information:**

     6.    With the exception of Section VII, below, all Electronically Stored Information ("ESI") that is deemed responsive and not privileged is to be produced in 300 DPI Group IV black and white Tagged Image File Format (.TIFF or .TIF) files. The TIFF files shall be produced in single-page format along with image load files (.OPT file and/or .LFP file). Document images should reveal or show all hidden information. Upon written request, a party shall produce color images for a reasonable number of selected documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images. with the quality setting 75% or higher. Each color document image file shall be named with the unique Bates Number of the first page of the document in question followed by the file extension JPG.

     7.    Any document that cannot be converted to TIFF format shall be represented in the production with a placeholder TIFF image that bears the legend "This document cannot be converted to TIFF," along with its corresponding metadata in the Concordance DAT file.

8.     During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in the database/metadata load file.

9.     The metadata values that are to be extracted and produced in the database load files (.DAT file using concordance standard delimiters) are those maintained in the usual course of business and are identified in Section XII.

10.    No Party will have the obligation to manually generate information to populate metadata fields if such fields cannot be reasonably extracted or generated from the document using an automated process, except that parties will generate Confidentiality, Bates fields, and Native/Text Link fields.  The Producing Party may redact or remove from production protected or privileged metadata.

11.    To the extent reasonably available, the "Custodian" fields with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the individual custodian from whose hard drive such ESI has been gathered.

## III.   <u>Families of Documents:</u>

12.    For any documents that contain an attachment (for example, email), to the extent available, the fields listed in Section XII should be produced as part of the metadata load file for both the parent and child documents.

13.    To the extent a document is part of a "document family" with a combination of responsive, privileged, and/or non-responsive documents: (i) the privileged documents will be represented in the production with a placeholder TIFF image that bears the legend "Document Withheld as Privileged"; and (ii) the non-responsive documents will be represented in the production with a placeholder TIFF image that bears the legend "Non-Responsive Document." The TIFF image(s) shall be endorsed with a sequential Bates number.

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

## V.   <u>Handwritten Notes or Other Alterations:</u>

14.   If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If such markings/alterations are made in color, the documents shall be produced in color upon reasonable request.

15.   If the producing party becomes aware of any file that was incorrectly filtered during the de-duplication process, the producing party shall promptly notify the other party and produce the incorrectly filtered file.

## VI.   <u>Last-in-time Production:</u>

16.   A party may produce a single copy of a responsive document insofar as no non-duplicative information is lost as a result. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate email threads as follows: in an email thread, only the last-in-time portion of the thread that is relevant needs to be produced if all previous emails in the thread are contained within the final message(s). Where an email is not last-in-time and contains an attachment, that email and its attachment shall be produced if relevant and non-privileged.

## VII.   <u>Production of Excel, Other Spreadsheets and PowerPoints:</u>

17.   Excel spreadsheets, CSV files, and other spreadsheet type files shall be produced in native format with a TIFF placeholder bearing the legend "Produced in Native File Format." The TIFF image shall be endorsed with a sequential Bates number and the produced native file named to match this Bates number. The metadata load file shall contain a link to the produced native file via data values called "Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

18.     To the extent MS-Excel spreadsheets contain information subject to a claim of privilege they should be redacted natively, and the redacted native copy should be produced in accordance with Paragraph 14.

19.     PowerPoint files shall be imaged with speaker notes showing in the image, as well as any hidden content displayed in the image.  The Producing Party may produce PowerPoint files in native format with a TIFF placeholder bearing the legend "Produced in Native File Format."  The TIFF image shall be endorsed with a sequential Bates number and the produced native file named to match this Bates number.  The metadata load file shall contain a link to the produced native file via data values called "Native Link."  The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

## VIII.  **Production of Database or Structured Data:**

20.     If a database or other source of structured data contains responsive information, the parties will produce reports or exports from those data sources in a reasonable usable electronic file to the extent practicable.  Otherwise, the parties may meet and confer regarding such format of production.

## IX.     **Production of Audio and Video Files:**

21.     If audio and/or video recordings are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording.  Before meeting and conferring, the producing party will have information sufficient to identify responsive audio and/or video recordings.

## X.     **Bates Numbering:**

22.     Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI but should not be included in the extracted text of ESI, unless the document is a scanned copy of a hard copy document, or the document has been redacted.  For documents produced in native format, the original file name and the Bates number for each native file

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

shall be produced, and the native files shall be named the same as the starting Bates number for that document or file.

**XI.   Redactions:**

23.    In accordance with the Stipulated Protective Order entered for this matter, each redaction on a document shall be completed using white or colored boxes that contain the word "Redacted" at the point of each redaction on each page of the redacted document.  The redacted image file should be produced along with OCR text of the redacted file.  If metadata displayed in the imaged document was redacted, then that metadata should be excluded from the load file.  The reason for redaction (privilege, privacy, non-responsive business information etc.) shall be provided on the face of the redaction or in accompanying metadata.

**XII.   Metadata Fields:**

| Field Name | Description | Example / Format |
|---|---|---|
| PRODBEG | The Document ID number of first page of the document. | ABC0000001 |
| PRODEND | The Document ID number of the last page of a document. | ABC0000003 |
| PROD BEGATTACH | The Document ID number of the first page of the parent document. | ABC0000001 |
| PROD ENDATTACH | The Document ID number of the last page of the last attachment. | ABC0000008 |
| CONFIDENTIALITY DESIGNATION | The level of confidentiality assigned to the document by Counsel | Confidential, Highly Confidential |
| PGCOUNT | The number of pages in a document. (image records) | Numeric |

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

| Field Name | Description | Example / Format |
|---|---|---|
| ALL CUSTODIANS | All of the custodians / sources of a document from which the document originated. | Smith, Joe; Doe, Jane |
| EMAIL SUBJECT | The subject line of the e-mail. | |
| EMAIL AUTHOR / FROM | The display name and e-mail of the author of an e-mail. | Joe Smith <jsmith@email.com> |
| EMAIL RECIPIENTS / TO | The display name and e-mail of the recipient(s) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com |
| EMAIL CC | The display name and e-mail of the copy(ies) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com |
| EMAIL BCC | The display name and e-mail of the blind copy(ies) of an e-mail. | Joe Smith <jsmith@email.com>; tjones@email.com |
| EMAIL ATTACHMENT COUNT | The number of attachments to a parent. | Numeric |
| EMAIL ATTACHMENT NAME | The original file name of attached record. | Attach1.doc |
| RECEIVEDDATE | The date the document was received. | MM/DD/YYYY |
| RECEIVED TIME | The time the document was received. | HH:MM |
| SENT DATE | The date the document was sent. | MM/DD/YYYY |
| SENT TIME | The time the document was sent. | HH:MM |
| TIME OFFSET VALUE / TIMEZONE PROCESSED | The time zone that the data is set to when processed. | PST, CST, EST, etc. |
| FILE NAME | The file name of a native document. | Document Name.xls |

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

| Field Name | Description | Example / Format |
|---|---|---|
| FILE AUTHOR | The author of a document from extracted metadata. | jsmith |
| DOC TITLE | The extracted title of the document. | Table of Contents |
| FILE MANAGER / APPLICATION DESCRIPTION | Native file application. | Microsoft Excel, Word, etc. |
| FILE EXTENSION | The file extension of a document. | XLS |
| FILE CREATE DATE | The date the document was created. | MM/DD/YYYY |
| FILE CREATE TIME | The time the document was created. | HH:MM |
| FILE LAST MODIFICATION DATE | The date the document was last modified. | MM/DD/YYYY |
| FILE LAST SAVED BY | The last individual to save the file. | jsmith |
| DATE APPOINTMENT START | Date of calendar appointment entry. | MM/DD/YYYY |
| TIME APPOINTMENT START | Start time of calendar appointment entry. | HH:MM |
| DATE APPOINTMENT END | End date of calendar appointment entry | MM/DD/YYYY |
| TIME APPOINTMENT END | End time of calendar appointment entry. | HH:MM |
| FILESIZE | The file size of a document (including embedded attachments). | Numeric |

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND
PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

| Field Name | Description | Example / Format |
|---|---|---|
| FILE PATH / ORIGINAL PATH | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items |
| MD5HASH | The MD5 Hash value or de-duplication key assigned to a document. | |
| NATIVELINK | The full path to a native copy of a document. | D:\NATIVES\ABC000001.xls |
| TEXTLINK | The full path to a text copy of a document. | D:\TEXT\ABC000001.txt |

DLA Piper LLP (US)
www.dlapiper.com

WEST/299944525

STIPULATED ORDER RE: AMENDED JOINT E-DISCOVERY PLAN AND PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION