

1  irk O. Julander, Bar No. 132313
     *doj@jbblaw.com*
2  Catherine A. Close, Bar No. 198549
     *cac@jbblaw.com*
3  M. Adam Tate, Bar No. 280017
     *adam@jbblaw.com*
4  JULANDER, BROWN & BOLLARD
   9110 Irvine Center Drive
5  Irvine, California 92618
   Telephone:  (949) 477-2100
6  Facsimile:  (949) 477-6355

7  Attorneys for Defendants
   KATHERINE MCNAMARA and
8  JEREMY WHITELEY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| BREAKING CODE SILENCE, a California 501(c)(3) nonprofit,<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE MCNAMARA, an Individual; JEREMY WHITELEY, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-002052-SB-MAA<br><br>**DECLARATION OF M. ADAM TATE IN SUPPORT OF DEFENDANTS KATHERINE MCNAMARA AND JEREMY WHITELEY'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS UNDER FRCP 37(b)**<br><br>Date:   July 18, 2023<br>Time:  10:00 a.m.<br>Crtrm: 690<br><br>[*Assigned to the Hon. Maria A. Audero*] |
|---|---|

# DECLARATION OF M. ADAM TATE

I, M. ADAM TATE, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Julander, Brown & Bollard, attorneys of record for Defendants KATHERINE MCNAMARA ("McNamara") and JEREMY WHITELEY ("Whiteley" collectively "Defendants"). I submit this Declaration in support of Defendants' Motion for Evidentiary and Monetary Sanctions Under FRCP 37(b). I have personal knowledge of the following facts, and if called upon to testify, I could and would competently testify thereto.

## Plaintiff Identifies its Officers and Directors in Discovery

2. In addition to the instant action, my firm also represents Defendants in the State Court action brought by Defendants against Plaintiff BREAKING CODE SILENCE ("Plaintiff"), Vanessa Hughes ("Hughes") and Jennifer Magill ("Magill").

3. In the context of the State action, my office caused Whiteley to propound a set of special interrogatories to Plaintiff. Special Interrogatory No. 20 asked Plaintiff to identify its directors since March 2021. In response to Special Interrogatory Number 20, Plaintiff identified the following directors and date ranges:

    1. Jennifer Magill, March 22, 2021 to present;[1]

    2. Vanessa Hughes, March 22, 2021 to present;

    3. Apryl Alexander, June 13, 2022 to present;

    4. Lenore Silverman, January 18, 2022 to present;

    5. Denette Boyd-King, August 15, 2022 to present;

    6. Dorit Saberi, June 18, 2022 to present; and

    7. Dee Anna Hassanpour, June 15, 2022 to present.

---

[1] Plaintiff's interrogatory response is dated September 21, 2022.

In addition, in response to Special Interrogatory No. 21, Plaintiff identified the following persons as officers of Plaintiff: Jenny Magill, Bobby Cook, Ariana Conroyd, Noelle Beauregard, Jesse Jensen, Megan Hurwitt, Abby Bleich, Dr. Athena Kolbe, Bria Karnedy, and Tracy Baker. A true and correct copy of Plaintiff's interrogatory responses which incorporate the interrogatory propounded is attached as **Exhibit 1.**

### **Plaintiff Violated the EDO By Failing to Collect from Each of the Custodians and Data Sources**

4. On September 13, 2022, the Court signed "Stipulated Order Re: Amended Joint E-Discovery Plan and Protocol for Discovery of Electronically Stored information" which is available on the Court's docket as Dkt. No. 35 (the "EDO"). As is relevant to the instant motion, the EDO provides that the parties would collect and produce documents from each of the data sources identified in Section 4.4 for each of the custodians listed in Section 4.3.

5. On March 31, 2023, I took the depositions of Bobby Cook and his wife Noelle Beauregard – both of which are named custodians in section 4.3 of the EDO. As is relevant to the instant motion, Bobby Cook and Noelle Beauregard testified that (1) they had been officers of Plaintiff but that they had recently resigned, and (2) their personal data sources were not collected by Plaintiff before their resignations. A true and correct copy of relevant portions of Bobby Cook's Deposition Transcript is attached hereto as **Exhibit 2.** A true and correct copy of relevant portions of Noelle Beauregard's Deposition Transcript is attached hereto as **Exhibit 3.**

6. On April 14, 2023 I took the deposition of Jesse Jensen in his capacity as the Person Most Qualified for Plaintiff. As is relevant to the instant motion, Jesse Jensen also confirmed that his personal data sources were not collected by Plaintiff. A true and correct copy of relevant portions of Jesse Jensen's, as Plaintiff's Person Most Qualified, Deposition Transcript is attached hereto as **Exhibit 4.**

**Plaintiff Violated Several Court Orders following the Informal Discovery Conferences**

7. On April 19, 2023, I attended the first of the Informal Discovery Conferences ("IDC 3" or collectively the "IDCs") between the parties regarding Plaintiff's failure to comply with the EDO. Following IDC 3, the Court ordered Plaintiff to provide a chart that lists the custodians identified in section 4.3 of the EDO on one axis and the sources of documents/data identified in Section 4.4 of the EDO on the other axis, and indicate whether or not the particular data sources had been searched for each custodian. (See Dkt. 52.)

8. On April 24, 2023, I received an email from Plaintiff's counsel attaching the chart ordered by the Court. According to the chart, Plaintiff did not collect anything whatsoever from Lenore Silverman, Apryl Alexander, Denette Boyd-King, Dorit Saberi, or Dee Anna Hassanpour. With respect to the remaining custodians, the chart included a giant grey block that covered most of the chart indicating that most of the sources from most of the custodians had not been collected. A true and correct copy of the chart is attached hereto as **Exhibit 5.**

9. Later that day, I attended another IDC ("IDC 4"). During the IDC, Plaintiff took the position that it never agreed to collect anything from the custodians outside of the Breaking Code Silence emails and any documents that are on Plaintiff's Google Drive. I attempted to explain that the plain language of the EDO proves otherwise. Following IDC 4, the Court ordered Plaintiff to provide information obtained from each of the custodians identified in Section 4.3 of the EDO regarding whether they had one or more of any of the sources identified in Section 4.4 of the EDO, and whether they were willing to search for documents. (See Dkt. 54.)

10. On April 27, 2023, I received an email from Plaintiff's counsel attaching a questionnaire for Defendants to sign. A true and correct copy of the email and its accompanying questionnaires are attached hereto as **Exhibit 6.**

11. On May 1, 2023, I received an email from Plaintiff's counsel attaching questionnaires and emails purporting to be completed by Bobby Cook, Eugene Furnace, Jesse Jensen, Meg Hurwitt, and Vanessa Hughes. Plaintiff did not provide questionnaires for Jennifer Magill, Noelle Beauregard, Ariana Conroyd, Shelby Kirchoff, Apryl Alexander, Lenore Silverman, Denette Boyd-King, Dorit Saberi, or Dee Anna Hassanpour – all of which are custodians. A true and correct copy of the email and its accompanying questionnaires are attached hereto as **Exhibit 7.**

12. Included with the questionnaires was an email from Bobby Cook. From this email, it is possible to see the instructions that the custodians were given by Plaintiff's counsel. The email did not inform the custodians (1) that the Court had ordered Plaintiff to fill out the questionnaire, or (2) Plaintiff had already stipulated to provide the information through the EDO, or (3) that should the custodians refuse to voluntarily provide the information, they may be sent subpoenas. Rather, the email was phrased in such a way that it effectively discouraged voluntary compliance. A true and correct copy of the email from Bobby Cook is attached hereto **Exhibit 8.**

13. Later that day on May 1, 2023, I attended IDC 5. Following IDC 5, the Court ordered Plaintiff to obtain information from each of the custodians identified in Section 4.3 of the EDO regarding (i) whether each custodian presently is volunteering or otherwise associated with Plaintiff, and if so, what position he or she holds within the organization, and (ii) whether each custodian will voluntarily provide the documents requested by Defendants pursuant to the EDO. (Dkt. 56.)

14. On May 3, 2023, I sent counsel for Plaintiff a list of persons who I believed had been called to the board, but from whom Plaintiff had not collected anything, including Denette Boyd-King, Dorit Saberi, and Dee Anna Hassanpour with the expectation that Plaintiff would provide information for such persons in compliance with the Court's order. A true and correct copy of my email listing the board members is attached hereto as **Exhibit 9.**

15. On May 3, 2023, I received an email from Plaintiff to the Court with *some* of the information that Plaintiff was ordered to provide. Notably, counsel's email attached a chart indicating that counsel had not heard anything from two current board members: Apryl Alexander and Lenore Silverman. The chart also failed to list Denette Boyd-King, Dorit Saberi, or Dee Anna Hassanpour. The chart further indicated that most of the custodians were not willing to search their personal data sources. In this respect, Vanessa Hughes is the sole custodian person who has indicated that she willing to search for documents on Signal. The majority of the custodians also indicated that they are unwilling to search for documents on their personal emails. A true and correct copy of this email that I received and its accompanying chart are attached hereto as **Exhibit 10.**

16. On May 3, 2023, I attended the final IDC ("IDC 6") on this issue. During IDC 6, Tamany Bentz *misrepresented to the Court* that Denette Boyd-King, Dorit Saberi, or Dee Anna Hassanpour were never on the board of directors. Following the IDC, I sent an email to see if I misunderstood what Ms. Bentz said. In response, Ms. Bentz repeated her misrepresentation in writing. A true and correct copy of Ms. Bentz's May 4, 2023 email regarding board members is attached hereto as **Exhibit 11.**

17. Ms. Bentz's misrepresentation not only contradicts Plaintiff's sworn discovery responses, but is also at odds with the agreements produced by Plaintiff in this action. Attached collectively hereto as **Exhibit 12** are agreements signed by Denette Boyd-King, Dorit Saberi, or Dee Anna Hassanpour indicating that they each agreed to be members of Plaintiff's board of directors. These agreements have been produced in this action by Plaintiff.

18. Throughout the IDCs the Court made a great effort to encourage Plaintiff to have the custodians voluntarily gather documents from their data sources. Repeatedly the Court warned that unless they complied the custodians were likely to be served with subpoenas and Defendants were likely to bring a

motion under Rule 37(b) and that the consequences could be severe – including the possibility of terminating sanctions.

**The Missing Screenshots and Communications**

19. To the best of my knowledge, as of March 31, 2023, when I took the deposition of Noelle Beauregard, Plaintiff had not produced any screen shots of the Google Search Console / Google Webmaster.

20. During the deposition, Noelle Beauregard testified that she took approximately twenty-five screen shots of the Google Search Console / Webmaster in March 2022. When I inquired what happened to the screenshots, Plaintiff's counsel, Michael Brown, indicated that he had some of them. I demanded that I be sent the screenshots and, during a break, Mr. Brown sent me an email with seven screen shots – none of which had the original metadata and none of which had been previously produced. It was apparent to me that Plaintiff had identified the screenshots in advance of the deposition, but had failed to produce them.

21. On April 4, 2023, after the deposition of Noelle Beauregard, Plaintiff made a production of documents. As is relevant here, the production included the seven screen shots referenced above. The document production also included 4 screen shots with metadata suggesting that the screen shots were taken by Jesse Jensen in March 2023 – a year after the alleged "de-indexing."

22. On April 14, 2023, I took the deposition of Jesse Jensen in his capacity as the Person Most Qualified for Plaintiff. As is relevant to the instant motion, I showed Jesse Jensen all of the screenshots of the Google Search Console / Google Webmaster of which I was aware and I asked Jesse Jensen if he had taken additional screenshots in March 2022. Jesse Jensen explained that he had taken screenshots in March 2022 and that he was surprised that the screenshots had not yet been produced *as he gave them to Plaintiff's counsel a year prior*.

23. On April 19, 2023, I sent an email to counsel for Plaintiff explaining that I believed that most of the screenshots taken by Noelle Beauregard had not been

produced and that none of the screenshots taken by Jesse Jensen in March 2022 had been produced. I asked counsel to either correct my misunderstanding or explain why the screenshots had not been produced.

24. On May 4, 2023, having not heard a response, I sent a follow-up email asking whether DLA Piper was really not going to tell me whether or not Plaintiff had produced the screenshots. A true and correct copy of this email chain is attached hereto as **Exhibit 13.**

25. On May 5, 2023, having still not heard a heard a response from opposing counsel, I sent an email asking counsel to provide me with some times during which we could meet and confer prior to me requesting an IDC. In response, Tamany Bentz finally responded that the screen shots were attached to an email bates numbered BCS_0574573-74.

26. The email referenced by Ms. Bentz was produced that same morning on May 5, 2023. The email purports to be from Noelle Beauregard attaching 27 screen shots. However, *there is no metadata associated with the screen shots* and none of the screen shots appear to be the ones taken by Jesse Jensen in March 2022.

27. These same screenshots appear to have been produced several times and attached to various emails in the May 5, 2023 production – but none of the screen shots have any metadata associated with them making it impossible for my office to tell when the screenshots were taken, by whom, and critically, whether the screenshots have been modified or altered.

28. The failure to include the metadata is more than a mere technicality. Notably, Plaintiff has indicated that it knows how easy it is to modify screenshots. In this respect, Jesse Jensen, Plaintiff's purported security expert, texted his co-investigator, Noelle Beauregard, "I'm not sure screenshots meet the burden of proof for the court because they can be easily falsified." A true and correct copy of the above referenced text message, which was produced by Noelle Beauregard is attached hereto as **Exhibit 14.**

29. On April 20, 2023, I took the deposition of Bill Boyles. Bill Boyles is a former board member of BCS. A true and correct copy of relevant portions of Bill Boyles' Deposition Transcript is attached hereto as **Exhibit 15.**

**The Court Should Issue Monetary Sanctions**

30. The following costs have been incurred in connection with this issue:

    a. **M. Adam Tate**

        i. I started as an associate for JBB in September 2016 and am now a partner. I received my J.D., with honors, from the J. Rueben Clark Law School (BYU) in 2011. I have practiced commercial litigation in Orange County since passing the bar in 2011. I am an experienced trial and appellate attorney.

        ii. I have been lead counsel on this matter since this action was filed. I spent over 20.0 hours meeting and conferring with opposing counsel, appearing at the many IDCs, and drafting this Motion and supporting declarations. My billing rate for this matter was $425.00 per hour until February 2023 when it was increased to $470.00 upon becoming a partner in the firm. Hourly rates for senior associates/partners in commercial litigation firms such as JBB with my experience in Los Angeles and Orange County typically meet or exceed this hourly rate.

        iii. It is anticipated that I will spend an additional 5.0 hours in reviewing Plaintiff's Opposition to this Motion, drafting the Reply to Opposition, and appearing at the hearing on this Motion.

    b. In total, Defendants have, and will, reasonably incur $11,750 for my time connection with this Motion.

    c. **Catherine A. Close**

        i. Ms. Close has been an associate with JBB since May 2002. She received her J.D., with honors, from the Whittier College School of Law in 1998. She has practiced commercial litigation in Orange County since

passing the bar in 1998. She is an experienced trial lawyer, participating in numerous trials of complex business matters in both state and federal courts. She has also drafted many appellate briefs.

   ii. Ms. Close is the senior associate on this matter and has spent 7.30 hours meeting and conferring with opposing counsel, appearing at IDCs, and assisting in preparing this Motion. Her billing rate for this matter has been between $430.00 (2022) and $450.00 (since January 2023) per hour. Based on her experience, hourly rates for senior litigation associates with her experience in business litigation firms in Los Angeles and Orange County typically meet or exceed her hourly rate.

   iii. It is anticipated that Ms. Close will spend an additional 2.0 hours in reviewing Plaintiff's Opposition to this Motion, drafting the Reply to Opposition, and appearing at the hearing on this Motion.

   iv. In total, Defendants have, and will, reasonably incur $4,185 for Ms. Close's connection with this Motion.

  d. **Adam J. Schwartz**

   i. Adam J Schwartz has been a solo practitioner since 2012. Prior to that time, he was a litigation associate at Paul Hastings for nearly five years. Mr. Schwartz received his J.D., with honors, from The George Washington University Law School in Washington, D.C. in 2007, where he was a member of the International Law Review and was a Thurgood Marshall Scholar his 1L year. Mr. Schwartz has practiced white collar criminal and commercial litigation in Washington, D.C. and Los Angeles County since passing the bar in 2007. He is admitted to practice law in both California and the District of Columbia. He is an experienced litigator, with experience in business disputes, as well as white collar criminal, employment, defamation, copyright, and trademark matters.

   ii. Mr. Schwartz has worked as an independent contractor

assisting JBB in this action since July 2022 and became co-counsel for Defendants in this action in August 2022. Mr. Schwartz has spent 7.0 hours meeting and conferring with opposing counsel, appearing at IDCs, and assisting in preparing this Motion. Mr. Schwartz's billing rate for this matter is $300.00 and, based on over 15 years of civil litigation experience, the rate charged on this matter is the usual and customary rate Mr. Schwartz charges for legal work performed in the Los Angeles area. Hourly rates for commercial litigators with Mr. Schwartz's experience in Los Angeles and Orange County typically meet or exceed this hourly rate.

    iii.    It is anticipated that Mr. Schwartz will spend an additional 1.0 hour in reviewing Plaintiff's Opposition to this Motion, drafting the Reply to Opposition, and appearing at the hearing on this Motion.

    iv.    In total, Defendants have, and will, reasonably incur $2,400 for Mr. Schwartz's connection with this Motion.

    e.    **Rebekah Chamberlin**

    i.    Rebekah Chamberlin has worked for JBB as a law clerk since August 2021. She passed the California Bar this last month and was recently promoted to be an associate attorney. Ms. Chamberlin received her J.D. from the J. Rueben Clark Law School (BYU) in 2021.

    ii.    Ms. Chamberlin spent 28.3 hours assisting the attorneys with legal research with respect to this Motion, preparing this Motion and the analysis of the deficiencies in Plaintiff's document productions. Ms. Chamberlin's billing rate for this matter is $150.00 an hour. Based on my experience, hourly rates for law clerks with Ms. Chamberlin's experience in business litigation firms in Los Angeles and Orange County typically meet or exceed this hourly rate.

    iii.    In total, Defendants have, and will, reasonably incur $4,245 for Ms. Chamberlin's time connection with this Motion.

f. **Helene Saller**

i. Helene Saller has worked for JBB as a litigation paralegal since 2019, specializing in legal research and filings, trial preparation, discovery and document control. She studied political science at Arizona State University and received her paralegal certificate from Pasadena City College in 1992. She has worked in the legal industry since 1992 for both large and small firms, with extensive experience in the areas of civil practice, employment law, medical malpractice, and complex litigation.

ii. Ms. Saller has been the lead paralegal in this matter since this action was filed. Ms. Saller has spent 4.0 hours helping to prepare this instant motion. Ms. Saller's billing rate for this matter is $200.00 an hour. Based on my experience, hourly rates for senior litigation paralegals with Ms. Saller's experience in business litigation firms in Los Angeles and Orange County typically meet or exceed this hourly rate.

iii. It is anticipated that Ms. Saller will spend an additional 1.50 hours in processing Plaintiff's Opposition to this Motion, and finalizing the Reply to Opposition.

iv. In total, Defendants have, and will, reasonably incur $1,100 for Ms. Saller's time connection with this Motion.

31. In total, Defendants have, and will, reasonably incur $23,680 in attorneys' fees and costs in connection with this Motion, which could have been avoided

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed June 13, 2023, at Irvine, California.

.                                                   */s/ M. Adam Tate*
                                                    M. ADAM TATE

12
DECLARATION OF M. ADAM TATE

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2023, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification to all parties of record or persons requiring notice.

*/s/ Helene Saller*
Helene Saller

CERTIFICATE OF SERVICE