

1 | Dirk O. Julander, Bar No. 132313
*doj@jbblaw.com*
2 | Catherine A. Close, Bar No. 198549
*cac@jbblaw.com*
3 | M. Adam Tate, Bar No. 280017
*adam@jbblaw.com*
4 | JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
5 | Irvine, California 92618
Telephone: (949) 477-2100
6 | Facsimile: (949) 477-6355

7 | Attorneys for Defendants KATHERINE MCNAMARA and JEREMY
8 | WHITELEY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) nonprofit, | Case No. 2:22-cv-002052-SB-MAA |
| Plaintiff, | |
| vs. | **SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF JEREMY WHITELEY'S MOTION FOR SUMMARY JUDGMENT** |
| KATHERINE MCNAMARA, an Individual; JEREMY WHITELEY, an individual; and DOES 1 through 50, inclusive, | |
| Defendants. | Date:   January 2, 2024
Time:   10:00 a.m.
Crtrm: 690 |
| | [*Assigned to the Hon. Maria A. Audero*] |

SEPARATE STATEMENT

Defendant JEREMY WHITELEY hereby submits the following Separate Statement of Uncontroverted Facts and supporting evidence in support of his Motion for Summary Judgment or, Alternatively, Partial Summary Judgment on the Complaint filed by Plaintiff BREAKING CODE SILENCE ("BCS").

# ISSUE NO. 1: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA AND THE SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE WHITELEY DID NOT DEINDEX BCS'S WEBSITE FROM GOOGLE

| UNCONTROVERTED MATERIAL FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| 1. BCS's claims for violation of the CFAA and CDAFA against Whiteley and Defendant KATHERINE MCNAMARA ("McNamara;" collectively "Defendants") are limited to the allegations that "Defendants accessed a BCS computer or account—including without limitation a Hover DNS account containing the domain names for breakingcodesilence.org and breakingcodesilence.com, the Google Search Console, and the WordPress admin dashboard/console—without authorization, or in excess of authorized access, and caused BCS's website (breakingcodesilence.org and/or breakingcodesilence.com) to be de-indexed." | 1. Tate Decl., ¶39; Ex. 97 [8/23/23 Letter to Gibson]; Ex. 98 [10/17/23 Email from Gibson re: Narrowing Claims]; Dkt. 146 [Stipulation]; Dkt. 147 [Order on Stipulation]. |
| 2. In its discovery responses and deposition testimony, BCS only claimed that Defendants deindexed the website through the Google Search Console and presented no evidence that the Defendants deindexed its website through WordPress or Hover. | 2. Complaint ¶36; Ex. 51 [BCS's responses to McNamara's First Set of Interrogatories], Response No. 3, Appendix A ["McNamara used Whiteley's previous administrative credentials for the BCS Google account to request that the BCS website multiple |

| | |
|---|---|
| | times during March 8, 2022 through March 9, 2022."]; Ex. 45 [Hughes Depo.] pp. 59:14-60:2 ["the email address that was used to gain access belonged to Jeremy Whiteley."]; Ex. 48 [Jensen Depo.], pp. 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen again reiterates BCS has no evidence of WordPress access]; Ex. 47 [Beauregard Depo.], pp. 70:15-71:20; Ex. 65; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. |
| 3. Whiteley did not deindex BCS's website. | 3. Whiteley Decl., ¶25; Walton Decl., ¶¶18-26 [Re: No evidence Whiteley deindexed and most likely BCS caused the deindexing]. |
| 4. There is no evidence that Defendants deindexed BCS's website. | 4. Walton Decl., ¶¶18-26 [Re: No evidence Whiteley deindexed and most likely BCS caused the deindexing]; Exs. 85-89; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. |

| | |
|---|---|
| 5.   BCS failed to conduct a proper forensic investigation into the deindexing of its website to determine who was responsible for the deindexing of its website and failed to collect and preserve the necessary digital evidence. | 5.   Walton Decl., ¶39 [Re: improper investigation] and ¶28 [Re: Logs and other evidence that should have been preserved]; Ex. 48 [Jensen Depo], pp. 31:10-45:3 [Jensen background], 81:13-82:21 [Authenticating report and questioning accuracy], 100:16-22 [Jensen didn't even ask Google how the website was deindexed because he presumed Defendants were at fault], 150:3-153:2 [Jensen did not investigate whether a BCS volunteer could be at fault], 172:11-173:23 [Jensen took no notes and spent an hour or two on the report], 70:17-71:9 [BCS did not backup logs to a secure place], 176:3-10, 248:13-251:3 [BCS failed to preserve Google logs], 254:22-25, 237:10-240:15 [BCS admits to deleting backups on the server], 96:1-10, 97:13-17 [BCS failed to screenshot the website not showing up on Google]; Ex. 65; Ex. 47 [Beauregard Depo.], pp. 11:3-12:13 [Foundation], 18:14-20:3 [Beauregard background], 20:4-18 [Hughes and Magill told Beauregard that Defendants were "hacking"], p. 40:17-25 [Admits deleting original documents off computer]; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]; Ex. 77 [Magill Depo. V1], pp. 22:22-23:22 [BCS deleted backups believing them to be copies]; Tate Decl., ¶30 [Google Drive logs BCS produced do not cover the date of the alleged deindexing]; Ex. 59, Response Nos. 13-16 [No investigation was conducted into other potential causes of de-indexing]. |

| | |
|---|---|
| 6. The only people that could have inserted an HTML "no index" tag on a page of BCS's website are people with access to BCS's WordPress account. | 6. Walton Decl., ¶49; Whiteley Decl., ¶¶30-31. |
| 7. After their respective resignations from BCS, Defendants had no access to BCS's WordPress Account. | 7. Whiteley Decl., ¶¶21, 30 and 31; Ex. 20 [7/9/21 Email confirmation]; Ex. 49 [Boyles Depo.], pp. 68:19-25, 79:21-80:7; see also, Ex. 48 [Jensen Depo.], pp. 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen again reiterates BCS has no evidence of WordPress access]; Ex. 47 [Beauregard Depo.], pp. 70:15-71:20; Ex. 65; McNamara Decl., ¶27; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. |
| 8. Around the time of the alleged deindexing, BCS submitted webpages to Google marked "no-index," i.e., BCS specifically requested that Google not "index" those pages. | 8. Whiteley Decl., ¶30; Walton Decl., ¶¶22-24; Exs. 92, 106 [Evidence of "noindex" request made on webpages related to .Org Domain]. |
| 9. On March 7, 2022 (2 days before the alleged deindexing), BCS submitted several "broken" sitemaps to Google that could not be fetched. | 9. Whiteley Decl., ¶30; Walton Decl., ¶¶22-24; Exs. 90-91 [Evidence of errors related to submission of sitemaps for .Org Domain]; Beauregard Decl., ¶3. |
| 10. The broken sitemap issue was corrected on March 12, 2022. | 10. Walton Decl., ¶24; Ex. 91 [Evidence of errors related to submission of sitemaps for .Org Domain]; Beauregard Decl., ¶3. |

# ISSUE NO. 2: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA AND THE SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE WHITELEY DID NOT INTENTIONALLY ACCESS WITHOUT AUTHORIZATION, OR EXCEED AUTHORIZED ACCESS TO, ANY BCS PROTECTED COMPUTER OR ACCOUNT

| UNCONTROVERTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 11.  Whiteley incorporates by reference Uncontroverted Material Fact Nos. 1 through 10 above. | 11.  Whiteley incorporates by reference the evidence cited in Uncontroverted Material Fact Nos. 1 through 10 above. |
| 12.  More than a year before BCS was formed, on March 11, 2020, McNamara purchased the domain <breakingcodesilence.org> (the ".Org Domain") using her own personal Hover domain registrar account and credit card. | 12.  McNamara Decl., ¶¶6-7; Ex. 5 [3/11/2020 Hover receipt]; Ex. 50 [Papciak Depo. NC], pp. 41:18-42:7, 68:19-69:10, 73:13-75:5, 252:2-13 [McNamara bought the domain and never transferred it]; Ex. 49 [Boyles Deposition], pp. 12:14-23 [Foundation], 27:21-28:17; Ex. 77 [Magill Depo. V1], p. 30:2-10. |
| 13.  Since purchasing the .Org Domain in 2020, McNamara has renewed the .Org Domain each year with her own funds. | 13.  McNamara Decl., ¶7; Ex. 6 [3/10/21 Hover receipt; 2/8/22 Hover receipt; 3/10/23 Hover receipt]; Ex. 77 [Magill Depo. V1], p. 30:17-23. |
| 14.  McNamara has never transferred or assigned ownership of the .Org Domain to any other person or entity. | 14.  McNamara Decl., ¶29; Ex. 11 [12/15/21 Email from Magill to McNamara]; Ex. 50 [Papciak Depo. NC], p. 252:2-13 [McNamara bought the domain and never transferred it]; Ex. 51 [8/5/22 BCS's Responses to McNamara's First Set of Interrogatories], Response No. 4 [BCS admits it was never transferred to BCS but claims it should have been]; Ex. 49 |

SEPARATE STATEMENT

| | |
|---|---|
| | [Boyles Deposition], pp. 12:14-23 [Foundation], 27:21-28:17. |
| 15. BCS was incorporated on March 22, 2021. | 15. McNamara Decl., ¶12; Whiteley Decl., ¶9; Request for Judicial Notice ("RJN"), Ex. 60 [BCS Articles of Incorporation]; Complaint (Dkt. 2), ¶¶9 and 21. |
| 16. McNamara and Whiteley participated in the founding of BCS in March 2021 and were among its first interim board members. | 16. McNamara Decl., ¶¶11-12; Whiteley Decl., ¶¶8-10; Ex. 78 [Magill Depo. V2], pp. 159:23-160:11. |
| 17. Whiteley and McNamara also stood up the information technology and assurance infrastructures as well as the website and related BCS WordPress Account. | 17. McNamara Decl., ¶13; Whiteley Decl., ¶11; Complaint (Dkt. 2), ¶¶10-11. |
| 18. Because they were both technology professionals, board members, and created many of BCS's accounts, at one time Defendants had administrative credentials for several BCS accounts. | 18. McNamara Decl., ¶13; Whiteley Decl., ¶¶5 and 11; Complaint (Dkt. 2), ¶10-11. |
| 19. The .Org Domain is, and has always been, housed in McNamara's personal Hover.com domain registrar account which she has owned since 2016, along with all of the other domains McNamara owns. | 19. McNamara Decl., ¶¶7 and 46(b)(ii); Ex. 21 [Hover receipts for all domains in McNamara's Hover account]. |
| 20. Because McNamara has been verified through Google as the domain owner, she has access to all domain-related Google services for the .Org Domain through her own Google account. | 20. McNamara Decl., ¶¶17, 18, 46(d)(ii), 38 and 39; Ex. 8 [Google Search Console Help Page]. |

| | | |
|---|---|---|
| 1 2 3 4 | 21. In March 2021 when BCS was founded, McNamara allowed the .Org Domain to direct to BCS's website and allowed BCS to acquire email addresses. | 21. McNamara Decl., ¶¶14, 16; Whiteley Decl., ¶¶12-13; Ex. 49 [Boyles Depo.], pp. 12:14-23 [Foundation], 32:18-33:5. |
| 5 6 7 8 9 10 | 22. BCS has never provided McNamara any consideration for its license to use the .Org Domain, although it continues to use the .Org Domain. | 22. McNamara Decl., ¶¶14 and 29; Ex. 49 [Boyles Deposition], pp. 12:14-23 [Foundation], 27:21-28:17; Ex. 53 [9/30/22 BCS Response to McNamara RFAs (Set Two)], Response No. 34; Ex. 77 [Magill Depo. V1], pp. 30:17-23 [No consideration for domain], 33:18-35:1 [No consideration for volunteer agreement]. |
| 11 12 13 14 15 | 23. Based on the permissions granted by McNamara to BCS when she pointed the .Org Domain to BCS's website, BCS could also access the domain-related Google services for the .Org Domain through its own Google account. | 23. McNamara Decl., ¶38. |
| 16 17 18 19 | 24. On June 26, 2021, Whiteley resigned as an interim director of BCS. | 24. McNamara Decl., ¶22; Whiteley Decl., ¶18; Ex. 27 [6/26/21 Resignation Letter]; Ex. 28 [6/28/21 Acceptance of Resignation Letter]; Complaint (Dkt. 2), ¶¶11 and 25. |
| 20 21 22 23 24 25 26 27 | 25. After his resignation, Whiteley transferred to BCS his ownership and administrative credentials to all of BCS's web accounts that he had set up or could access including, specifically, the WordPress account and the BCS access to the free tools provided in the Google Search Console and Google Webmaster Central (collectively the "Google Tools"). | 25. Whiteley Decl., ¶21(c), (d), (f), (g), and (h) and 22; Ex. 33 [6/30/21 Email from Google Nonprofits]; Ex. 35 [7/9/21 Email re: WordPress]; Ex. 36 [7/12/21 Email to Proctor]; Ex. 37 [7/10/21 Emails re: google Web Services]; Ex. 38 [7/19/21 Email Alert re: Google Ads]; McNamara Decl., ¶46(a), (c), (e), (f), (n), and (p); Ex. 20 [7/9/21 Email re: WordPress]; Ex. 22 [Screenshot BCS_0577327]; Ex. 78 [Magill Depo. V2], p. 261:3-23 |

| | |
|---|---|
| | [Whiteley fully cooperated in turning over all accounts]. |
| 26. After his removal from BCS's WordPress account and the BCS access to the Google Tools, Whiteley never accessed or made any changes to the .Org Domain or BCS's website. | 26. Whiteley Decl., ¶30. |
| 27. On July 9, 2021, Whiteley's administrative access to BCS's WordPress Account was changed to another BCS director, Bill Boyles. | 27. Whiteley Decl., ¶21(f); Ex. 35 [7/9/21 Email re: WordPress]; Ex. 49 [Boyles Depo.], pp. 68:19-25; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65. |
| 28. After July 9, Whiteley no longer had access to BCS's WordPress Account. | 28. Whiteley Decl., ¶¶21(e) and (f), 30, and 31; Ex. 20 [7/9/21 Email re: WordPress]; Ex. 49 [Boyles Depo.], pp. 68:19-25; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that |

| | |
|---|---|
| | Defendants did not access WordPress prior to filing the Complaint]. |
| 29. After July 9, 2021, Whiteley never accessed BCS's WordPress Account or made any changes to BCS's WordPress Account. | 29. Whiteley Decl., ¶¶21(f), 22, 30, and 31; Ex. 20 [7/9/21 Email re: WordPress]; Ex. 49 [Boyles Depo.], pp. 68:19-25; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65 [Depo. Ex. 9]; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. |
| 30. McNamara resigned from BCS on December 9, 2021. | 30. McNamara Decl. ¶¶25-26; Ex. 10 [11/26/21 Internal Complaint Form]; Complaint, ¶¶10 and 28. |
| 31. On the evening of her resignation, Bill Boyles revoked McNamara's authorization to BCS's WordPress account. | 31. McNamara Decl., ¶27; Ex. 49 [Boyles Depo.], pp. 79:21-80:7; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65. |

10
SEPARATE STATEMENT

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 | 32. Since her resignation on December 9, 2021, McNamara has not logged into or otherwise accessed the BCS WordPress account. | 32. McNamara Decl., ¶27; Ex. 49 [Boyles Depo.], pp. 79:21-80:7; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. |
| 13 14 15 16 | 33. After her resignation from BCS, BCS requested that McNamara execute an Intellectual Property Assignment Agreement, but McNamara refused. | 33. McNamara Decl., ¶29; Ex. 11 [12/15/21 Email from Magill with attached Draft Assignment Agreement]; Ex. 77 [Magill Depo. V1], p. 43:9-11. |
| 17 18 19 20 21 | 34. McNamara accesses the .Org Domain and all of the other domains she owns through her personal Google Account using her own personal Google credentials at iristheangel@gmail.com. | 34. McNamara Decl., ¶¶36-38. |
| 22 23 24 25 26 27 28 | 35. On March 11, 2021, McNamara received alerts from Google informing her that a BCS email address she did not recognize was added to the Google Tools for the .Org Domain. | 35. McNamara Decl. ¶36. |

| | |
|---|---|
| 36. Fearing someone was trying to steal her .Org Domain, on March 11, 2022, McNamara used her own personal Google credentials at iristheangel@gmail.com to sign on to the Google Tools and added Whiteley's email, jeremy@medtexter.com, to the Google Tools for the .Org Domain. | 36. McNamara Decl., ¶¶32-38; Whiteley Decl., ¶26; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:14-60:2; Ex. 71 [Depo. Ex. 28]; Walton Decl., ¶20. |
| 37. Whiteley and McNamara at all times understood and believed that McNamara was and is the owner of the .Org Domain and had the authority to delegate legitimate permissions to Whiteley to access to the Google Tools for the .Org Domain. | 37. Whiteley Decl., ¶14; McNamara Decl., ¶¶6-7, 14, 17-18, 29, 36, 39, 43; Exs. 5-6 [Hover Receipts]; Ex. 17 [3/18/22 Letter to DLA Piper]; *see also* Ex. 49 [Boyles Depo.]. pp. 27:21-28:17 [Former board member believes McNamara owns the .Org Domain], 32:18-33:5 [BCS's use of the .Org Domain was only meant to be temporary]. |
| 38. Almost immediately after McNamara added Whiteley's email, jeremy@medtexter.com, to the Google Tools for the .Org Domain, an unknown person (later determined to be a BCS volunteer) revoked that access. | 38. McNamara Decl., ¶40; Whiteley Decl., ¶¶26-27; Ex. 48 [Jensen Depo.], pp. 109:20-113:22; Ex. 47 [Beauregard Depo.], pp. 19:25-20:18 [Removing access]; pp. 112:8-113:12 [Discussing Depo. Ex. 27 Screenshot]; Ex. 70 [Depo. Ex. 27]; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:18-60:2; Ex. 71 [Depo. Ex. 28]. |
| 39. Several times, McNamara repeatedly re-added jeremy@medtexter.com to the Google Tools for the .Org Domain, and someone (later determined to be a BCS volunteer) repeatedly revoked the access. | 39. McNamara Decl., ¶40; Whiteley Decl., ¶¶26-27; Ex. 48 [Jensen Depo.], pp. 109:20-113:22; Ex. 47 [Beauregard Depo.], pp. 19:25-20:18 [Removing access]; pp. 112:8-113:12 [Discussing Depo. Ex. 27 Screenshot]; Ex. 70 [Depo. Ex. 27]; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:14-60:2; Ex. 71 [Depo. Ex. 28]. |

| | |
|---|---|
| 40. Other than adding the email addresses to the Google Tools for the .Org Domain, McNamara took no action whatsoever with respect to the Org Domain or BCS's website. | 40. McNamara Decl., ¶42; Walton Decl., ¶¶28-34 [Re: No evidence]; Exs. 48, 92-94, 100-102 [same]. |
| 41. McNamara did not request that the BCS website be deindexed in March 2022, or any other time, did not change or alter any portion of BCS's website after her resignation, and did not aid, assist, or conspire with anyone else in doing so. | 41. McNamara Decl., ¶42; Walton Decl., ¶23 [Re: No evidence]; Exs. 48, 92-94, 100-102 [same]; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. |
| 42. After his email was added to the Google Tools for the .Org Domain on March 11, 2022, beginning at about 2:15 PM PST (March 12, 2022 at 9:15 PM UTC), at McNamara's request, Whiteley used his email address to browse to the Google Webmaster Central and observe the ownership history for the .Org Domain and the additions and removals of permissions. | 42. McNamara Decl., ¶¶36-40; Whiteley Decl., ¶¶26-27; Walton Decl., ¶¶20, 28-34 [Re: No evidence]; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:14-60:2; Ex. 71 [Depo. Ex. 28]. |
| 43. Other than browsing into the Google Webmaster Central webpage to view the strange additions and removals of permissions, Whiteley took no action with respect to the .Org Domain or BCS's website. | 43. Whiteley Decl., ¶28; Walton Decl., ¶20; Exs. 70-72 [Google Logs]; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. |
| 44. BCS claims that requests to deindex BCS's website were made on March 8 or 9, 2022. | 44. Complaint ¶40; Ex. 51 [8/5/22 BCS Responses to McNamara Interrogatories (Set One)], Appendix A, p. 1; Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 92:25-93:13; Ex. 47 [Beauregard Depo.], p. 50:13-17. |

| | |
|---|---|
| 45. Whiteley did not have "ownership" permissions to the .Org Domain until March 11, 2022, beginning at about 2:15 PM PST (March 12, 2022 at 9:15 PM UTC). | 45. McNamara Decl., ¶36; Whiteley Decl., ¶¶26-27; Walton Decl., ¶20; Exs. 85-89 [Logs]; Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation],170:20-171:19 [Jensen is not aware of any other instances that Whiteley had access], 111:14-112:13, 113:2-22, 123:16-124:5, 127:12-129:3, 144:16-149:22 [Jensen admits that none of the evidence preserved shows Whiteley had access on 3/9/21], 153:15-154:14 [Jensen admits there is no evidence to show Whiteley had access on 3/9/21]; Ex. 47 [Beauregard Depo.], pp. 50:18-52:3, 53:7-21, 54:5-20; Ex. 68 [Depo. Ex. 24]; Ex. 69 [Depo. Ex. 26]. |
| 46. In April 2021, BCS purchased the .Com Domain for its own use and housed it in McNamara's Hover account. | 46. McNamara Decl., ¶¶20, 46(b)(i); Whiteley Decl., ¶15; Ex. 9 [4/6/21 Assignment Agreement]. |
| 47. In March 2022, McNamara created a separate Hover domain registrar account for the .Com Domain and provided BCS with the login credentials for the separate Hover account so that BCS could migrate its website to the .Com Domain. | 47. McNamara Decl., ¶¶43, 46(b)(i); Ex. 17 [3/18/22 Letter from McNamara's counsel]; Ex. 18 [3/24/22 Email from McNamara's counsel to DLA]. |
| 48. Whiteley has never had access to, or accessed, any Hover.com domain registrar account that housed either the .Org Domain or the .Com Domain, including McNamara's Hover account and the account McNamara created in March 2022 for the .Com Domain. | 48. McNamara Decl., ¶¶45, 46(b)(i), (b)(ii); Whiteley Decl., ¶32. |

**ISSUE NO. 3: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA AND SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE BCS CANNOT ESTABLISH THAT WHITELEY ACTED IN CONSPIRACY OR CONCERT WITH, AIDED, OR ASSISTED MCNAMARA IN INTENTIONALLY ACCESSING A BCS PROTECTED COMPUTER OR ACCOUNT WITHOUT AUTHORIZATION, OR IN EXCEEDING AUTHORIZED ACCESS, AND CAUSING BCS'S WEBSITE TO BE DEINDEXED FROM GOOGLE**

| UNCONTROVERTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 49. Defendants did not have an agreement to access any BCS account or computer without authorization. | 49. Whiteley Decl., ¶25, 28; McNamara Decl., ¶24. |
| 50. Whiteley did not aid, assist, or conspire with McNamara to access any BCS account or computer. | 50. Whiteley Decl., ¶25; McNamara Decl., ¶24. |
| 51. Whiteley took no action which would cause or contribute to the deindexing of BCS's website. | 51. Whiteley Decl., ¶25; McNamara Decl., ¶24; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. |

**ISSUE NO. 4: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA BECAUSE BCS CANNOT ESTABLISH RESULTING LOSS OR DAMAGE OF AT LEAST $5,000.00 WITHIN THE MEANING OF THE CFAA**

| UNCONTROVERTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 52. BCS claims that it suffered three potential sources of loss or damage: (1) volunteer time; (2) attorney hours; and (3) potential lost donations. | 52. Ex. 52 [BCS's 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], No. 1. |
| 53. On March 12, 2022, BCS's website was appearing on Google Search again. | 53. Ex. 48 [Jensen Depo.], pp. 90:24-92:4; Ex. 77 [Magill Depo. V1], p. 57:9-13 [Magill adopting Jensen's testimony]. |

| | | |
|---|---|---|
| | 54. BCS's investigation into the alleged hacking was conducted by, and the investigation report was prepared by, unpaid volunteers. | 54. Ex. 47 [Beauregard Depo.], pp. 11:3-12:13 [Foundation], 12:22-25 [Was not paid for the investigation]; Ex. 48 [Jensen Depo.], pp. 167:23-168:13 [No cost re: Whiteley being added to Domain account/volunteer time only]; Ex. 45 [Hughes Depo. NC], pp. 13:14-17 [PMQ Designation], 68:6-69:7 [Hughes has no knowledge if TXT Investigation cost anything], 70:13-71:7 [Hughes knows of no cost re: Whiteley being added to Domain account], 74:1-75:10 [Hughes knows of no cost re: Google Drive], 76:20-25 [Hughes knows of no cost re: deindexing investigation]; Ex. 46 [Cook Depo.], pp. 119:4-20, 120:4-13, 122:11-16; Ex. 52 [BCS's 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], No. 1, p. 5 ["Plaintiff is a charitable organization classified as a 501(c)(3) that is primarily run by volunteers. As a result, Plaintiff is unable to quantify the monetary value of the amount of time Plaintiff's employees and/or representatives, including Plaintiff's lawyers, incurred..."]; Beauregard Decl., ¶3; Ex. 77 [Magill Depo. V1], pp. 49:16-50:19 [No volunteers were paid], 65:19-71:25 [PMQ is unable to quantify the amount of hours or the value of volunteer time]. |
| | 55. BCS did not incur any legal fees in connection with its investigation into the alleged hacking. | 55. Ex. 55 [BCS's 3/10/23 Amended Responses to Whiteley RFPs (Set 3)], Response No. 32; Tate Decl., ¶13; Ex. 57 [2/22/23 Letter from DLA Piper]; Ex. 56 [DLA Spreadsheet BCS_0770224 **"CONFIDENTIAL"** – *Lodged conditionally under seal*]; Ex. 52 [BCS' 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], |

16
SEPARATE STATEMENT

| | |
|---|---|
| | Response No. 1, p. 5 ["Plaintiff is a charitable organization classified as a 501(c)(3) that is primarily run by volunteers. As a result, Plaintiff is unable to quantify the monetary value of the amount of time Plaintiff's employees and/or representatives, including Plaintiff's lawyers, incurred..."]; Ex. 77 [Magill Depo. V1], pp. 105:20-106:22 [BCS made no payments to attorneys related to the deindexing]; Ex. 78 [Magill Depo. V2], p. 155:15-20 [Same]. |
| 56.  BCS has never paid any amount of money to anyone to investigate the allegations of the Complaint. | 56.  Bergmark Decl., ¶¶12-14 [No evidence of payments to anyone]; Ex. 104 [BCS Bank Statements]; Ex. 47 [Beauregard Depo.], pp. 11:3-12:13 [Foundation], 12:22-25 [Was not paid for the investigation]; Ex. 48 [Jensen Depo.], pp. 167:23-168:13 [No cost re: Whiteley being added to Domain Account/Volunteer time only]; Ex. 45 [Hughes Depo. NC], pp. 13:14-17 [PMQ Designation], 68:6-69:7 [Hughes has no knowledge if TXT Investigation cost anything], 70:13-71:7 [Hughes knows of no cost re: Whiteley being added to Domain Account], 74:1-75:10 [Hughes knows of no cost re: Google Drive], 76:20-25 [Hughes knows of no cost re: deindexing investigation]; Ex. 46 [Cook Depo.], pp. 119:4-20, 120:4-13, 122:11-16; Ex. 52 [BCS's 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], No. 1, p. 5 ["Plaintiff is a charitable organization classified as a 501(c)(3) that is primarily run by volunteers. As a result, Plaintiff is unable to quantify the monetary value of the amount of time Plaintiff's employees |

| | |
|---|---|
| | and/or representatives, including Plaintiff's lawyers, incurred..."]; Beauregard Decl., ¶3; Ex. 77 [Magill Depo. V1], pp. 49:16-51:23 [No volunteers were paid and PMQ was unable to point to any expense incurred associated with the de-indexing], 65:19-71:25 [PMQ is unable to quantify the amount of hours or the value of volunteer time], 105:10-106:22 [BCS did not pay its attorneys]; Ex. 78 [Magill Depo. V2], p. 155:15-20 [BCS made no payments to attorneys related to the deindexing]. |
| 57.     BCS has produced no evidence beyond speculation that it would have received donations but for the deindexing. | 57.     Bergmark Decl., ¶¶15-16; Exs. 83, 104-105 [BCS PayPal and Bank Statements]; Ex. 52 [BCS' 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], Response No. 1 [Erroneously Labeled No. 2]; Ex. 66 [1/13/23 Second Amended Responses to Katherine McNamara First Set of Interrogatories], Response No. 9; *see also* Beauregard Decl., ¶6, Ex. 3 [BCS could not track its website traffic in March 2022]; McNamara Decl. ¶47 [same]; Walton Decl., ¶34 [same]; Exs. 92-94; Ex. 77 [Magill Depo. V1], pp. 92:8-18 [PMQ can't speculate what donations were lost], 95:24-96:3 ["...[I]t's hard to tell the cause and effect of anything that didn't happen."]. |

| | |
|---|---|
| 58.     At the time of the alleged deindexing in March 2022, BCS was not properly registered as a charitable organization with the California Attorney General. | 58.     RJN; Exs. 61-64 [5/10/22 Notice; 4/14/23 Final Notice; 7/18/23 Initial Registration; 9/15/23 Notice of Delinquency]; Ex. 77 [Magill Depo. V1], pp. 115:4-116:10 [PMQ thinks BCS registered in 2023]; 117:9-120:16 [BCS has never been told that it is no longer delinquent], 121:10-16 [same], 126:7-21 [BCS did not successfully register with the AG until 7/18/23], 133:13-134:5 [PMQ is not aware whether BCS ever filed IRS Form 990's despite receiving donations]. |

**ISSUE NO. 5: WHITELEY IS ENTITLED TO JUDGMENT ON THE SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE BCS CANNOT ESTABLISH ANY RESULTING LOSS OR DAMAGE WITHIN THE MEANING OF THE CDAFA**

| UNCONTROVERTED MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 59.     Whiteley incorporates by reference Uncontroverted Material Fact Nos. 52 through 58 above. | 59.     Whiteley incorporates by reference the evidence cited in Uncontroverted Material Fact Nos. 52 through 58 above. |

DATED: November 22, 2023        JULANDER, BROWN & BOLLARD

By:     */s/ M. Adam Tate*
Dirk O. Julander
Catherine A. Close
M. Adam Tate
Attorneys for Defendants
KATHERINE MCNAMARA and JEREMY WHITELEY
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of November, 2023, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification to all parties of record or persons requiring notice.

*/s/ Helene Saller*
Helene Saller

20
SEPARATE STATEMENT