Dirk O. Julander, Bar No. 132313
  doj@jbblaw.com
Catherine A. Close, Bar No. 198549
  cac@jbblaw.com
M. Adam Tate, Bar No. 280017
  adam@jbblaw.com
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone:  (949) 477-2100
Facsimile:  (949) 477-6355

Attorneys for Defendants
KATHERINE MCNAMARA and
JEREMY WHITELEY



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) nonprofit,<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE MCNAMARA, an Individual; JEREMY WHITELEY, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-002052-SB-MAA<br><br>**DEFENDANTS' STATUS REPORT REGARDING OUTCOME OF PHASE 1 RE: MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS UNDER RULE 37 (Dkt. 98)**<br><br>Trial:   April 22, 2025<br><br>[*Assigned to the Hon. Maria A. Audero*] |

Pursuant to the Court's August 11, 2021 Minute Order (Dkt. 120), as amended by the Court's September 14, 2023 Minute Order (Dkt. 138), Defendants KATHERINE MCNAMARA and JEREMY WHITELEY (collectively "Defendants") provide the following Status Report Regarding Outcome of Phase 1 related to the Motion for Evidentiary and Monetary Sanctions Under Rule 37 (Dkt. 98).

As noted in the Court's August 11, 2021 Minute Order (Dkt. 120), Phase 1 was designed to serve three purposes: (a) for Defendants to obtain the Discovery at Issue, (b) to inform the Court regarding the nature and extent of prejudice to Defendants from the inability to obtain the entirety of Discovery at Issue, and (c) to inform the Court whether any of the Discovery at Issue has been spoliated. The "Discovery at Issue" consists of the documents in the possession of BCS's officers and directors from whom BCS failed to collect documents as required by the Stipulated Order re: Amended Joint E-Discovery Plan and Protocol for Discovery of Electronically Stored Information (hereinafter the "EDO"). (Dkt. 41.) The "Custodians" at issue in the EDO are Apryl Alexander, Ariana Conroyd, Bobby Cook, Deanna Hassanpour, Denette King, Dorit Saberi, Eugene Furnace, Jennifer Magill, Jesse Jensen, Lenore Silverman, Megan Hurwitt, Noelle Beauregard, Shelby Kirchoff, and Vanessa Hughes (collectively the "Custodians"). (Dkt. 41, p. 2, ¶1.)

To facilitate the obtaining of the Discovery at Issue the Parties were ordered to submit a stipulation regarding how Phase 1 would be carried out, which was later entered as an Interim Court Order on August 22, 2023. (Dkt. 132.)

1. **Status Regarding Step 1:**

The Interim Order first required that BCS send evidence preservation letters to each of the Custodians. (Dkt. 132, ¶1.) Because such letters are protected by the attorney-client privilege, Defendants were not copied, but Defendants have no reason to believe the letters were not sent.

`

2. **Status Regarding Step 2:**

Step 2 required that "BCS reach out to each of the Custodians, inform him or her of the Court's statements made during IDC 10, inquire as to whether he or she possesses BCS-related documents in any of his or her personal data sources listed in Paragraph 4.4 of the [EDO], and request a Declaration identifying which personal data sources contain BCS-related documents and whether the Custodian is willing to make the data source available to BCS for collection of such documents." (Dkt. 132, ¶2.) Because such communications are protected by the attorney-client privilege, Defendants were not participants, but Defendants have no reason to believe the communications were not made.

The result of Step 2 was a mixed bag:

- Apryl Alexander, Arianna Conroyd, Jennifer Magill, and Vanessa Hughes executed declarations agreeing to search for documents from those data sources which might contain any BCS-related documents.

- Jesse Jensen executed a declaration agreeing to search for documents from certain data sources. Confusingly, the declaration also stated that Jensen was unsure whether or not he even had some of the data sources.

- Dee Anna Hassanpour, Dorit Saberi, and Denette King executed declarations stating that they did not have BCS-related documents.

- Eugene Furnace, Shelby Kirchoff, Meg Hurwitt, and Lenore Silverman failed to execute declarations as part of Step 2.

- BCS had originally failed to collect documents from Bobby Cook and Noelle Beauregard. As detailed below, Defendants believe that some critical responsive documents that were in the possession of Bobby Cook and Noelle Beauregard have been lost, including the original screen shots taken by Noelle Beauregard during her investigation into the alleged deindexing. However, since Bobby Cook and Noelle Beauregard had previously produced the documents still in their possession pursuant to subpoenas and sat for

`

depositions, the parties agreed that they would be excused from signing declarations.

3.  **Status Regarding Step 3:**

Step 3 required that, "for each Custodian who indicates that he or she possesses BCS-related documents on one or more of his or her personal data sources and is willing to make the data source(s) available for collection, BCS shall collect the documents from the identified data source(s) dating from January 2021 to the present, run the agreed-upon search terms to locate any potentially responsive documents in accordance with the EDO, and produce any such documents on a rolling basis to Defendants, identifying the Custodian from whom they were collected, which production shall be complete by no later than September 9, 2023." (Dkt. 132, ¶3.) This deadline was subsequently extended to October 3, 2023. (Dkt. 138, ¶1.)

As detailed in the previous section, Apryl Alexander, Jesse Jensen, Arianna Conroyd, Jennifer Magill, and Vanessa Hughes executed declarations agreeing to search for documents from at least some of their data sources.

- *Apryl Alexander*: BCS produced documents purporting to be from Apryl Alexander. Defendants currently do not have evidence that the production is incomplete.

- *Ariana Conroyd*: Despite her declaration stating that she would search for documents, BCS never produced any additional documents purporting to be from Arianna Conroyd.

- *Jesse Jensen*: Despite his declaration stating that he would search for documents, BCS never produced any additional documents purporting to be from Jesse Jensen.

- *Jennifer Magill*: BCS produced documents purporting to be from Jennifer Magill. As discussed below, Defendants have a good faith reason to believe that the production is incomplete.

`

1

- ***Vanessa Hughes***:  BCS produced documents purporting to be from

2

  Vanessa Hughes. As discussed below, Defendants have a good faith reason to

3

  believe that the production is incomplete.

4

**4.** <u>**Status Regarding Step 4:**</u>

5

Step 4 allowed Defendants to issue subpoenas to any of the Custodians if (1)

6

the Custodian did not provide a declaration in Step 2 or (2) Defendants have a

7

reasonable basis to believe that the Custodian has additional responsive documents

8

that were not produced. (Dkt. 132, ¶4.) As detailed below, Defendants attempted to

9

serve the subpoenas, but their efforts were largely unsuccessful because many of the

10

custodians either actively avoided service or, in one case, completely ignored a

11

subpoena that was validly served:

12

- ***Megan Hurwitt***: Megan Hurwitt was personally served with a

13

  subpoena at her home in Texas on September 25, 2023. On October 30,

14

  2023, Hurwitt responded to the subpoena by executing a Certification

15

  of No Records, stating that she "relinquished all accounts owned by

16

  BCS upon resigning."

17

- ***Lenore Silverman:*** Lenore Silverman was personally served with a

18

  subpoena at her home in California. Following service, Lenore

19

  Silverman provided some documents and a declaration stating that she

20

  resigned from the board of directors of Breaking Code Silence in June

21

  2023 "when it became apparent that all energy being directed toward

22

  litigation regarding matters not directed toward helping children and

23

  teens."

24

- ***Shelby Kirchoff***: Shelby Kirchoff was successfully personally served

25

  with a subpoena on September 26, 2023, at her place of work in

26

  Nevada. Despite being served, Shelby Kirchoff ignored the subpoena.

27

28

- ***Eugene Furnace***: Five attempts were made to serve Eugene Furnace at his confirmed residence (his name is on the mailbox) but, because he lives in a gated apartment complex, the process server could not gain entry. The process server conducted short stakeouts in an effort to gain entry, each of which were unsuccessful.

- ***Jesse Jensen***: Numerous unsuccessful attempts have been made to serve Jesse Jensen with the subpoena at his home in Utah. It is clear that he is actively evading service. Though it appeared that he was home during several attempts, he consistently refused to answer the door. At one time, his wife was approached leaving the house by the process server and she ignored him entirely. The process server conducted various stakeouts in the hope that Jensen would leave the house at some point, but none were successful.

- ***Vanessa Hughes***: Numerous unsuccessful attempts have been made to serve Vanessa Hughes with the subpoena and it is clear that she is actively evading service. Though it was confirmed that she was home several times, Hughes refused to come to the door and, on one occasion, even instructed her "worker" to enter the house through the backyard so that the process server (who was standing next to the worker) could not serve her with the subpoena.

5. **Prejudice/Spoliation:**

### ***Jesse Jensen***

Jesse Jensen is the Chief Information Security Officer for BCS. BCS listed Jesse Jensen as a percipient witness in their Initial Disclosures. He was also identified as one of the primary investigators into the alleged deindexing of BCS's website.

As detailed above, Jesse Jensen executed a declaration stating that he would search for responsive documents, but he never produced any additional documents.

`

1  Defendants attempted to serve Jesse Jensen with a subpoena, including initiating

2  stake outs, but Defendants' attempts were unsuccessful because Jesse Jensen was

3  actively avoiding service.

4      Defendants believe that Jesse Jensen is withholding or has destroyed many of

5  the most critical documents in the case. First, on October 5, 2023, during an

6  informal discovery conference, BCS's counsel Jason Leuddeke explained to the

7  Court that Jesse Jensen's failure to produce documents was taking longer than

8  expected because Jesse Jensen could only search for documents at night and the

9  number of documents that Jesee Jensen had to produce was "voluminous." Thus,

10 there are apparently hundreds (if not thousands) of documents in Jesse Jensen's

11 possession that have not been produced.

12     Second, at his deposition, Jesse Jensen testified that he advised all of BCS

13 leadership to use the Signal chat application and personal emails for BCS business.

14 Jesse Jensen testified that he personally had "somewhere between probably 50 and a

15 few hundred" Signal conversations related to the Defendants and this lawsuit. To

16 date, Jesse Jensen has produced none of these Signal chats. As stated in the Court's

17 order, the fact that other Custodians may have produced Signal conversations, does

18 not excuse Jesse Jensen's failure. (Dkt. 132, ¶3.)

19     Third, at his deposition, Jesse Jensen also testified that he had possession of a

20 WordPress website backup made during the time of the alleged deindexing incident,

21 that he had not produced the backup, and that no one from BCS ever asked him to

22 produce it. To date, this backup still has not been produced. Notably, the WordPress

23 backups that BCS previously produced are not sufficient as BCS did not produce the

24 backups made during the time of the alleged deindexing.

25     Fourth, in his deposition, Jesse Jensen testified that he created screenshots at

26 the time of the alleged deindexing and that he believes that he still has the originals.

27 After the deposition, Defendants' counsel reached out to Tamany Bentz to inquire

28 about the missing screenshots. Ms. Bentz replied with several bates numbers.

`

However, upon inspection of the metadata, these screenshots either were not created by Jesse Jensen or were not from the time of the alleged deindexing.

Fifth, BCS never produced any of the following data sources for Jesse Jensen which presumably would have responsive documents:

- o Emails from his personal email after April 2022
- o Cell phone contents
- o Text Messages
- o Apple Messages
- o iCloud
- o Computer contents
- o Signal chats
- o Google Drive Contents

### ***Noelle Beauregard***

Noelle Beauregard was the Chief Communications Officer and Webmaster for the website at Breaking Code Silence between 2022 and March 2023. Noelle Beauregard was identified (along with Jensen) as the other primary investigator of the alleged deindexing.

Defendants have reason to believe that documents that were in Noelle Beauregard's possession while she was still working at BCS have since been destroyed.  Specifically, Noelle Beauregard sat for a deposition after being served with a subpoena in March 2023.  In her deposition, she admitted to taking various screenshots during the alleged deindexing and ***deleting the original screenshots***.

BCS has produced various screenshots which were purportedly taken Noelle Beauregard; however, none of the screenshots that have been produced by BCS are the originals with the original metadata. It appears that BCS was only able to locate those screenshots that were attached to emails or sent through Slack. [1]

---

[1] In its portion of the joint statement on the motion for evidentiary sanctions, BCS identified 10



`

1    Metadata in CFAA cases is extremely important. Typically, in a cyber-

2    hacking case, evidence is preserved in its original format and a hash is taken of each

3    file to prove that it had not been tampered with and provide a non-repudiation

4    method. The metadata alone provides information such as the creation time/date of

5    the file, last modification date (to prevent tampering), owner, etc. Unfortunately, in

6    this action, none of this was done. BCS never preserved the original digital evidence

7    with the metadata or even created a hash of the original file to show that the files

8    had not been tampered with since creation. As a result, Defendants have been

9    unfairly prejudiced since there is no way of knowing whether the files produced

10   have been tampered with.

11                              ***Megan Hurwitt***

12    Megan Hurwitt served as the Chief Procedural Officer at BCS between 2022

13   and early 2023. As outlined above, Megan Hurwitt originally did not execute a

14   declaration. After she was personally served with a subpoena, Hurwitt responded to

15   the subpoena by executing a Certification of No Records. Defendants have a good

16   faith reason to believe that Megan Hurwitt either has, or once had, responsive

17   documents and that the documents are either being withheld by BCS's current

18   leadership or have been spoiled.

19    First, as outlined in Jeremy Whiteley's Motion for Summary Judgment,

20   BCS's entire theory of liability rests on the faulty assumption that only a handful of

21   people had administrative access to Google Search Console around the time of the

22   alleged deindexing and that, of those people, Defendants are the most likely persons

23

24   _____

25   documents by bates numbers which BCS purports to be the original screenshots taken by Noelle
     Beauregard.  The metadata for each of these screenshots shows Jesse Jensen (not Noelle
     Beauregard) as the custodian and is missing critical information such as the date the screenshot

26   was taken and whether the screenshot had been modified.  As such, BCS clearly has not produced
     the original screenshots with the original metadata.  It appears possible that what BCS produced

27   were the screenshots that Jesse Jensen received as attachments to an email from Noelle
     Beauregard, but without the original metadata, Defendants cannot be assured that the screenshots

28   were not modified and cannot tell when the screenshots were taken.

STATUS REPORT (PHASE 1)

JULANDER BROWN
— & BOLLARD —

1  to have caused the deindexing. Megan Hurwitt was one of the few other persons

2  who had administrative access to the Google Search Console. Yet, with the

3  exception of one small group Slack chat, neither BCS nor Megan Hurwitt produced

4  any communications to or from Megan Hurwitt discussing whether Megan Hurwitt

5  had accessed the Google Search Console. Responsive documents likely exist,

6  especially since Jesse Jensen identified Megan Hurwitt as one of the persons

7  involved in the investigation.

8      Second, documents produced by other custodians reveal that Megan Hurwitt

9  used her personal email address to communicate with BCS leadership about the

10 Defendants and this litigation. Megan Hurwitt failed to produce any of the emails

11 from her personal account. Once again, the fact that others may have produced the

12 communications, does not excuse Megan Hurwitt from producing the

13 communications.

14     Third, at her deposition, Noelle Beauregard identified Megan Hurwitt as the

15 person in charge of managing the Google Analytics to track website traffic. Later, in

16 support of Defendants' motions for summary judgment, Noelle Beauregard signed a

17 declaration stating that the Google Analytics had been deactivated preventing BCS

18 from being able to tell whether it lost any web traffic as a result of the alleged

19 deindexing. However, neither Megan Hurwitt nor BCS produced any documents

20 regarding the Google Analytics being deactivated.

21                    ***Lenore Silverman***

22     Between January 2022 and June 2023, Lenore Silverman served on the Board

23 of Directors of Breaking Code Silence. She is listed as the Secretary and the Chief

24 Financial Officer for Breaking Code Silence on the Statement of Information filed

25 with the Office of the Secretary of State of California.

26     Silverman originally failed to provide a declaration. After being served with a

27 subpoena, Silverman produced a number of mostly irrelevant documents and

28 executed a declaration that she was not in possession with any other documents. As

JULANDER BROWN
— & BOLLARD —

detailed below, Defendants have a good faith reason to believe that either Silverman is not being truthful or, more likely, that the responsive documents are being withheld by BCS's current leadership or have been spoiled.

First, per BCS' bylaws, the board secretary would be responsible for the creation of all board meeting minutes. This means that Silverman should have been the custodian responsible for all board meeting minutes. Yet, neither BCS nor Silverman produced any BCS meeting minutes for 2022 or 2023.

Second, according to Jennifer Magill's 30(b)(6) deposition testimony, Lenore Silverman was a board member prior to the start of litigation and directly voted in favor of this litigation. However, no communications between Silverman and BCS that reflected any discussion or vote about litigation has ever been produced.

Third, from the productions of others, Defendants know of at least a couple emails were sent to Lenore Silverman related to Defendants and this action. Lenore Silverman never produced these communications.

### ***Jennifer Magill***

Jennifer Magill is BCS's CEO and was an officer and board member at the time of the alleged deindexing. Despite Magill's claimed willingness to provide documents from all of her data sources, including Facebook, and despite her later deposition testimony that she produced all Facebook messages to BCS's counsel, no Facebook messages from Magill as the custodian were ever produced in discovery, not even a single chat. When asked at her deposition why her Facebook messages were not produced, she testified that she assumed they were produced since they were collected by BCS's counsel.

In addition, the Signal chats produced from Magill were woefully incomplete, containing very obvious cut-off conversations with Jesse Jensen about Defendants (cut off in mid-sentence).

`

### *Vanessa Hughes*

Vanessa Hughes is BCS's current Board President and was the CEO at the time of the alleged deindexing. BCS has listed Vanessa Hughes as a percipient witness on the Rule 26(f) report and in its Initial Disclosures. Hughes was also originally one of the 30(b)(6) witnesses for BCS on numerous categories until she claimed she was medically unable to sit for deposition and her categories were reassigned.

Vanessa Hughes executed a declaration stating that she would search for responsive documents and, subsequently, did produce additional documents. As detailed below, Defendants have a good faith reason to believe that Vanessa Hughes's document production is incomplete and that many of the documents have been withheld or spoiled.

First, the Complaint alleges that BCS first discovered that its website was not appearing on Google Search after one of its volunteers made changes to the website and then ran a search on Google so she could see how the changes look. At the deposition of BCS's PMQ, Jennifer Magill revealed that Vanessa Hughes was the volunteer making changes to the website shortly before the alleged deindexing was discovered. Defendants strongly believe that Vanessa Hughes (who is not technically savvy) likely caused the website to be deindexed while making changes to the website through her own carelessness and technical ineptitude. To date, Vanessa Hughes has not produced the documents showing the changes that she was making to the website or her discovery of the deindexing.

Second, the totality of Vanessa Hughes's Facebook production is only 4 chat chains with Defendants. Vanessa Hughes's production is incomplete. At a minimum, other custodians have produced over a dozen more chats with Vanessa Hughes and persons other than Defendants.

Third, although Vanessa Hughes produced some of her Signal communications, there is evidence that Vanessa Hughes utilized Signal's

`

1   "disappearing messages" feature to shield documents from discovery. Critically,

2   Chelsea Papciak testified at her deposition that she and Hughes had discussions

3   about Defendants that were automatically deleted through the disappearing message

4   feature. Additionally, in one of the Signal chats produced, it appears that the

5   disappearing messages feature was utilized for an extended period of time to shield

6   conversations between Vanessa Hughes and Jenna Bulis.

7        Defendants believe that other Signal chats were either shielded through the

8   disappearing messages feature or that BCS simply failed to produce them. Notably,

9   Hughes produced a screenshot of her list of Signal chats which revealed a group

10  chat with Chelsea Papciak and the other defendants in the Papciak action. Vanessa

11  Hughes failed to produce this Signal chat. Additionally, there are large month-long

12  gaps in the Signal chats between Vanessa Hughes and Jesse Jensen which appear to

13  have been purposefully omitted.

14       Fourth, Vanessa Hughes's declaration states that she would search for

15  responsive documents from WhatsApp and Zoom logs, but no responsive

16  documents from these sources were ever provided. Defendants know from their time

17  at BCS that Vanessa Hughes regularly used Zoom to conduct BCS business.

18       Fifth, Vanessa Hughes' declaration states that her counsel had already

19  produced documents from her iCloud, but BCS has not actually produced such

20  documents.

21       Sixth, Vanessa Hughes did not produce any of her communications with

22  Athena Kolbe. Documents produced by BCS reveal Vanessa Hughes

23  communicating with others advising them that she was having Athena Koble take

24  screenshots of Defendants' social media activities throughout 2022. Some of the

25  screenshots were produced, but no emails, texts, or chats showing Kolbe sending

26  them to Hughes or any of the surrounding conversations about Defendants were

27  produced. At the deposition of Chelsea Papciak, Chelsea Papciak confirmed that: (1)

28  Athena Kolbe contacted Chelsea Papciak and Jenna Bulis to entice them to assist

`

BCS in suing Katherine McNamara for a large insurance payout; and (2) Vanessa Hughes also contacted Chelsea Papciak and Jenna Bulis to discuss bringing a lawsuit against Katherine McNamara and sharing the proceeds from that action with Chelsea Papciak. It strains reason to believe that Vanessa Hughes and Athena Kolbe both independently discussed this topic with Chelsea Papciak without talking to one another. Responsive communications between Vanessa Hughes and Athena Kolbe have likely been withheld.

DATED:  February 15, 2024             JULANDER, BROWN & BOLLARD


                                      By:  _____/s/ M. Adam Tate_____
                                           M. Adam Tate
                                           Catherine Close
                                           Attorneys for Defendants
                                           KATHERINE MCNAMARA and
                                           JEREMY WHITELEY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2024, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification to all parties of record or persons requiring notice.

*/s/ Helene Saller*
Helene Saller