JOHN SAMUEL GIBSON (SBN 140647)
*john.gibson@us.dlapiper.com*
JASON TAYLOR LUEDDEKE (SBN 279242)
*jason.lueddeke@us.dlapiper.com*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Telephone:   310.595.3000
Facsimile:   310.595.3300

Attorneys for Plaintiff
BREAKING CODE SILENCE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) non-profit,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE MCNAMARA, an individual, JEREMY WHITELEY, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.  2:22-CV-002052-SB-MAA<br><br>Hon. Maria A. Audero<br><br>**PLAINTIFF BREAKING CODE SILENCE'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS**<br><br>Date:  April 17, 2024<br>Time:  9:30 a.m.<br>Courtroom:  880 |

1    Plaintiff Breaking Code Silence ("BCS") hereby submits this Response to

2  Defendant Jeremy Whiteley's ("Whiteley") Separate Statement of Uncontroverted

3  Facts in support of his Motion for Summary Judgment or Alternatively Partial

4  Summary Judgment.  This Response:

5    (1) responds to Whiteley's alleged undisputed material facts and evidence

6  in support thereof, and

7    (2) sets forth additional material facts upon which BCS relies in its

8  Opposition.

9

10   **WHITELEY'S ALLEGED UNDISPUTED MATERIAL FACTS**

11

12   **ISSUE NO. 1: WHITELEY IS ENTITLED TO JUDGMENT ON THE**

13  **FIRST CLAIM FOR VIOLATION OF THE CFAA AND THE SECOND**

14  **CLAIM FOR VIOLATION OF THE CDAFA BECAUSE WHITELEY DID**

15  **NOT DEINDEX BCS'S WEBSITE FROM GOOGLE**

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
| --- | --- |
| 1.  BCS's claims for violation of the CFAA and CDAFA against Whiteley and Defendant KATHERINE MCNAMARA ("McNamara;" collectively "Defendants") are limited to the allegations that "Defendants accessed a BCS computer or account—including without limitation a Hover DNS account containing the domain names for breakingcodesilence.org and breakingcodesilence.com, the Google Search Console, and the WordPress admin dashboard/console—without authorization, or in excess of authorized access, and caused BCS's website (breakingcodesilence.org and/or breakingcodesilence.com) to be de-indexed." | Undisputed. |

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Tate Decl., ¶39; Ex. 97 [8/23/23 Letter to Gibson]; Ex. 98 [10/17/23 Email from Gibson re: Narrowing Claims]; Dkt. 146 [Stipulation]; Dkt. 147 [Order on Stipulation]. | |
| 2.  In its discovery responses and deposition testimony, BCS only claimed that Defendants deindexed the website through the Google Search Console and presented no evidence that the Defendants deindexed its website through WordPress or Hover.<br><br>Complaint ¶36; Ex. 51 [BCS's responses to McNamara's First Set of Interrogatories], Response No. 3, Appendix A ["McNamara used Whiteley's previous administrative credentials for the BCS Google account to request that the BCS website multiple times during March 8, 2022 through March 9, 2022."]; Ex. 45 [Hughes Depo.] pp. 59:14-60:2 ["the email address that was used to gain access belonged to Jeremy Whiteley."]; Ex. 48 [Jensen Depo.], pp. 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen again reiterates BCS has no evidence of WordPress access]; Ex. 47 [Beauregard Depo.], pp. 70:15-71:20; Ex. 65; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access | |

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| WordPress prior to filing the Complaint]. | |
| 3.  Whiteley did not deindex BCS's website.<br><br>Whiteley Decl., ¶25; Walton Decl., ¶¶18-26 [Re: No evidence Whiteley deindexed and most likely BCS caused the deindexing]. | Disputed. Whiteley cannot be excluded as the person who applied the deindexing request based on available evidence. Walton Decl., ¶ 23 ["I am unaware of any proof…showing who may have submitted the alleged Google deindexing request"]; Magill Decl. Ex. K [Defendants' undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]; Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; McNamara Decl. ¶¶ 36, 38, 40 [admitting that she logged into the BCS Google Webmaster Central page, gave Whiteley "ownership" permissions to the .Org Domain]; Magill Decl. Ex. G, H [McNamara previously expressed concern that Whiteley could maliciously attack the BCS website]; Magill Decl. Ex. J [Temporary removal of https://breakingcodesilence.org/ from Google Search Console that resulted in deindexing]. |
| 4.  There is no evidence that Defendants | Disputed.  Magill Decl. Ex. K |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| deindexed BCS's website.<br><br>Walton Decl., ¶¶18-26 [Re: No evidence Whiteley deindexed and most likely BCS caused the deindexing]; Exs. 85-89; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. | [Defendants' undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]; Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; McNamara Decl. ¶¶ 36, 38, 40 [admitting that she logged into the BCS Google Webmaster Central page, gave Whiteley "ownership" permissions to the .Org Domain]; Magill Decl. Ex. G, H [McNamara previously expressed concern that Whiteley could maliciously attack the BCS website]; Magill Decl. Ex. J [Temporary removal of https://breakingcodesilence.org/ from Google Search Console that resulted in deindexing]. |
| 5.  BCS failed to conduct a proper forensic investigation into the deindexing of its website to determine who was responsible for the deindexing of its website and failed to collect and preserve the necessary digital evidence.<br><br>Walton Decl., ¶39 [Re: improper investigation] and ¶28 [Re: Logs and other evidence that should have been preserved]; Ex. 48 [Jensen Depo], pp. 31:10-45:3 [Jensen background], 81:13-82:21 [Authenticating | Disputed.  Dkt. 155-4 (Jensen Dep.) at 31:10-45:3 [Jesse Jensen, the BCS volunteer who managed the incident response to Defendants' attack on the BCS website in real-time, has degree in computer science and physics, and more than a decade of technical consulting experience, including several security investigations.  Magill Decl. Ex. K & Lueddeke Decl. Ex. C [BCS |

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| report and questioning accuracy], 100:16-22 [Jensen didn't even ask Google how the website was deindexed because he presumed Defendants were at fault], 150:3-153:2 [Jensen did not investigate whether a BCS volunteer could be at fault], 172:11-173:23 [Jensen took no notes and spent an hour or two on the report], 70:17-71:9 [BCS did not backup logs to a secure place], 176:3-10, 248:13-251:3 [BCS failed to preserve Google logs], 254:22-25, 237:10-240:15 [BCS admits to deleting backups on the server], 96:1-10, 97:13-17 [BCS failed to screenshot the website not showing up on Google]; Ex. 65; Ex. 47 [Beauregard Depo.], pp. 11:3-12:13 [Foundation], 18:14-20:3 [Beauregard background], 20:4-18 [Hughes and Magill told Beauregard that Defendants were "hacking"], p. 40:17-25 [Admits deleting original documents off computer]; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]; Ex. 77 [Magill Depo. V1], pp. 22:22-23:22 [BCS deleted backups believing them to be copies]; Tate Decl., ¶30 [Google Drive logs BCS produced do not cover the date of the alleged deindexing]; Ex. 59, Response Nos. 13-16 [No investigation was conducted into other potential causes of de-indexing]. | volunteers collected digital evidence while investigating the attacks, and BCS produced dozens of screen shots, logs and other artifacts, including those identified by Jensen as most pertinent to the website attack]. |
| 6.  The only people that could have inserted an HTML "no index" tag on a page of BCS's website are people with access to BCS's WordPress account.<br><br>Walton Decl., ¶49; Whiteley Decl., ¶¶30-31. | Disputed. Dkt. 155-4 (Jensen Dep.) at 182:18-19 ["It is not necessary to access WordPress to perform the deindex attack as we described it"]; Magill Decl. Ex. J [Temporary removal of https://breakingcodesilence.org/ |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| | from Google Search Console that resulted in deindexing]. |
| 7. After their respective resignations from BCS, Defendants had no access to BCS's WordPress Account.<br><br>Whiteley Decl., ¶¶ 21, 30 and 31; Ex. 20 [7/9/21 Email confirmation]; Ex. 49 [Boyles Depo.], pp. 68:19-25, 79:21-80:7; see also, Ex. 48 [Jensen Depo.], pp. 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen again reiterates BCS has no evidence of WordPress access]; Ex. 47 [Beauregard Depo.], pp. 70:15-71:20; Ex. 65; McNamara Decl., ¶27; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. | Undisputed. |
| 8. Around the time of the alleged deindexing, BCS submitted webpages to Google marked "no-index," i.e., BCS specifically requested that Google not "index" those pages.<br><br>Whiteley Decl., ¶30; Walton Decl., ¶¶22-24; Exs. 92, 106 [Evidence of "no-index" request made on webpages related to .Org Domain]. | Disputed. Defense expert does not state that "BCS submitted" the referenced webpages. Walton Decl. ¶¶22-24 ["presumably", "submitting party could have", "I am unaware…who may have submitted", "as I understand it"]. |
| 9. On March 7, 2022 (2 days before the alleged deindexing), BCS submitted several | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| "broken" sitemaps to Google that could not be fetched.<br><br>Whiteley Decl., ¶30; Walton Decl., ¶¶22-24; Exs. 90-91 [Evidence of errors related to submission of sitemaps for .Org Domain]; Beauregard Decl., ¶3. | |
| 10.  The broken sitemap issue was corrected on March 12, 2022.<br><br>Walton Decl., ¶24; Ex. 91 [Evidence of errors related to submission of sitemaps for .Org Domain]; Beauregard Decl., ¶3. | Undisputed. |

**ISSUE NO. 2: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA AND THE SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE WHITELEY DID NOT INTENTIONALLY ACCESS WITHOUT AUTHORIZATION, OR EXCEED AUTHORIZED ACCESS TO, ANY BCS PROTECTED COMPUTER OR ACCOUNT**

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 11.  Whiteley incorporates by reference Uncontroverted Material Fact Nos. 1 through 10 above.<br><br>Whiteley incorporates by reference the evidence cited in Uncontroverted Material Fact Nos. 1 through 10 above. | No response required. |

7

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 12.  More than a year before BCS was formed, on March 11, 2020, McNamara purchased the domain <breakingcodesilence.org> (the ".Org Domain") using her own personal Hover domain registrar account and credit card.<br><br>McNamara Decl., ¶¶6-7; Ex. 5 [3/11/2020 Hover receipt]; Ex. 50 [Papciak Depo. NC], pp. 41:18-42:7, 68:19-69:10, 73:13-75:5, 252:2-13 [McNamara bought the domain and never transferred it]; Ex. 49 [Boyles Deposition], pp. 12:14-23 [Foundation], 27:21-28:17; Ex. 77 [Magill Depo. V1], p. 30:2-10. | Undisputed. |
| 13.  Since purchasing the .Org Domain in 2020, McNamara has renewed the .Org Domain each year with her own funds.<br><br>McNamara Decl., ¶7; Ex. 6 [3/10/21 Hover receipt; 2/8/22 Hover receipt; 3/10/23 Hover receipt]; Ex. 77 [Magill Depo. V1], p. 30:17-23. | Undisputed. |
| 14.  McNamara has never transferred or assigned ownership of the .Org Domain to any other person or entity.<br><br>McNamara Decl., ¶29; Ex. 11 [12/15/21 Email from Magill to McNamara]; Ex. 50 [Papciak Depo. NC], p. 252:2-13 [McNamara bought the domain and never transferred it]; Ex. 51 [8/5/22 BCS's Responses to McNamara's First Set of Interrogatories], Response No. 4 [BCS admits it was never transferred to BCS but claims it should have been]; Ex. 49 [Boyles Deposition], pp. 12:14-23 [Foundation], 27:21- | Disputed. McNamara acknowledged on numerous occasions that the .Org Domain belonged to BCS.  Magill Decl. Ex. G, H [stating that "we" own the domains, suggesting that Whiteley might extort BCS by attacking its website]; Lueddeke Decl. Ex. E [McNamara referring to "our website"] |

8

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 28:17. | |
| 15.  BCS was incorporated on March 22, 2021.<br><br>McNamara Decl., ¶12; Whiteley Decl., ¶9; Request for Judicial Notice ("RJN"), Ex. 60 [BCS Articles of Incorporation]; Complaint (Dkt. 2), ¶¶9 and 21. | Undisputed. |
| 16.  McNamara and Whiteley participated in the founding of BCS in March 2021 and were among its first interim board members.<br><br>McNamara Decl., ¶¶11-12; Whiteley Decl., ¶¶8-10; Ex. 78 [Magill Depo. V2], pp. 159:23-160:11. | Undisputed. |
| 17.  Whiteley and McNamara also stood up the information technology and assurance infrastructures as well as the website and related BCS WordPress Account.<br><br>McNamara Decl., ¶13; Whiteley Decl., ¶11; Complaint (Dkt. 2), ¶¶10-11. | Undisputed. |
| 18.  Because they were both technology professionals, board members, and created many of BCS's accounts, at one time Defendants had administrative credentials for several BCS accounts.<br><br>McNamara Decl., ¶13; Whiteley Decl., ¶¶5 and 11; Complaint (Dkt. 2), ¶10-11. | Undisputed. |
| 19.  The .Org Domain is, and has always been, housed in McNamara's personal Hover.com | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| domain registrar account which she has owned since 2016, along with all of the other domains McNamara owns.<br><br>McNamara Decl., ¶¶7 and 46(b)(ii); Ex. 21 [Hover receipts for all domains in McNamara's Hover account]. | |
| 20.  Because McNamara has been verified through Google as the domain owner, she has access to all domain-related Google services for the .Org Domain through her own Google account.<br><br>McNamara Decl., ¶¶17, 18, 46(d)(ii), 38 and 39; Ex. 8 [Google Search Console Help Page]. | Disputed as to McNamara being the domain owner.  Magill Decl. Ex. G, H [McNamara acknowledged on numerous occasions that the .Org Domain belonged to BCS, stating that "we" own the domains, suggesting that Whiteley might extort BCS by attacking its website]. |
| 21.  In March 2021 when BCS was founded, McNamara allowed the .Org Domain to direct to BCS's website and allowed BCS to acquire email addresses.<br><br>McNamara Decl., ¶¶14, 16; Whiteley Decl., ¶¶12-13; Ex. 49 [Boyles Depo.], pp. 12:14-23 [Foundation], 32:18-33:5. | Undisputed. |
| 22.  BCS has never provided McNamara any consideration for its license to use the .Org Domain, although it continues to use the .Org Domain.<br><br>McNamara Decl., ¶¶14 and 29; Ex. 49 [Boyles Deposition], pp. 12:14-23 [Foundation], 27:21-28:17; Ex. 53 [9/30/22 BCS Response to | Disputed. BCS has acknowledged its responsibility to reimburse McNamara for expenses associated with the .Org domain.  Magill Decl. Ex. Q [Expenses incurred by McNamara related to "Hover Email Accounts and Domains" and related "Cloudways |

10

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| McNamara RFAs (Set Two)], Response No. 34; Ex. 77 [Magill Depo. V1], pp. 30:17-23 [No consideration for domain], 33:18-35:1 [No consideration for volunteer agreement]. | Account"]. |
| 23.  Based on the permissions granted by McNamara to BCS when she pointed the .Org Domain to BCS's website, BCS could also access the domain-related Google services for the .Org Domain through its own Google account.<br><br>McNamara Decl., ¶38. | Undisputed. |
| 24. On June 26, 2021, Whiteley resigned as an interim director of BCS.<br>McNamara Decl., ¶22; Whiteley Decl., ¶18; Ex. 27 [6/26/21 Resignation Letter]; Ex. 28 [6/28/21 Acceptance of Resignation Letter]; Complaint (Dkt. 2), ¶¶11 and 25. | Undisputed. |
| 25.  After his resignation, Whiteley transferred to BCS his ownership and administrative credentials to all of BCS's web accounts that he had set up or could access including, specifically, the WordPress account and the BCS access to the free tools provided in the Google Search Console and Google Webmaster Central (collectively the "Google Tools").<br><br>Whiteley Decl., ¶21(c), (d), (f), (g), and (h) and 22; Ex. 33 [6/30/21 Email from Google Nonprofits]; Ex. 35 [7/9/21 Email re: WordPress]; Ex. 36 [7/12/21 Email to Proctor]; Ex. 37 [7/10/21 Emails re: google Web Services]; Ex. 38 [7/19/21 Email Alert re: Google Ads]; McNamara Decl., ¶46(a), (c), (e), | Undisputed. |

11

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| (f), (n), and (p); Ex. 20 [7/9/21 Email re: WordPress]; Ex. 22 [Screenshot BCS_0577327]; Ex. 78 [Magill Depo. V2], p. 261:3-23 [Whiteley fully cooperated in turning over all accounts]. | |
| 26.  After his removal from BCS's WordPress account and the BCS access to the Google Tools, Whiteley never accessed or made any changes to the .Org Domain or BCS's website.<br><br>Whiteley Decl., ¶30. | Disputed.  Magill Decl. Ex. K [Defendants' undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request; Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; McNamara Decl. ¶¶ 36, 38, 40 [admitting that she logged into the BCS Google Webmaster  Central page, gave Whiteley "ownership" permissions to the .Org Domain];  Magill Decl. Ex. G, H [McNamara previously expressed concern that Whiteley could maliciously attack the BCS website]. |
| 27.  On July 9, 2021, Whiteley's administrative access to BCS's WordPress Account was changed to another BCS director, Bill Boyles.<br><br>Whiteley Decl., ¶21(f); Ex. 35 [7/9/21 Email re: WordPress]; Ex. 49 [Boyles Depo.], pp. 68:19-25; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65. | |
| 28.  After July 9, Whiteley no longer had access to BCS's WordPress Account.<br><br>Whiteley Decl., ¶¶21(e) and (f), 30, and 31; Ex. 20 [7/9/21 Email re: WordPress]; Ex. 49 [Boyles Depo.], pp. 68:19-25; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. | Undisputed. |
| 29.  After July 9, 2021, Whiteley never accessed BCS's WordPress Account or made any changes to BCS's WordPress Account.<br><br>Whiteley Decl., ¶¶21(f), 22, 30, and 31; Ex. 20 [7/9/21 Email re: WordPress]; Ex. 49 [Boyles Depo.], pp. 68:19-25; *see also* Ex. 48 [Jensen | Undisputed. |

13

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65 [Depo. Ex. 9]; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. | |
| 30.  McNamara resigned from BCS on December 9, 2021.<br><br>McNamara Decl. ¶¶25-26; Ex. 10 [11/26/21 Internal Complaint Form]; Complaint, ¶¶10 and 28. | Undisputed. |
| 31.  On the evening of her resignation, Bill Boyles revoked McNamara's authorization to BCS's WordPress account.<br><br>McNamara Decl., ¶27; Ex. 49 [Boyles Depo.], pp. 79:21-80:7; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| access]; Ex. 65. | |
| 32.  Since her resignation on December 9, 2021, McNamara has not logged into or otherwise accessed the BCS WordPress account.<br><br>McNamara Decl., ¶27; Ex. 49 [Boyles Depo.], pp. 79:21-80:7; *see also* Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 81:13-83:24 [BCS's investigation revealed no evidence of malicious attempt to access WordPress], 181:23-182:21 [Jensen admits that BCS is not contending that Defendants accessed WordPress], 186:10-15 [Jensen reiterates that BCS is not contending that defendants accessed WordPress], 199:5-200:13 [Jensen reiterates that BCS has no evidence of WordPress access]; Ex. 65; Ex. 77 [Magill Depo. V1], pp. 13:11-15:10 [BCS was aware that Defendants did not access WordPress prior to filing the Complaint]. | Undisputed. |
| 33.  After her resignation from BCS, BCS requested that McNamara execute an Intellectual Property Assignment Agreement, but McNamara refused.<br><br>McNamara Decl., ¶29; Ex. 11 [12/15/21 Email from Magill with attached Draft Assignment Agreement]; Ex. 77 [Magill Depo. V1], p. 43:9-11. | Undisputed. |
| 34.  McNamara accesses the .Org Domain and all of the other domains she owns through her personal Google Account using her own personal Google credentials at | Undisputed. |

15

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| iristheangel@gmail.com.<br><br>McNamara Decl., ¶¶36-38. | |
| 35.  On March 11, 2021, McNamara received alerts from Google informing her that a BCS email address she did not recognize was added to the Google Tools for the .Org Domain.<br><br>McNamara Decl. ¶36. | Undisputed. |
| 36.  Fearing someone was trying to steal her .Org Domain, on March 11, 2022, McNamara used her own personal Google credentials at iristheangel@gmail.com to sign on to the Google Tools and added Whiteley's email, jeremy@medtexter.com, to the Google Tools for the .Org Domain.<br><br>McNamara Decl., ¶¶32-38; Whiteley Decl., ¶26; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:14-60:2; Ex. 71 [Depo. Ex. 28]; Walton Decl., ¶20. | Disputed as to the reason McNamara logged into the BCS Google Tools and added Whiteley as an owner.  Magill Decl. Ex. K [screenshots showing hours-long attack by McNamara including assigning ownership to fictitious persons (comments@whitehouse.gov and president@whitehouse.gov)]; Magill Decl. Ex. M [Whiteley added as an owner of the website again on March 29, 2022, weeks after initial attack]. |
| 37.  Whiteley and McNamara at all times understood and believed that McNamara was and is the owner of the .Org Domain and had the authority to delegate legitimate permissions to Whiteley to access to the Google Tools for the .Org Domain.<br><br>Whiteley Decl., ¶14; McNamara Decl., ¶¶6-7, 14, 17-18, 29, 36, 39, 43; Exs. 5-6 [Hover Receipts]; Ex. 17 [3/18/22 Letter to DLA | Disputed.  Magill Decl. Ex. G, H [McNamara acknowledged on numerous occasions that the .Org Domain belonged to BCS, stating that "we" own the domains, suggesting that Whiteley might extort BCS by attacking its website]. |

16

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Piper]; *see also* Ex. 49 [Boyles Depo.]. pp. 27:21-28:17 [Former board member believes McNamara owns the .Org Domain], 32:18-33:5 [BCS's use of the .Org Domain was only meant to be temporary]. | |
| 38.  Almost immediately after McNamara added Whiteley's email, jeremy@medtexter.com, to the Google Tools for the .Org Domain, an unknown person (later determined to be a BCS volunteer) revoked that access.<br><br>McNamara Decl., ¶40; Whiteley Decl., ¶¶26-27; Ex. 48 [Jensen Depo.], pp. 109:20-113:22; Ex. 47 [Beauregard Depo.], pp. 19:25-20:18 [Removing access]; pp. 112:8-113:12 [Discussing Depo. Ex. 27 Screenshot]; Ex. 70 [Depo. Ex. 27]; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:18-60:2; Ex. 71 [Depo. Ex. 28]. | Undisputed. |
| 39.  Several times, McNamara repeatedly re-added jeremy@medtexter.com to the Google Tools for the .Org Domain, and someone (later determined to be a BCS volunteer) repeatedly revoked the access.<br><br>McNamara Decl., ¶40; Whiteley Decl., ¶¶26-27; Ex. 48 [Jensen Depo.], pp. 109:20-113:22; Ex. 47 [Beauregard Depo.], pp. 19:25-20:18 [Removing access]; pp. 112:8-113:12 [Discussing Depo. Ex. 27 Screenshot]; Ex. 70 [Depo. Ex. 27]; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:14-60:2; Ex. 71 [Depo. Ex. 28]. | Undisputed. |
| 40.  Other than adding the email addresses to the Google Tools for the .Org Domain, | Disputed.  Magill Decl. Ex. K [Defendants' undisputed and |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| McNamara took no action whatsoever with respect to the Org Domain or BCS's website.<br><br>McNamara Decl., ¶42; Walton Decl., ¶¶28-34 [Re: No evidence]; Exs. 48, 92-94, 100-102 [same]. | intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]; Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; McNamara Decl. ¶¶ 36, 38, 40 [admitting that she logged into the BCS Google Webmaster Central page, gave Whiteley "ownership" permissions to the .Org Domain]. |
| 41.  McNamara did not request that the BCS website be deindexed in March 2022, or any other time, did not change or alter any portion of BCS's website after her resignation, and did not aid, assist, or conspire with anyone else in doing so.<br><br>McNamara Decl., ¶42; Walton Decl., ¶23 [Re: No evidence]; Exs. 48, 92-94, 100-102 [same]; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. | Disputed.  Magill Decl. Ex. K [Defendants' undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]; Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; McNamara Decl. ¶¶ 36, 38, 40 [admitting that she logged into the BCS Google Webmaster Central page, gave Whiteley "ownership" permissions to the .Org Domain]. |
| 42.  After his email was added to the Google Tools for the .Org Domain on March 11, 2022, | Undisputed. |

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| beginning at about 2:15 PM PST (March 12, 2022 at 9:15 PM UTC), at McNamara's request, Whiteley used his email address to browse to the Google Webmaster Central and observe the ownership history for the .Org Domain and the additions and removals of permissions.<br><br>McNamara Decl., ¶¶36-40; Whiteley Decl., ¶¶26-27; Walton Decl., ¶¶20, 28-34 [Re: No evidence]; *see also,* Ex. 47 [Beauregard Depo.], pp. 58:14-60:2; Ex. 71 [Depo. Ex. 28]. | |
| 43.  Other than browsing into the Google Webmaster Central webpage to view the strange additions and removals of permissions, Whiteley took no action with respect to the .Org Domain or BCS's website.<br><br>Whiteley Decl., ¶28; Walton Decl., ¶20; Exs. 70-72 [Google Logs]; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. | Disputed. Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; Dkt. 155-4 (Jensen Dep.) at 99, 101, 111-112 [Whiteley had administrative access that would allow him to cause the deindexing]. Whiteley's undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request.  Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; Dkt. 155-4 (Jensen Dep.) at 99, 101, 111-112 [Whiteley had administrative access that would |

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
|  | allow him to cause the deindexing]; Magill Decl. Ex. K [Whiteley's undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]. |
| 44.  BCS claims that requests to deindex BCS's website were made on March 8 or 9, 2022.<br><br>Complaint ¶40; Ex. 51 [8/5/22 BCS Responses to McNamara Interrogatories (Set One)], Appendix A, p. 1; Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation], 92:25-93:13; Ex. 47 [Beauregard Depo.], p. 50:13-17. | Undisputed. |
| 45.  Whiteley did not have "ownership" permissions to the .Org Domain until March 11, 2022, beginning at about 2:15 PM PST (March 12, 2022 at 9:15 PM UTC).<br><br>McNamara Decl., ¶36; Whiteley Decl., ¶¶26-27; Walton Decl., ¶20; Exs. 85-89 [Logs]; Ex. 48 [Jensen Depo.], pp. 11:20-23 [PMQ Designation],170:20-171:19 [Jensen is not aware of any other instances that Whiteley had access], 111:14-112:13, 113:2-22, 123:16-124:5, 127:12-129:3, 144:16-149:22 [Jensen admits that none of the evidence preserved shows Whiteley had access on 3/9/21], 153:15-154:14 [Jensen admits there is no evidence to show Whiteley had access on 3/9/21]; Ex. 47 [Beauregard Depo.], pp. 50:18-52:3, 53:7-21, 54:5-20; Ex. 68 [Depo. Ex. 24]; Ex. 69 [Depo. | Disputed.  Dkt. 155-4 (Jensen Dep.) at 99, 101, 111-112 [Whiteley had administrative access when the investigation into the deindexing began]. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Ex. 26]. | |
| 46.  In April 2021, BCS purchased the .Com Domain for its own use and housed it in McNamara's Hover account.<br><br>McNamara Decl., ¶¶20, 46(b)(i); Whiteley Decl., ¶15; Ex. 9 [4/6/21 Assignment Agreement]. | Undisputed. |
| 47.  In March 2022, McNamara created a separate Hover domain registrar account for the .Com Domain and provided BCS with the login credentials for the separate Hover account so that BCS could migrate its website to the .Com Domain.<br><br>McNamara Decl., ¶¶43, 46(b)(i); Ex. 17 [3/18/22 Letter from McNamara's counsel]; Ex. 18 [3/24/22 Email from McNamara's counsel to DLA]. | Undisputed. |
| 48.  Whiteley has never had access to, or accessed, any Hover.com domain registrar account that housed either the .Org Domain or the .Com Domain, including McNamara's Hover account and the account McNamara created in March 2022 for the .Com Domain.<br><br>McNamara Decl., ¶¶45, 46(b)(i), (b)(ii); Whiteley Decl., ¶32. | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

**ISSUE NO. 3: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA AND SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE BCS CANNOT ESTABLISH THAT WHITELEY ACTED IN CONSPIRACY OR CONCERT WITH, AIDED, OR ASSISTED MCNAMARA IN INTENTIONALLY ACCESSING A BCS PROTECTED COMPUTER OR ACCOUNT WITHOUT AUTHORIZATION, OR IN EXCEEDING AUTHORIZED ACCESS, AND CAUSING BCS'S WEBSITE TO BE DEINDEXED FROM GOOGLE**

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 49.  Defendants did not have an agreement to access any BCS account or computer without authorization.<br><br>Whiteley Decl., ¶25, 28; McNamara Decl., ¶24. | Disputed.  Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain" at McNamara's request]; McNamara Decl. ¶¶ 36, 38, 40 [admitting that she logged into the BCS Google Webmaster Central page, gave Whiteley "ownership" permissions to the .Org Domain]; Magill Decl. Ex. K [Defendants' undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]. |
| 50. Whiteley did not aid, assist, or conspire with McNamara to access any BCS account or | Disputed. Whiteley Decl. ¶¶ 27, 30 [Whiteley admits that he |

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| computer.<br><br>Whiteley Decl., ¶25; McNamara Decl., ¶24. | accessed the BCS Google Search Console in collaboration with McNamara, logging into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; Dkt. 155-4 (Jensen Dep.) at 99, 101, 111-112 [Whiteley had administrative access that would allow him to cause the deindexing]. |
| 51.  Whiteley took no action which would cause or contribute to the deindexing of BCS's website.<br><br>Whiteley Decl., ¶25; McNamara Decl., ¶24; Beauregard Decl., ¶7 [BCS's investigation revealed no conclusive evidence that Defendants were responsible for the deindexing]. | Disputed.  Magill Decl. Ex. K [Whiteley's undisputed and intentional interference with the BCS Google Search Console is circumstantial evidence that Defendants also submitted the deindexing request]; Whiteley Decl. ¶¶ 27, 30 [admitting that he logged into the BCS Google Webmaster Central and "accessed the Google tools for the .Org Domain"]; Dkt. 155-4 (Jensen Dep.) at 99, 101, 111-112 [Whiteley had administrative access that would allow him to cause the deindexing]. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

**ISSUE NO. 4: WHITELEY IS ENTITLED TO JUDGMENT ON THE FIRST CLAIM FOR VIOLATION OF THE CFAA BECAUSE BCS CANNOT ESTABLISH RESULTING LOSS OR DAMAGE OF AT LEAST $5,000.00 WITHIN THE MEANING OF THE CFAA**

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 52.  BCS claims that it suffered three potential sources of loss or damage: (1) volunteer time; (2) attorney hours; and (3) potential lost donations.<br><br>Ex. 52 [BCS's 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], No. 1. | Undisputed. |
| 53.  On March 12, 2022, BCS's website was appearing on Google Search again.<br><br>Ex. 48 [Jensen Depo.], pp. 90:24-92:4; Ex. 77 [Magill Depo. V1], p. 57:9-13 [Magill adopting Jensen's testimony]. | Undisputed. |
| 54.  BCS's investigation into the alleged hacking was conducted by, and the investigation report was prepared by, unpaid volunteers.<br><br>Ex. 47 [Beauregard Depo.], pp. 11:3-12:13 [Foundation], 12:22-25 [Was not paid for the investigation]; Ex. 48 [Jensen Depo.], pp. 167:23-168:13 [No cost re: Whiteley being added to Domain account/volunteer time only]; Ex. 45 [Hughes Depo. NC], pp. 13:14-17 [PMQ Designation], 68:6-69:7 [Hughes has no knowledge if TXT Investigation cost anything], 70:13-71:7 [Hughes knows of no cost re: Whiteley being added to Domain account], | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 74:1-75:10 [Hughes knows of no cost re: Google Drive], 76:20-25 [Hughes knows of no cost re: deindexing investigation]; Ex. 46 [Cook Depo.], pp. 119:4-20, 120:4-13, 122:11-16; Ex. 52 [BCS's 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], No. 1, p. 5 ["Plaintiff is a charitable organization classified as a 501(c)(3) that is primarily run by volunteers. As a result, Plaintiff is unable to quantify the monetary value of the amount of time Plaintiff's employees and/or representatives, including Plaintiff's lawyers, incurred..."]; Beauregard Decl., ¶3; Ex. 77 [Magill Depo. V1], pp. 49:16-50:19 [No volunteers were paid], 65:19-71:25 [PMQ is unable to quantify the amount of hours or the value of volunteer time]. | |
| 55. BCS did not incur any legal fees in connection with its investigation into the alleged hacking.<br><br>Ex. 55 [BCS's 3/10/23 Amended Responses to Whiteley RFPs (Set 3)], Response No. 32; Tate Decl., ¶13; Ex. 57 [2/22/23 Letter from DLA Piper]; Ex. 56 [DLA Spreadsheet BCS_0770224 ***"CONFIDENTIAL"–Lodged conditionally under seal];*** Ex. 52 [BCS' 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], Response No. 1, p. 5 ["Plaintiff is a charitable organization classified as a 501(c)(3) that is primarily run by volunteers. As a result, Plaintiff is unable to quantify the monetary value of the amount of time Plaintiff's employees and/or representatives, including Plaintiff's lawyers, incurred..."]; Ex. 77 [Magill | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Depo. V1], pp. 105:20-106:22 [BCS made no payments to attorneys related to the deindexing]; Ex. 78 [Magill Depo. V2], p. 155:15-20 [Same]. | |
| 56.  BCS has never paid any amount of money to anyone to investigate the allegations of the Complaint.<br><br>Bergmark Decl., ¶¶12-14 [No evidence of payments to anyone]; Ex. 104 [BCS Bank Statements]; Ex. 47 [Beauregard Depo.], pp. 11:3-12:13 [Foundation], 12:22-25 [Was not paid for the investigation]; Ex. 48 [Jensen Depo.], pp. 167:23-168:13 [No cost re: Whiteley being added to Domain Account/Volunteer time only]; Ex. 45 [Hughes Depo. NC], pp. 13:14-17 [PMQ Designation], 68:6-69:7 [Hughes has no knowledge if TXT Investigation cost anything], 70:13-71:7 [Hughes knows of no cost re: Whiteley being added to Domain Account], 74:1-75:10 [Hughes knows of no cost re: Google Drive], 76:20-25 [Hughes knows of no cost re: deindexing investigation]; Ex. 46 [Cook Depo.], pp. 119:4-20, 120:4-13, 122:11-16; Ex. 52 [BCS's 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], No. 1, p. 5 ["Plaintiff is a charitable organization classified as a 501(c)(3) that is primarily run by volunteers. As a result, Plaintiff is unable to quantify the monetary value of the amount of time Plaintiff's employees and/or representatives, including Plaintiff's lawyers, incurred..."]; Beauregard Decl., ¶3; Ex. 77 [Magill Depo. V1], pp. 49:16-51:23 [No volunteers were paid and PMQ was unable to | Undisputed. |

26

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| point to any expense incurred associated with the de-indexing], 65:19-71:25 [PMQ is unable to quantify the amount of hours or the value of volunteer time], 105:10-106:22 [BCS did not pay its attorneys]; Ex. 78 [Magill Depo. V2], p. 155:15-20 [BCS made no payments to attorneys related to the deindexing]. | |
| 57.  BCS has produced no evidence beyond speculation that it would have received donations but for the deindexing.<br><br>Bergmark Decl., ¶¶15-16; Exs. 83, 104-105 [BCS PayPal and Bank Statements]; Ex. 52 [BCS' 12/30/22 Amended Responses to McNamara Interrogatories (Set One)], Response No. 1 [Erroneously Labeled No. 2]; Ex. 66 [1/13/23 Second Amended Responses to Katherine McNamara First Set of Interrogatories], Response No. 9; *see also* Beauregard Decl., ¶6, Ex. 3 [BCS could not track its website traffic in March 2022]; McNamara Decl. ¶47 [same]; Walton Decl., ¶34 [same]; Exs. 92-94; Ex. 77 [Magill Depo. V1], pp. 92:8-18 [PMQ can't speculate what donations were lost], 95:24-96:3 ["...[I]t's hard to tell the cause and effect of anything that didn't happen."]. | Disputed.  Magill Decl. Ex. C [GiveButter donations for DC event]; Magill Decl. Ex. E [Compilation of BCS production documents re: GiveButter donations for DC event]; Magill Decl. Ex. B [PayPal Donations for DC event]; Magill Decl. Ex. D [Compilation of BCS production documents re: PayPal donations for DC event]. |
| 58.  At the time of the alleged deindexing in March 2022, BCS was not properly registered as a charitable organization with the California Attorney General.<br><br>RJN; Exs. 61-64 [5/10/22 Notice; 4/14/23 Final Notice; 7/18/23 Initial Registration; 9/15/23 Notice of Delinquency]; Ex. 77 [Magill Depo. | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| V1], pp. 115:4-116:10 [PMQ thinks BCS registered in 2023]; 117:9-120:16 [BCS has never been told that it is no longer delinquent], 121:10-16 [same], 126:7-21 [BCS did not successfully register with the AG until 7/18/23], 133:13-134:5 [PMQ is not aware whether BCS ever filed IRS Form 990's despite receiving donations]. | |

**ISSUE NO. 5: WHITELEY IS ENTITLED TO JUDGMENT ON THE SECOND CLAIM FOR VIOLATION OF THE CDAFA BECAUSE BCS CANNOT ESTABLISH ANY RESULTING LOSS OR DAMAGE WITHIN THE MEANING OF THE CDAFA**

| Undisputed Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 59.  Whiteley incorporates by reference Uncontroverted Material Fact Nos. 52 through 58 above.<br><br>Whiteley incorporates by reference the evidence cited in Uncontroverted Material Fact Nos. 52 through 58 above. | No response required. |

**BCS' ADDITIONAL MATERIAL FACTS**

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 1.  McNamara is well-known in the cybersecurity field, is considered a subject matter expert, and holds over 30 industry | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| certifications.<br><br>Magill Decl. Ex. P. | |
| 2.  Whiteley has extensive experience in information technology.<br><br>McNamara Decl. ¶ 13. | |
| 3.  McNamara purchased the .Org Domain to use it in connection with TTI advocacy efforts and to prevent any third-party from purchasing it.<br><br>McNamara Decl. ¶¶ 5-6. | |
| 4.  The .Org Domain has routed to BCS' website since the website was established.<br><br>Magill Decl. ¶ 5. | |
| 5.  The BCS website bears BCS' name, branding, and trademark.<br><br>Magill Decl. ¶ 6, Ex. A. | |
| 6.  The BCS website has been used by BCS since the website was established.<br><br>Magill Decl. ¶ 6. | |
| 7.   BCS uses the Website as its principal means of communicating with and receiving donations from the community. | |

29

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Magill Decl. ¶ 6. | |
| 8.  Upon Whiteley's resignation from BCS, McNamara feared he would retaliate against BCS.<br><br>Magill Decl. Ex.  G, H. | |
| 9.  On July 4, 2021, McNamara accused Whiteley of "threats, extortion, or blackmail," "abusive behavior," and of "encourag[ing] sabotage" of BCS.<br><br>Lueddeke Decl. Ex. D. | |
| 10.  On July 4, 2021, McNamara believed Whiteley "could find some backend way to get [the BCS website] off the host."<br><br>Magill Decl. Ex. G. | |
| 11.  On July 4, 2021, McNamara asked, "So if Jeremy somehow takes down the site, we can have it back up with new hosting quickly, right?"<br><br>Magill Decl. Ex. G. | |
| 12.  On July 4, 2021, McNamara wrote, "We also own the domains" in reference to the BCS website.<br><br>Magill Decl. Ex. G. | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| 13.  On July 6, 2021, McNamara had "a feeling he [Whiteley] is going to nuke the website."<br><br>Magill Decl. Ex. H. | |
| 14.  Following her resignation from BCS, McNamara became a member of Unsilenced.<br><br>Magill Decl. Ex. I. | |
| 15.  Following his resignation from BCS, Whiteley became a member of Unsilenced.<br><br>Magill Decl. Ex. I. | |
| 16.  Unsilenced is an organization that serves the same TTI community as BCS.<br><br>Magill Decl. Ex. L. | |
| 17.  On January 15 and 23, 2022, Whiteley emailed McNamara regarding whether BCS had an ownership interest in certain property.<br><br>Lueddeke Decl. Ex. F, G. | |
| 18.  On February 2, 2022, McNamara and Whiteley were listed as members of Unsilenced on its website.<br><br>Magill Decl. Ex. I. | |
| 19.  On February 28, 2022, BCS received a $5,000 donation from a single donor. | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Magill Decl. Ex. O. | |
| 20.   On March 10, 2022, the television show *The Doctors* aired an episode featuring an upcoming Lifetime film titled *Cruel Instruction*.<br><br>Magill Decl. ¶ 8. | |
| 21.  *Cruel Instruction*, which concerned the troubled teen industry, was scheduled to debut on March 12, 2022.<br><br>Magill Decl. ¶ 8. | |
| 22.   BCS and its work were promoted in connection with the episode and the film.<br><br>Magill Decl. ¶ 8. | |
| 23.  BCS expected to receive at least $5,000 in donations in connection with the publicity associated with *The Doctors* and *Cruel Instruction*.<br><br>Magill Decl. ¶ 8. | |
| 24.  In October 2021, BCS appeared with Paris Hilton in a press conference in Washington, D.C. to introduce the Accountability for Congregate Care Act.<br><br>Magill Decl. ¶ 7. | |
| 25.   In connection with the October 2021 press | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| conference, BCS sponsored related fundraising events in furtherance of ending institutional child abuse.<br><br>Magill Decl. ¶ 7. | |
| 26.  In connection with the October 2021 press conference and related fundraising events, BCS received donations totaling over $10,000.<br><br>Magill Decl. ¶ 7; Ex. B, C, D, E. | |
| 27.  On March 9, 2022, a request was submitted to deindex the BCS website.<br><br>Magill Decl. Ex. J. | |
| 28.  There is no direct evidence showing who submitted the deindex request on March 9, 2022.<br><br>Dkt. 152-7 (Walton Decl.) ¶ 23. | |
| 29.  On March 11, 2022, the BCS website did not appear on Google.<br><br>Lueddeke Decl. Ex. B (Jensen Dep.) at 94:25-95:9; Jensen Decl. ¶ 8. | |
| 30.  On March 11, 2022, a Google search for "Breaking Code Silence" yielded an advertisement for Unsilenced. | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Lueddeke Decl. Ex. B (Jensen Dep.) at 94:25-95:9; Jensen Decl. ¶ 8; Magill Decl. Ex. N. | |
| 31.  On March 11 and 12, 2022, McNamara gave Whiteley ownership permissions on Google Search Console 23 times.<br><br>Magill Decl. Ex. K. | |
| 32.  On March 11 and 12, 2022, each time McNamara gave Whiteley ownership permissions on Google Search Console, BCS revoked them.<br><br>Magill Decl. Ex. K. | |
| 33.  The ownership delegation-ownership revocation cycle spanned 21 hours.<br><br>Magill Decl. Ex. K. | |
| 34.  Jesse Jensen is a software engineer with experience and proficiency in cybersecurity issues.<br><br>Jensen Decl. ¶ 4. | |
| 35.  Jensen had conducted at least four forensic investigations before March 9, 2022.<br><br>Jensen Decl. ¶ 5. | |
| 36.  Jensen spent at least 16 hours investigating and working to remedy the deindexing. | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Jensen Decl. ¶ 9. | |
| 37.  Jensen spent at least 20 hours verifying BCS' security system and confirming that no other security breaches occurred.<br><br>Jensen Decl. ¶ 9. | |
| 38.  Jensen spent at least 40 hours monitoring BCS' system that was accessed by Defendants on March 11.<br><br>Jensen Decl. ¶ 10. | |
| 39.  Jensen spent at least 60 hours providing security training to BCS volunteers related to the March 9 deindexing and Defendants' March 11 access, and meeting with BCS leadership (as a group and individually) to discuss the foregoing as well as security needs implicated by the foregoing.<br><br>Jensen Decl. ¶ 10. | |
| 40.  Jensen's hourly rate for similar work is $250 per hour.<br><br>Jensen Decl. ¶ 9. | |
| 41.  Jensen's project fee for similar work is $9,000.<br><br>Jensen Decl. ¶ 9. | |
| 42.  Collectively, six BCS volunteers (Jensen, | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| Hughes, Magill, Beauregard, Cook, and Hurwitt spent at least 200 hours responding to the March 9 deindexing and Defendants' March 11 access.<br><br>Jensen Decl. ¶¶ 9-10; Magill Decl. Ex. K; Lueddeke Decl. Ex. B (4/14/23 Jensen Dep. at 88:11-23; 114:3-21). | |
| 43.  From March 9, 2022 through March 12, 2022, Google Analytics reports for the BCS website reflect a significant drop in traffic to the website.<br><br>Magill Decl. Ex. F. | |
| 44.  Google Analytics reports for the BCS website reflect zero user traffic for March 10 and 11, 2022.<br><br>Magill Decl. Ex. F. | |
| 45.  On March 12, 2022, Jensen was able to reindex the BCS website.<br><br>Lueddeke Decl. Ex. B (Jensen Dep.) at 90:24-92:4. | |
| 46.  The reindexing of the BCS website likely did not take effect until March 13, 2022.<br><br>Lueddeke Decl. Ex. B (Jensen Dep.) at 93:14-94:10. | |
| 47.  As a result of the deindexing, BCS received a fraction of the donations it reasonably | |

PLAINTIFF'S RESPONSE TO DEFENDANT JEREMY WHITELEY'S
SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| Fact and Evidence | Disputed/Undisputed Fact and Evidence |
|---|---|
| expected to receive in connection with the show and film.<br><br>Magill Decl. ¶ 9. | |
| 48.  On March 29, 2022, Whiteley accessed the Google Search Console associated with BCS' website.<br><br>Whiteley Decl. ¶ 30; Magill Decl. Ex. M. | |

Dated:  February 15, 2024          **DLA PIPER LLP (US)**

By:  */s/ Jason Lueddeke*
          John S. Gibson
          Jason Taylor Lueddeke

          Attorneys for Plaintiff
          BREAKING CODE SILENCE