JOHN S. GIBSON (SBN 140647)
john.gibson@us.dlapiper.com
JASON T. LUEDDEKE (SBN 279242)
jason.lueddeke@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel: 310.595.3000
Fax: 310.595.3300

Attorneys for Plaintiff
BREAKING CODE SILENCE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) non-profit,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE MCNAMARA, an individual, JEREMY WHITELEY, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:22-CV-002052-SB-MAA<br><br>Hon. Maria A. Audero<br><br>**DECLARATION OF JESSE JENSEN IN SUPPORT OF PLAINTIFF BREAKING CODE SILENCE'S OPPOSITION TO DEFENDANT JEREMY WHITELEY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 17, 2024<br>Time: 9:30 a.m.<br>Courtroom: 880 |

DECLARATION OF JESSE JENSEN

**DECLARATION OF JESSE JENSEN**

I, Jesse Jensen, declare as follows:

1. I submit this declaration in support of Plaintiff Breaking Code Silence's Opposition to Defendant Jeremy Whiteley's Motion for Summary Judgment or in the Alternative Partial Summary Judgment. I have personal knowledge of the facts herein and, if called upon to testify, can and will truthfully testify thereto.

2. I am a volunteer of Breaking Code Silence ("BCS"), a 501(c)(3) nonprofit organization that supports survivors of institutional abuse in the Troubled Teen Industry ("TTI") through education, outreach, research, and community organizing.

3. I have a Bachelor's degree and double-majored in Physics and Computer Science, and I also have an MBA in Technology Commercialization. I have held the role of engineer or a related role, such as consultant or senior engineer, since 2005.

4. I also have cybersecurity-related skills and proficiency, including in DLT, digital ledger technology, digital identity, and cryptographic algorithms. Attached hereto as **Exhibit A** is a true and correct copy of a previous version of my resume that Defendants accessed for my deposition. My deposition for this lawsuit took place on April 14, 2023 and I was shown the resume I attach here as an exhibit during that deposition.

5. As I explained during my deposition, I have performed multiple forensic investigations prior to this lawsuit, including performing those in a professional capacity.

6. BCS has a website located at breakingcodesilence.org. To my knowledge, the domain breakingcodesilence.org has always routed to BCS' website.

7. I learned that on or around March 9, 2022, multiple requests to de-

1
DECLARATION OF JESSE JENSEN

1 | index the BCS website were made to Google.  That means that requests were made
2 | to Google so that the BCS website would not appear when a person searched for
3 | the BCS website on Google.
4 |     8.   Those de-index requests were successful and the BCS website was de-
5 | indexed.  I personally confirmed this.  So, when I did a search for the BCS website
6 | on Google, I did not see the BCS website.  Instead, when I ran a Google search for
7 | BCS, I saw sponsored ads (i.e., paid ads) for Unsilenced, which I understand is
8 | affiliated with Defendants in this lawsuit.
9 |     9.   Because BCS expected to receive significant publicity around those
10 | dates when the de-indexing occurred, several BCS volunteers spent many hours
11 | attempting to immediately remedy the de-indexing of the BCS website.  To my
12 | knowledge, those volunteers included Vanessa Hughes, Megan Hurwitt, Noelle
13 | Beauregard, Bobby Cook, and Jenny Magill.  I personally spent at least 16 hours
14 | both investigation what happened and working to remedy the de-indexing.  I also
15 | spent hours in addition to the ones I just mentioned, at least 20 hours, to verify the
16 | system security and confirm that no other security breaches occurred.  Had I done
17 | this work for payment, I would have typically charged $9000 on a project basis or
18 | $250 per hour for this work.
19 |     10.  In addition to the 36 hours that I spent in direct response to that attack,
20 | I spent conservatively approximately 100 hours more related to the attack.
21 | Namely, I spent time monitoring the systems that were involved in the attack to
22 | ensure the attacks were not continuing, providing security training related to the
23 | attack for volunteers, meeting with BCS leadership (as a group and individually)
24 | on the subject of the attack and to discuss security needs implicated by the attack.
25 | I conservatively estimate that of those 100 hours, 40 of those hours were dedicated
26 | to monitoring the systems that were involved in the attacks.  For all this work, I
27 | would have typically charged a project fee or a rate of $250 per hour.
28 |

11. I regularly volunteer for BCS and, had I not spent the time investigating and remedying what happened, I could have used that time to do other volunteer activities for BCS. For example, I could have spent that time on advocacy, which is something I do for BCS and have strong interest in. I understand that the other BCS volunteers would have likewise devoted their time to other BCS volunteer activities instead of working on resolving this issue.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of February, 2024.

*/s/ Jesse Jensen*