1  Dirk O. Julander, Bar No. 132313
   *doj@jbblaw.com*
2  Catherine A. Close, Bar No. 198549
   *cac@jbblaw.com*
3  M. Adam Tate, Bar No. 280017
   *adam@jbblaw.com*
4  JULANDER, BROWN & BOLLARD
   9110 Irvine Center Drive
5  Irvine, California 92618
   Telephone:  (949) 477-2100
6  Facsimile:  (949) 477-6355

7  Attorneys for Defendants
   KATHERINE MCNAMARA and
8  JEREMY WHITELEY

9



10              **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

13  BREAKING CODE SILENCE, a          Case No. 2:22-cv-002052-SB-MAA
    California 501(c)(3) nonprofit,
14                                     **REPLY BRIEF IN SUPPORT OF**
15                                     **JEREMY WHITELEY'S MOTION**
              Plaintiff,              **FOR SUMMARY JUDGMENT**
16

17      vs.                           Date:   May 14, 2024
18                                     Time:   2:00 p.m.
                                       Crtrm:  880
19  KATHERINE MCNAMARA, an
    Individual; JEREMY WHITELEY, an
20  individual; and DOES 1 through 50,
    inclusive,
21                                     [*Assigned to the Hon. Maria A. Audero*]
22            Defendants.
23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>**Page**</u>



I.       INTRODUCTION ............................................................................... 5

II.      LEGAL ARGUMENT ......................................................................... 6

   A.    BCS Cannot Show that Whiteley Accessed the Google Search
         Console and Caused the .Org Domain to be Deindexed ...................... 6

      1. BCS Misstates the Evidentiary Burden Shifting Standard .......... 6

      2. Tried and True Standard: Whiteley Proved That He Did
         Not Cause the .Org Domain to be Deindexed ............................. 7

      3. No Evidence Standard: BCS Failed to Present any
         Evidence that Whiteley Deindexed the .Org Domain ................. 9

         (a)  *BCS had the Burden of Presenting Admissible,*
              *Significantly Probative, Evidence.* ................................... 9

         (b)  *BCS Has Not Submitted Any Admissible Evidence*
              *that a Deindexing Request was Submitted by Anyone* ...... 9

         (c)  *BCS's Circumstantial Evidence is Not Significantly*
              *Probative and is Insufficient* ........................................... 11

   B.    BCS Failed to Explain, Let Alone Prove, How Whiteley
         Allegedly Worked in Concert with McNamara ................................... 13

   C.    BCS Failed to Show Specific Facts Proving Mens Rea ...................... 14

   D.    BCS Has Not Presented Any Admissible Evidence
         Corroborating its Damage Theory ....................................................... 15

      1. BCS Failed to Prove its Volunteer Time is a Cognizable
         Loss ............................................................................................ 15

      2. BCS Failed to Prove That it Lost $5,000 in Donations ............. 18

III.     CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 158-60 (1970)...................................................................7

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 249 (1986) ....................................................................10

*Ballard v. Savage*
Case No. 92-840 JM(AJB), 1997 U.S. Dist. LEXIS 24013, at *34
(S.D. Cal. Nov. 10, 1997)..................................................................15

*Blue Ridge Ins. Co. v. Stanewich*
142 F.3d 1145, 1147 (9th Cir. 1998) ...............................................14

*Celotex Corp. v. Catrett*
477 U.S. 317, 325 (1986) .....................................................................7

*Coleman v. Quaker Oats Co.*
232 F.3d 1271, 1292-1293 (9th Cir. 2000) ........................................9

*Coverdell v. Dep't of Soc. & Health Servs.*
834 F.2d 758, 769 (9th Cir. 1987).....................................................7

*F.T.C. v. Publ'g Clearing House, Inc.*
104 F.3d 1168, 1171 (9th Cir. 1997) ..................................................8

*Fazio v. City & County of San Francisco*
125 F.3d 1328, 1331 (9th Cir. 1997) ................................................10

*Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*
270 F.Supp.2d 1183, 1185 (C.D. Cal. 2003)....................................10

*Guangzhou Yuchen Trading Co. v. Dbest Prods. Inc.*
No. CV 21-04758-JVS-JDE, 2023 U.S. Dist. LEXIS 55007, at *6
(C.D. Cal. Feb. 24, 2023) ..................................................................18

*Krug v. Imbordino*
896 F.2d 395, 397 (9th Cir. 1990) ....................................................14

*LVRC Holdings, LLC v. Brekka*
581 F.3d 1127, 1132 (9th Cir. 2009)...........................................13, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 587 (1986) ..................................................................10

*Mintz v. Mark Bartelstein and Associates, Inc.*
906 F.Supp.2d 1017 (C.D. Cal. 2012)..............................................19

*Nigro v. Sears, Roebuck & Co.*
784 F.3d 495, 497 (9th Cir. 2015) ......................................................8

JULANDER BROWN
— & BOLLARD —

*Oregon Mut. Ins. Co. v. Victorville Speedwash, Inc.*
No. CV 14-07909-AB (SHX), 2015 WL 12656274, at *4
(C.D. Cal. July 6, 2015)................................................................7

*Orr v. Bank of America*
285 F.3d 764, 773 (9th Cir. 2002) .............................................10

*Snapp v. United Transp. Union*
889 F.3d 1088, 1103 (9th Cir. 2018) .........................................17

*Subotincic v. 1274274 Ontario Inc.*
No. SACV 10-01946 AG (PJWx), 2013 U.S. Dist. LEXIS 110726, at
*51 (C.D. Cal. Apr. 9, 2013) ......................................................11

*Super Future Equities, Inc. v. Wells Fargo Bank Minn.*
N.A., No. 3:06-CV-0271, 2007 U.S. Dist. LEXIS 91947
(N.D. Tex. Dec. 14, 2007) ..........................................................18

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n.*
809 F.2d 626, 631 (9th Cir. 1987) .............................................12

*Thomas v. Bible*
694 F. Supp. 750, 757 (D. Nev. 1988) .......................................14

*Vaughn v. City of Orlando*
413 Fed. Appx. 175 (11th Cir. Feb. 7, 2011) ............................12

*Villiarimo v. Aloha Island Air, Inc.*
281 F.3d 1054, 1065 n. 10 (9th Cir. 2002) ................................12

## **STATUTES**

18 U.S.C. §1030.............................................................................16

Fed. R. Civ. Proc. 56.......................................................................7

## **OTHER AUTHORITIES**

7 James Wm. Moore et al., Moore's Federal Practice
§30.25[3] (3d ed. 2016) ..............................................................18

Cal. Code Regs., tit. 11, §999.9.4 .................................................19

Fed R. Evid. 901 ...........................................................................11

## I.    INTRODUCTION

This case is, and has always been, a witch hunt. According to Breaking Code Silence ("BCS"), in March, 2022, someone went on the Google Search Console and directed Google to remove the domain www.breakingcodesilence.org (the .Org Domain) from Google Search. Although there is no direct evidence of Jeremy Whiteley's involvement, and although BCS's own records show that Whiteley did not have access to the Google Search Console when the request was made, BCS believes that Whiteley was responsible and decided to sue him, devastating his career as a technology entrepreneur.

After hundreds of discovery requests, eight depositions, substantial motion work, and a forensic inspection, BCS still has no evidence that Whiteley submitted the alleged deindexing request. In fact, BCS's Opposition to the Motion admits that BCS has "no direct evidence establishing who submitted the deindexing request." (Dkt. 169, p. 10.) BCS is incapable of explaining how Whiteley could have submitted the deindexing request when all of the evidence shows that Whiteley did not have administrative access to the Google Search Console at the time.

Nevertheless, and despite (1) Whiteley's declaration that he did not submit the alleged deindexing request, (2) Google Search records that prove Whiteley could not have submitted the deindexing request, (3) Whiteley's expert's opinion that there is no evidence beyond speculation that Whiteley submitted the deindexing request, (4) BCS's admission that it does not have any direct evidence against Whiteley, and (5) the complete lack of any evidence showing that BCS was harmed, BCS stubbornly maintains that Whiteley was responsible based on non-probative and weak circumstantial evidence.

Worse still, the lawsuit against Whiteley lacks legitimate purpose. As close as can be determined, the .Org Domain was only removed from Google Search, if at all, for at most three days and as little as one day. BCS has been unable to prove through any admissible evidence that it lost any donations during that time, let alone

1  $5,000, as required by the Computer Fraud and Abuse Act (the "CFAA"). BCS also

2  admits that it did not pay anyone anything to investigate the alleged deindexing. At

3  bottom, there is no evidence that BCS suffered any harm.

4       Whiteley respectfully asks the Court to end this witch hunt.

## II.    LEGAL ARGUMENT

### A.    BCS Cannot Show that Whiteley Accessed the Google Search Console and Caused the .Org Domain to be Deindexed

#### 1.    BCS Misstates the Evidentiary Burden Shifting Standard

9       In the most traditional form of summary judgment motion, a party submits

10  uncontroverted evidence that disproves an essential element of the opposing party's

11  claim. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-60 (1970). This is the so-

12  called "tried-and-true" form of summary judgment. Alternatively, the moving party

13  can carry its initial burden by arguing that the opposing party lacks sufficient

14  evidence to prove its claim at trial. Fed. R. Civ. Proc. 56(c)(1)(B); *Celotex Corp. v.*

15  *Catrett,* 477 U.S. 317, 325 (1986). This approach is sometimes known as a "no-

16  evidence" motion for summary judgment. Fed. R. Civ. Proc. 56(d); *Celotex,* 477

17  U.S. at 326; *Oregon Mut. Ins. Co. v. Victorville Speedwash, Inc*., No. CV 14-07909-

18  AB (SHX), 2015 WL 12656274, at *4 (C.D. Cal. July 6, 2015). The Ninth Circuit

19  has held that the no-evidence approach does not require the moving party to do

20  anything more than to "point[] out to the District Court – that there is an absence of

21  evidence…" *Coverdell v. Dep't of Soc. & Health Servs*., 834 F.2d 758, 769 (9th Cir.

22  1987).

23       Whiteley's Motion meets both the tried-and-true and no-evidence standards.

24  To meet the tried-and-true standard, Whiteley declared that he did not access the

25  Google Search Console to deindex the .Org Domain. And he proved that it would

26  have been impossible for him to do so because he did not have administrative access

27  to the Google Search Console when the deindexing request was allegedly made.

28  (Dkt. 152, pp. 11-12.) To meet the no-evidence standard, Whiteley also

JULANDER BROWN
— & BOLLARD —

1  demonstrated in great detail that BCS has no evidence that he deindexed the .Org

2  Domain. And in support thereof, Whiteley submitted the declaration of his expert,

3  Clark Walton, who opines that there is no evidence suggesting that Whiteley was the

4  one who caused the alleged deindexing. (Id., pp. 10, 13-17.) Under either the tried-

5  and-true or the no-evidence standard, the evidentiary burden shifts to BCS.

6      BCS misunderstands the above summary judgment standards. Over and over,

7  BCS asserts that the *lack* of evidence somehow creates triable issues of fact. BCS

8  specifically argues that Clark Walton's opinion that there is *no proof* that Whiteley

9  deindexed the .Org Domain itself creates a triable issue of fact, which is an absurd

10 notion. Fundamentally, BCS's argument misconstrues its own burden of proof.

2.      **Tried and True Standard: Whiteley Proved That He Did Not Cause the .Org Domain to be Deindexed**

13      BCS failed to rebut Whiteley's evidence that he did not cause the deindexing

14 and could not have done so because he lacked access. Rather than disprove the

15 many statements in Whiteley's declaration, BCS argues that the Court should

16 disregard it in its entirety because the declaration is self-serving. (Dkt. 169, p. 13.)

17 But the law merely provides that self-serving declarations presented *without any*

18 *other details or other supporting evidence* are insufficient to satisfy a defendant's

19 initial burden on summary judgment. *F.T.C. v. Publ'g Clearing House, Inc*., 104

20 F.3d 1168, 1171 (9th Cir. 1997). When declarations are presented along with other

21 evidence, or when they are based on personal knowledge, legally relevant, and

22 internally consistent, the Court is to consider them even if they are self-serving.

23 *Nigro v. Sears, Roebuck & Co*., 784 F.3d 495, 497 (9th Cir. 2015) ("[T]he district

24 court may not disregard a piece of evidence at the summary judgment stage based

25 on its self-serving nature.") Whiteley's declaration is submitted with a host of other

26 legally relevant and consistent evidence and must be considered.

27

28

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

JULANDER BROWN
— & BOLLARD —

1    Moreover, BCS effectively concedes that it would have been impossible for
2    Whiteley to have caused the alleged deindexing because he did not have the
3    requisite administrative access. BCS made no attempt to show that Whiteley had
4    administrative access to the Google Search Console on March 9th. Instead, BCS asks
5    the Court to infer that it must have been possible because Whiteley had access to the
6    Google Webmaster Central on the 11th. (Dkt. 169, p. 16.) BCS made no attempt to
7    explain away the several documents showing that Whiteley was first given access to
8    the Google Webmaster Central (not even the Search Console) on the 11th.

9    BCS also suggests for the first time in its Opposition the possibility that
10   Whiteley accessed the Google Search Console using McNamara's credentials.
11   Beyond articulating it as a possibility, BCS offers no evidence showing Whiteley
12   has ever had access to McNamara's credentials, or even that McNamara's
13   credentials were in fact used to access the Google Search Console to cause the
14   deindexing. (Dkt. 169, p. 15.)

15   BCS cannot avoid summary judgment by suggesting the possibility that
16   Whiteley used McNamara's credentials. Not only is there no evidence supporting
17   this claim, but it is also well established that issues on summary judgment are
18   framed by the complaint. A plaintiff is not permitted to oppose summary judgment
19   based on a new theory of liability because it blindsides the defendant after discovery
20   has closed. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-1293 (9th Cir. 2000).
21   The Complaint specifically alleges that Defendants deindexed the .Org Domain
22   through the use of Whiteley's administrative credentials. (Dkt. 2, ¶36.) This theory
23   was repeated in BCS's written discovery responses (Ex. 51, No. 3, Appendix A) and
24   Vanessa Hughes, acting as a 30(b)(6) representative, testified that the Google Search
25   Console was accessed through Whiteley's administrative credentials. (Ex. 45, pp.
26   59:14-60:2 ["the email address that was used to gain access belonged to Jeremy
27   Whiteley."].) BCS cannot change its theory of liability now.

28

JULANDER BROWN
— & BOLLARD —

3.   **No Evidence Standard: BCS Failed to Present any Evidence that Whiteley Deindexed the .Org Domain**

(a)   *BCS had the Burden of Presenting Admissible, Significantly Probative, Evidence.*

Once the burden shifts, "[t]he non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial." *Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*, 270 F.Supp.2d 1183, 1185 (C.D. Cal. 2003). The nonmoving party "must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986)). And in so doing, the nonmoving party must rely exclusively on admissible evidence. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

Where a defendant invokes the no-evidence summary judgment standard, the plaintiff's burden mirrors the standard for a directed verdict. *Anderson*, 477 U.S. at 250-251. The judge must ask herself whether a fair-minded jury could return a verdict for the plaintiff based on the evidence the plaintiff has presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. Id. at 253. Evidence that is "merely colorable," that is "not significantly probative," or which only presents "some metaphysical doubt as to the material facts," will not defeat a motion for summary judgment. Id. at 249-250; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

(b)   *BCS Has Not Submitted Any Admissible Evidence that a Deindexing Request was Submitted by Anyone*

BCS has failed to proffer any admissible evidence that *anyone* accessed the Google Search Console to submit a deindexing request, let alone that Whiteley did so. While BCS's Opposition and Separate Statement state in conclusory fashion that

JULANDER BROWN
— & BOLLARD —

1   "[o]n March 9, 2022, a request was submitted to de-index the BCS website", BCS

2   failed to present any admissible evidence supporting this statement. The lone

3   citation relied upon by BCS is "Magill Decl., Ex. J." (Dkt. 169, p. 11; PMF 27.)

4   Exhibit J, in turn, is a screen shot which appears to be of the Google Search

5   Console, but BCS laid no foundation for the introduction of this screenshot

6   including, who took the screenshot, how it was taken, what it shows, and how it was

7   preserved. Without such foundation, the screenshot is inadmissible and cannot be

8   relied upon to defeat summary judgment. Fed R. Evid. 901; see also *Subotincic v.*

9   *1274274 Ontario Inc*., No. SACV 10-01946 AG (PJWx), 2013 U.S. Dist. LEXIS

10  110726, at *51 (C.D. Cal. Apr. 9, 2013) (unauthenticated website screenshot did not

11  create a genuine issue of material fact.)

12      Even if the screenshot was admissible, BCS failed to present any

13  corroborating testimony from an expert explaining its significance. BCS instead

14  asks the Court to interpret the screenshot as proof that someone manually submitted

15  a deindex request through the Google Search Console. However, as declared by

16  Clark Walton, the screenshots of the Google Search Console do not necessarily lead

17  to that conclusion. Specifically, the deindexing could have been the result of an

18  automated Google response accidentally triggered by issues with BCS's website.

19  (Dkt. 152-7, ¶¶21-24.)  Notably, BCS does not contest that there were serious issues

20  with its website at the time of the deindexing, including URLs marked as "no-index"

21  and several broken site maps. (UMF, Nos. 8-10.)

22      In its Opposition, BCS attempts to twist the above facts by arguing that the

23  possibility that BCS accidentally caused the deindexing creates a disputed fact.

24  (Dkt. 169, p. 20.) Once again, BCS's argument reflects a misunderstanding of the

25  applicable legal standards. Under the no-evidence standard, Whiteley need not prove

26  how the .Org Domain was deindexed. To meet his initial burden, all Whiteley

27  needed to show was that BCS's evidence is insufficient to show that Whiteley

28  submitted a deindexing request. Once Whiteley met this burden (which he did), it

JULANDER BROWN
— & BOLLARD —

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  was incumbent upon BCS to come forward with admissible evidence proving

2  Whiteley's culpability. BCS's evidence – a single inadmissible screenshot submitted

3  without any explanation – fails to show that anyone manually submitted a

4  deindexing request and, accordingly, summary judgment is appropriate.

5          (c)   ***BCS's Circumstantial Evidence is Not Significantly***

6                ***Probative and is Insufficient***

7          By BCS's own admission, BCS does not have any direct evidence which

8  proves that Whiteley submitted the alleged deindexing request. (Dkt. 169, p. 10

9  ["There is no direct evidence establishing who submitted the deindexing request."];

10  see also id., p. 14 ["Given the nature of the Website deindexing, there is no direct

11  evidence proving who did it."]) Instead of providing the Court with direct evidence,

12  BCS asks the Court to make a series of attenuated assumptions based on

13  circumstantial evidence. Specifically, BCS asks the Court to "reasonably infer" that

14  (1) Whiteley had access to the Google Search Console on March 9th because

15  McNamara granted him administrative access to Google Webmaster Central (at that

16  time, a separate tool) two days later on March 11th, and (2) Whiteley is the most

17  likely person to have caused the alleged de-indexing because he left BCS on "hostile

18  terms" and because he has technical expertise. (Id., pp. 15-16.)

19          At summary judgment, the Court need not draw all possible inferences in

20  favor of the non-moving party, only *reasonable* inferences. V*illiarimo v. Aloha

21  Island Air, Inc.*, 281 F.3d 1054, 1065 n. 10 (9th Cir. 2002). There must be some

22  limit to the extent that inferences can be drawn, otherwise Rule 56(e)'s requirement

23  that a party present "specific facts" would be entirely gutted. *T.W. Elec. Service, Inc.

24  v. Pacific Elec. Contractors Ass'n*., 809 F.2d 626, 631 (9th Cir. 1987). Inferences

25  based on speculation and conjecture do not create a material fact sufficient to avoid

26  summary judgment. *Vaughn v. City of Orlando*, 413 Fed. Appx. 175 (11th Cir. Feb.

27  7, 2011).

28

JULANDER BROWN
— & BOLLARD —

As set forth in the Motion, in *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) ("*Brekka*"), the plaintiff asked the Court to "reasonably infer" that an ex-employee had accessed his former employer's website based on the following: (1) someone logged on to the website using the defendant's credentials and no other employees knew the log in information, (2) the computer that logged on to the website was connected to an ISP near the defendant's known location, and (3) an expert testified that the defendant's computer had been used to access the website. Id. at 1136-1137. Despite all of this evidence, the Court noted that it "need not draw inferences that are based solely on speculation", it found reasons to discredit the plaintiff's arguments, and granted summary judgment for the defendant. Id.

BCS's Opposition fails to wrestle with *Brekka*. Its entire analysis is limited to a footnote which, in conclusory fashion, states that *Brekka* is distinguishable because in *Brekka* the plaintiff failed to prove who used the defendant's credentials to access the website, whereas here, according to BCS, Whiteley admitted to accessing the "BCS Console" on March 11th and, therefore, it is reasonable to infer that he also accessed the Google Search Console on March 9th. (Dkt. 169, p. 16.)

BCS's argument is not only insufficient to distinguish *Brekka*, but the argument is also based on a misstatement of the facts and the deceptive use of the term "BCS Console." There is no such thing as a "BCS Console." Rather, Google affords webmasters and domain owners use of a suite of tools, which are accessed from the user's own Google accounts, to help manage Google's interactions with domains. At the time of the deindexing, these tools included the Search Console and the Webmaster Central. (Dkt. 152-4, ¶37.)

On March 11th, McNamara granted Whiteley the administrative authority to use his Google account to access the Search Console and the Webmaster Central for the .Org Domain. (Id., ¶38.) Whiteley used that access to view the Webmaster Central on March 11th. (Dkt. 152-5, ¶¶26-27.) However, Whiteley did not view the

JULANDER BROWN
— & BOLLARD —

Search Console (from which the deindex request was allegedly made) until March 29, 2021, after the lawsuit was filed. (Id. at ¶¶29-30.) This fact is plainly reflected in Whiteley's Exhibit 41 and BCS's Exhibit M. Thus, the direct evidence proves *both* that (1) Whiteley could not have accessed the Search Console on March 9th because he did not have the ability to do so until March 11th, and (2) the first time that Whiteley actually accessed the *Search Console* was on March 29th.

The *Brekka* Court explained that "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Brekka*, 581 F.3d at 1137, quoting *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998). Especially given the direct evidence that Whiteley did not access the Search Console at the time of the alleged deindexing, BCS cannot carry its burden by simply asking the Court to make assumptions based entirely on the fact that Whiteley left BCS on unfriendly terms.

**B.**   **BCS Failed to Explain, Let Alone Prove, How Whiteley Allegedly Worked in Concert with McNamara**

Throughout the Opposition, BCS suggests that if it cannot prove that Whiteley caused the deindexing, summary judgment is still inappropriate because Whiteley was working in concert with McNamara. (Dkt. 169, pp. 17-18.) Assuming *arguendo* that McNamara was the one who caused the deindexing (she did not), in order for BCS to establish Whiteley's liability, BCS would have to show that Whiteley "substantially assisted in the hacking itself." (See Dkt. 152, pp. 19-20.) BCS's Opposition fails to identify, much less prove with "specific facts," how Whiteley assisted McNamara in deindexing the .Org Domain. Merely alleging that the two Defendants were conspiring is insufficient. *Thomas v. Bible*, 694 F. Supp. 750, 757 (D. Nev. 1988); *Krug v. Imbordino*, 896 F.2d 395, 397 (9th Cir. 1990). Likewise, BCS cannot meet its burden merely by showing some association between Whiteley and McNamara. *Ballard v. Savage*, Case No. 92-840 JM(AJB), 1997 U.S.

JULANDER BROWN — & BOLLARD —

1  Dist. LEXIS 24013, at *34 (S.D. Cal. Nov. 10, 1997). Even if Whiteley was aware

2  that McNamara was going to deindex the .Org Domain, that still would not be

3  enough to prove liability absent some showing of Whiteley's participation. Id.

4      BCS does not explain how Whiteley "substantially assisted" in the alleged

5  deindexing. Indeed, it was impossible for him to have done so. BCS alleges that

6  someone signed on to the Google Search Console and made a deindexing request by

7  clicking a small handful of buttons. If McNamara, and not Whiteley, was the one

8  who clicked the buttons, what involvement did Whiteley have? The reality is that

9  BCS does not know who (if anyone) submitted the deindexing request, but

10 nevertheless is asking the Court to impose liability on Whiteley.

11           **C.**     **BCS Failed to Show Specific Facts Proving Mens Rea**

12     Most of BCS's analysis regarding Whiteley's mens rea focuses on whether

13 McNamara owns the .Org Domain. In so doing, BCS missed the point. In order to

14 grant summary judgment, the Court need not determine the actual ownership of the

15 .Org Domain, only whether Whiteley's belief was reasonable.

16     BCS failed to present any admissible evidence showing why it would be

17 unreasonable for Whiteley to believe that McNamara owned the .Org Domain. As

18 reflected in UMF 37 and PMF 17, the only evidence that BCS presented on this

19 issue are Exhibits F, G and H. None of these exhibits are admissible as BCS failed

20 to lay the foundation for, or authenticate, them. (Dkt. 169-2, ¶¶11-12; Dkt. 169-20,

21 ¶7.) More importantly, none of the exhibits are helpful to BCS. Exhibit F appears to

22 be a chat made outside the presence of Whiteley, and accordingly, does not give any

23 insight to whether Whiteley reasonably believed that McNamara owns the .Org

24 Domain. Exhibit G hurts, rather than helps, BCS. Specifically, Whiteley confirms

25 his belief that intellectual properties created before BCS's formation belong to the

26 persons who created them by stating, "I read this as anything that was created before

27 March 18th, 2021 would be your property." Finally, it is unclear why BCS even

28 cited to Exhibit H as it is completely unrelated to intellectual property ownership.

**D.** **BCS Has Not Presented Any Admissible Evidence Corroborating its Damage Theory**

To have standing to assert its CFAA claim, BCS had to prove at least $5,000 in losses. (18 U.S.C. §1030(c)(4)(A)(i)(1).) As argued in the Motion, BCS has presented three theories of "losses" in this case: (1) volunteer time, (2) attorney hours, and (3) potential lost donations. BCS has apparently conceded that the attorney hours are not recoverable losses. (See UMF 55.) As shown below, BCS cannot prove that its two other theories constitute recoverable losses either.

**1.** **BCS Failed to Prove its Volunteer Time is a Cognizable Loss**

It is undisputed that "BCS has never paid any amount of money to anyone to investigate the allegations of the Complaint." (UMF 55.) Accordingly, the Court must decide as a matter of law whether time spent by BCS's unpaid volunteers meets the CFAA's definition of a "loss." The CFAA defines "loss" as follows:

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damage incurred because the interruption of service.

18 U.S.C. §1030(e)(11). Thus, the term "loss" is defined as any "reasonable cost and the statute provides several examples of such "reasonable costs." Id.

As explained in the Motion, the plain and ordinary meaning of the word "cost" is "an amount paid or charge for something' price or expenditures." (See Dkt. 152, pp. 21-22.) Because BCS did not pay its volunteers anything, the time the volunteers allegedly spent conducting an investigation cannot be a "cost." BCS failed to cite a single case holding to the contrary. Instead, all of the cases cited by BCS involve *paid* salaried employees. (See Dkt. 169, p. 25.)

Even if the Court determines that volunteer time is a "cost" within the meaning of the statute, once Whiteley asserted that BCS has no evidence of

JULANDER BROWN — & BOLLARD —

damages, the burden shifted to BCS to prove its costs were "reasonable." At a minimum BCS had to establish the amount of time spent, the value of that time, and the reasonableness of such time. BCS did not come close to carrying its evidentiary burden. Although BCS's Opposition and Separate Statement state that BCS spent at least 200 hours responding to the alleged deindexing, none of the evidence cited by BCS actually supports that proposition. Specifically, neither Magill nor Jensen's declarations specify what hours were worked by anyone other than Jensen (See Dkt. 169-2 and 169-28), nor does Jensen's deposition testimony (See Dkt. 169-22.)

Jensen's declaration regarding the time he spent, and the value of that time, should be excluded in its entirety. On November 14, 2023, Defendants took the deposition of Jennifer Magill in her capacity as a 30(b)(6) witness on the topics of (1) "all costs incurred by BCS related to the cyber hacking incidents alleged in BCS' Complaint including: the amounts of each cost incurred," and (2) "[a]ll losses and damages suffered by BCS as a result of each instance of unauthorized or excessive access by Katherine McNamara and/or Jeremy Whiteley alleged in the Complaint." (Tate Reply Decl. ¶2, Ex. 107 [Magill Depo.].) Magill was specifically asked how much time Jensen spent investigating the alleged deindexing as opposed to the other allegations of the complaint. Magill plainly stated that she did not know. (Id., pp. 66:19-67:3). Magill was later asked what the value of Jensen's time was and she once again testified that she did not know. (Id., p. 71:21-25.) Magill was asked similar questions for her own time and for Hughes's time, but she was unable to answer these questions either. (Id., pp. 65:19-71:25.)

The Ninth Circuit has explained that "because a Rule 30(b)(6) designee testifies on behalf of the entity, the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) emphasis added; 7 James Wm. Moore et al., Moore's Federal Practice §30.25[3] (3d

ed. 2016). In *Guangzhou Yuchen Trading Co. v. Dbest Prods. Inc.*, No. CV 21-04758-JVS-JDE, 2023 U.S. Dist. LEXIS 55007, at *6 (C.D. Cal. Feb. 24, 2023), Judge Selna explained:

> Because a Rule 30(b)(6) witness "speaks" on behalf of the corporation, the Rule obligates the corporate party to "prepare its designee to be able to give binding answers on behalf of [the corporation]." … Therefore, Rule 30(b)(6) prohibits "a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject." The purpose is to prevent a corporate defendant from "thwarting" inquiries during discovery and "then staging an ambush" at trial.

Judge Selna went on to cite to *Super Future Equities, Inc. v. Wells Fargo Bank Minn.*, N.A., No. 3:06-CV-0271, 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. Dec. 14, 2007) as an example of a properly excluded declaration. The *Super Future Equities* decision is on all fours with the instant case in that the Court struck a declaration submitted in the summary judgment context which articulated damages when the 30(b)(6) representative was previously asked to quantify the plaintiff's damages and he stated that he could not do so. *Id*. at *27. Here, because BCS's 30(b)(6) representative failed to state how much time was spent by the volunteers investigating the alleged deindexing or to estimate the value of that time, BCS is precluded from offering such evidence in opposition to the Motion.

Even if the Court is inclined to consider Jensen's testimony, BCS still failed to establish $5,000 in damages. According to Jensen, he only spent 16 hours investigating what happened and working to remedy the alleged deindexing. (Dkt. 169-28, ¶9.) Assuming Jensen's self-stated hourly rate of $250, such time was worth $4,000. Jensen then lists a host of other activities that he conducted in response to the "attack." As presented, it is impossible to tell what percent of Jensen's other activities, which apparently happened after the deindexing issue was resolved on the

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

12th, were "reasonable" or "essential to remedying the harm." *Mintz v. Mark Bartelstein and Associates, Inc.*, 906 F.Supp.2d 1017 (C.D. Cal. 2012). All of Jensen's activities are very vaguely worded and inadequately described (e.g. "verifying the security system") or are lumped together. The Court cannot tell what Jensen actually did, how much time he spent on each activity, whether each activity was essential to remedying the harm, and whether the amount of time he spent on each activity was reasonable. Accordingly, BCS has not met its burden of showing that Jensen's volunteer time was a "reasonable cost."

### 2. BCS Failed to Prove That it Lost $5,000 in Donations

It is undisputed that at the time of the alleged deindexing, BCS was not properly registered as a charitable organization with the California Attorney General. (UMF 58.) It is also undisputed that, pursuant to Cal. Code Regs., tit. 11, §999.9.4, BCS's failure to register precluded it from accepting charitable donations. (See generally Dkt. 169 [BCS fails to address the argument].) The Court should find that BCS's lost donation theory fails for this reason alone.

In addition, BCS also does not explain Noelle Beauregard's declaration in which she admits that she disabled the Google Analytics, rendering it impossible for BCS to monitor its website traffic. The fact that Beauregard previously thought that the drop in website traffic was due to the deindexing – before she realized that the analytics had been turned off – is irrelevant. (Dkt. 152-2, ¶6 [she noticed the issue on April 13, 2022].)

Putting these fatal flaws aside, BCS's lost profit theory is more than speculative; it is unbelievable. BCS asks the Court to assume that BCS would have received more than $5,000 in donations in a 1-3 day period[1] when the .Org Domain

---

[1] BCS has never been able to articulate how long the .Org Domain was not appearing on Google Search. BCS admits that it does not know how long it took for the deindex request to go into effect after it was allegedly made on March 9th.  BCS also admits that it did not discover the issue until March 11 and resolved it by March 12.

JULANDER BROWN
— & BOLLARD —

was not appearing on Google Search, despite the fact that BCS historical daily average of donations and subscriptions was only $44.21. (Dkt. 152-8, ¶19(b).) BCS does not dispute that it historically received less than $50 a day. Instead, BCS argues that deindexing occurred about the same time as the premiere of two television shows. BCS then speculates that it is reasonable to assume that BCS would have received at least $5,000 in donations following these "high publicity events" because BCS had previously received over $10,000 in donations in connection with another high publicity event – lobbying with Paris Hilton. (See Dkt. 169, p. 23.)

There are two fundamental problems with BCS argument. First, the math does not work in BCS's favor. According to Magill's declaration and her accompanying graphs, BCS received a total of $10,861 between October 9, 2021 and November 30, 2021. (See Dkts. 169-6 and 169-7.) Thus, during BCS's previous "high publicity event" it only received an average of $208.87 per day over a 52-day period. Accordingly, assuming an apples-to-apples comparison, BCS would have only have lost less than $650 in donations during the 1-3 day window when the .Org Domain was not appearing on Google Search.

Second, the Opposition misleadingly implies that the .Org Domain was not appearing on Google Search on March 12th, when Lifetime premiered the Cruel Instruction program. But BCS's 30(b)(6) representatives testified to the contrary. (Tate Reply Decl., Ex. 108 [Jensen Depo.] p, 88:15-21; see also Magill Exhibit F ["[W]e were able to cancel the temporary deindexing request shortly before the LifeTime movie premiered on 3/12."].) Notwithstanding that the fact that the .Org Domain was indexed at the time of the Cruel Instruction premiere, BCS only received $170.23 in donations on March 12th. (Dkt. 152-8, ¶19(b).) The notion that BCS would have received more than 29 times that amount in the 1-3 days before the movie premiered is simply not believable.

III.    **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment.

DATED:  February 29, 2024          JULANDER, BROWN & BOLLARD

By:   _____*/s/ M. Adam Tate*_____
      M. Adam Tate
      Catherine Close
      Attorneys for Defendants
      KATHERINE MCNAMARA and
      JEREMY WHITELEY



**1**  
**2**  
**3**  
**4**  
**5**  
**6**  
**7**  
**8**  
**9**  
**10**  
**11**  
**12**  
**13**  
**14**  
**15**  
**16**  
**17**  
**18**  
**19**  
**20**  
**21**  
**22**  
**23**  
**24**  
**25**  
**26**  
**27**  
**28**

### <u>L.R. 11-6.2 CERTIFICATION</u>

The undersigned, counsel of record for Defendants certifies that this brief contains 5,048 words, which complies with the word limit of L.R. 11-6.1.

Date: February 29, 2024             */s/ M. Adam Tate*
                                   M. Adam Tate

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

## **CERTIFICATE OF SERVICE**

2   I hereby certify that on this 29th day of February, 2024, I electronically filed

3 the foregoing paper(s) with the Clerk of the Court using the ECF system which will

4 send notification to all parties of record or persons requiring notice.

5

6             */s/ Helene Saller*

7             Helene Saller

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JULANDER BROWN
— & BOLLARD —

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT