1  JOHN S. GIBSON (SBN 140647)
   *john.gibson@us.dlapiper.com*
2  JASON T. LUEDDEKE (SBN 279242)
   *jason.lueddeke@us.dlapiper.com*
3  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars
4  Suite 400 North Tower
   Los Angeles, California 90067-4735
5  Tel:   310.595.3000
   Fax:   310.595.3300
6
   Attorneys for Plaintiff
7  BREAKING CODE SILENCE

8

9                      **UNITED STATES DISTRICT COURT**

10                     **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13 BREAKING CODE SILENCE, a          CASE NO.  2:22-CV-002052-SB-MAA
   California 501(c)(3) non-profit,
                                     Hon. Maria A. Audero
14                 Plaintiff,
                                     **PLAINTIFF BREAKING CODE**
15        v.                         **SILENCE'S RESPONSE TO**
                                     **DEFENDANTS' STATUS REPORT**
16 KATHERINE MCNAMARA, an            **REGARDING OUTCOME OF**
   individual, JEREMY WHITELEY, an   **PHASE 1 IN ADVANCE OF**
17 individual, and DOES 1 through 50, **MARCH 25, 2024 HEARING**
   inclusive,
18                                    Date:  March 25, 2024
                   Defendants.       Time:  2:00 p.m.
19                                    Courtroom:  880

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1

Plaintiff Breaking Code Silence ("BCS") hereby responds to Defendant Katherine McNamara and Jeremy Whiteley's ("Defendants") Status Report Regarding Outcome of Phase 1 Re: Motion for Evidentiary and Monetary Sanctions Under Rule 37 ("Status Report") in advance of the March 25, 2024 hearing.  BCS submits this response to narrow and focus the issues to be addressed at the hearing.

The Status Report is divided into five sections:  Defendants' summary of the status of Steps 1 through 4 as set forth in the August 22, 2023 Interim Court Order ("Interim Order," Dkt. 132); and Defendants' claims of prejudice and spoliation.

For purposes of this response, BCS does not dispute (and therefore does not respond to) Defendants' factual summary of Steps 1 through 3.  BCS' response to Defendants' factual summary of Step 4 and their claims of prejudice and spoliation are set forth below.

**Defendants' Summary of Step 4**

Under Step 4, Defendants may issue subpoenas to any Custodian (i) who did not provide a declaration or documents pursuant to the process set forth in the Interim Order, or (ii) who produced documents as part of the process set forth in the Interim Order, but whom Defendants "have a reasonable basis to believe may have additional documents that were not produced or identified as withheld."  Dkt. 132 ¶¶ 4, 5.

Defendants issued subpoenas to Lenore Silverman, Shelby Kirchoff, Eugene Furnace, Jesse Jensen, and Vanessa Hughes.

Silverman, Kirchoff, and Furnace.  Defendants issued subpoenas to Silverman, Kirchoff, and Furnace knowing that each of them was *highly* unlikely to possess responsive documents.  Silverman is a former BCS Board member who was not involved in the March 2022 events giving rise to this lawsuit.  And Defendants do not even attempt to explain how Kirchoff or Furnace is a material witness, particularly since Furnace was only briefly a BCS member for a few months.

It is apparent that Defendants issued these subpoenas not to obtain probative

-2-

1  information, but to incur additional subpoena-related costs that could be charged to

2  BCS in connection with their sanctions motion.  The subpoenas are entirely

3  gratuitous and not geared toward a search for the truth, which ended a long time

4  ago.

5        Jensen and Hughes.  Defendants claim that their subpoenas to Jensen and

6  Hughes were not served because Jensen and Hughes "actively evaded service."  Dkt.

7  168 at 5.  Defendants submit no evidence, such as a process server declaration, to

8  corroborate this characterization.

9              **Defendants' Claims of Prejudice and Spoliation**

10       Defendants' claims of prejudice and spoliation—which are speculative at

11  best—are exaggerated to take advantage of their pending sanctions motion.  The

12  reality is Defendants have already obtained all necessary discovery, and have filed

13  two motions for summary judgment based on that discovery.  Their attempts to send

14  BCS on wild goose chases for additional, nonprobative documents that *may* exist

15  based on nothing more than Defendants' belief that they *may* exist is harassing and

16  disproportionate to the needs of the case.

17       Silverman.  Silverman is an attorney and former BCS member who did not

18  use any BCS-issued accounts.  She produced personal documents in response to

19  Defendants' subpoena and submitted a declaration stating she has no additional

20  responsive documents.  Nevertheless, Defendants claim that she must have more,

21  including board meeting minutes from *after* the March 2022 unauthorized access at

22  issue and additional emails, since "Defendants know of at least a couple emails" that

23  were sent to Silverman.  Dkt. 168 at 10.

24       Silverman is a tangential player at best and Defendants have failed to show

25  any prejudice from her existing production or from the lack of any additional

26  production.  Defendants should not be entitled to any sanctions in connection with

27  Silverman.

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1

1    <u>Hurwitt</u>.  Hurwitt is a former BCS member.  When BCS' counsel contacted

2    Hurwitt asking her for a declaration and documents from her personal accounts, she

3    told BCS' counsel to "[F]eel free to f**k off!"  Then, in response to Defendants'

4    subpoena, Hurwitt executed a Certification of No Records.  Defendants claim that,

5    nevertheless, she is likely lying.  Dkt. 168 at 10.  Holding *BCS* accountable for

6    Hurwitt's personal discovery positions does not seem just.

7    Separately, Defendants claim they have reason to believe that BCS has

8    withheld or spoliated Hurwitt's *BCS* documents, specifically communications

9    "discussing whether [she] had accessed the Google Search Console" and documents

10   "regarding the Google Analytics being deactivated."  *Id.* at 8.  The fault with

11   Defendants' position is that Defendants simply assume such "documents likely

12   exist" and BCS has failed to produce them.  *Id.*  This is unfounded speculation.

13   The reality is that BCS produced 240 documents and communications of

14   which Hurwitt was a custodian.  If that production does not include the documents

15   and communications Defendants believe exist, it is just as likely that they do not

16   exist.

17   BCS conducted a reasonable and good faith collection related to Hurwitt's

18   documents and communications.  Defendants have failed to show any prejudice

19   from her existing production or from the lack of any additional production.

20   Defendants should not be entitled to any sanctions in connection with Hurwitt.

21   <u>Beauregard</u>.  Beauregard is a former BCS member.  While she was at BCS,

22   she took screenshots of Defendants' alleged unauthorized access in March 2022.

23   She deleted the original screenshots, but copies of them have been preserved, and

24   BCS produced them.  Defendants claim they are prejudiced because they do not

25   have the "original metadata" from the original screenshots.  *Id.* at 7.  Defendants

26   claim they need the original metadata because without it, "there is no way of

27   knowing whether the files produced have been tampered with."  *Id.* at 8.

28   This is an artificial concern embellished for Defendants' sanctions motion.

-4-

1    The notion that BCS *could have* "tampered with" the produced screenshots is

2    wholly unfounded.  There is no evidence of any such tampering and Defendants

3    have never described any.  How would they be tampered with?  Who would do so?

4    How would any such tampering be undetectable?  Defendants have called Hughes

5    "careless and technical[ly] inept" and have challenged Jensen's technical abilities

6    and qualifications.  *Id.* at 11.  Moreover, if Defendants truly believed this was a

7    possibility, they could have had their cyber expert review and opine on them.

8         BCS conducted a reasonable and good faith collection related to Beauregard's

9    documents and communications.  Defendants have failed to show any prejudice

10   from her existing production or from the lack of any additional production.

11   Defendants should not be entitled to any sanctions in connection with Beauregard.

12        <u>Magill</u>.  Defendants admit that Magill executed a declaration stating her

13   "willingness to provide documents from all her data sources, including Facebook."

14   *Id.*  Defendants argue that "no Facebook messages from Magill as the custodian

15   were ever produced in discovery, not even a single chat."  *Id.*  This is highly

16   misleading.

17        BCS produced screenshots of Magill's Facebook page *and* Facebook

18   Messenger from its Dropbox account.  *See, e.g.*, BCS_0573452, BCS_0573453,

19   BCS_0573454, BCS_0770409, BCS_0770408, BCS_0770404-05.  Because they

20   were produced from BCS' Dropbox account, they do not display Magill as the

21   custodian.  Defendants do not explain why the lack of custodian data is prejudicial,

22   especially since it is clear the Facebook account is Magill's from the screenshots.  In

23   any event, Magill could authenticate them with her testimony.

24        Defendants also argue that Magill's Signal chats are "woefully incomplete"

25   because at least one conversation is cut off.  Dkt. 168 at 10.  Defendants provide no

26   citation to this conversation or explain how allegedly extensive this issue is.

27        BCS conducted a reasonable and good faith collection related to Magill's

28   documents and communications.  Defendants have failed to show any prejudice

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1

1  from her existing production or from the lack of any additional production.

2  Defendants should not be entitled to any sanctions in connection with Magill.

3       <u>Hughes</u>.  Defendants admit that Hughes "executed a declaration stating that

4  she would search for responsive documents and, subsequently, did produce

5  additional documents."  *Id.* at 11.  Nonetheless, Defendants contend that she should

6  have also produced the following documents.

7       *First*, Defendants argue that BCS "has not produced the documents showing

8  the changes that [Hughes] was making to the website or her discovery of the

9  deindexing."  *Id.*  This argument assumes that such documents exist.  Defendants

10  have not articulated why they believe these documents exist (other than the fact that

11  they allege the underlying events occurred) or what they would even look like.

12       *Second*, Defendants argue that BCS' production of Hughes' Facebook

13  messages is incomplete because it "is only 4 chat chains with Defendants."  *Id.*  This

14  characterization is highly misleading given the way Facebook chats are collected

15  and produced, as Defendants know because they produced them in a similar way.

16  Not only are Defendants wrong on the number of chat chains Hughes produced

17  (there are 9, not 4), but the chat chains span *1,412 pages*.  Defendants are also

18  incorrect that the chat chains only involve Defendants; they involve 9 other

19  participants.

20       *Third*, Defendants argue that Hughes used Signal's disappearing messages

21  feature "to shield documents from discovery."  *Id.* at 12.  There is no evidence

22  supporting this accusation.

23       *Fourth*, Defendants argue that BCS did not produce Hughes' "Zoom logs"

24  despite her declaration saying she would if she had them.  *Id.*  Defendants have

25  made no argument as to how Zoom logs are probative of any of the issues in this

26  case, and it is hard to imagine how they could be.  It appears Defendants were trying

27  to force BCS to produce them just for the sake of it.

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1

1    *Fifth*, Defendants argue that BCS did not produce documents from her

2    personal iCloud.  *Id.*  This is also incorrect.  BCS produced 2,839 documents from

3    Hughes' mobile device through iCloud.  *See* volumes BCS_010, BCS_016, and

4    BCS_017.

5        *Sixth*, Defendants argue that BCS did not produce Hughes' communications

6    with Athena Kolbe. Dkt. 168 at 12.  Defendants argue that Hughes had

7    communications with others about Kolbe and therefore must have spoken to Kolbe

8    as well about matters germane to this lawsuit.  *Id.* at 12-13.  This argument assumes

9    that such communications not only exist, but also are responsive.  Thus, even if

10   Hughes communicated with Kolbe does not mean that such communications are

11   responsive.

12       BCS conducted a reasonable and good faith collection related to Hughes'

13   documents and communications.  Defendants have failed to show any prejudice

14   from her existing production or from the lack of any additional production.

15   Defendants should not be entitled to any sanctions in connection with Hughes.

16       <u>Jensen</u>.  BCS produced 365 documents and communications of which Jensen

17   was custodian.  Jensen executed a declaration regarding sources of his personal

18   documents, but has not produced such documents.  Defendants speculate that the

19   sources identified in his declaration "presumably would have responsive

20   documents."  *Id.* at 7.  However, the examples of documents Defendants believe

21   Jensen may have do not support their claims of prejudice or spoliation.

22       For instance, Defendants argue that Jensen may have a "WordPress website

23   backup" in his personal files.  *Id.* at 6.  Defendants do not explain why it is probative

24   or why they need it, particularly in light of the fact that BCS is not claiming that

25   Defendants improperly accessed BCS' WordPress.  Moreover, Defendants argue

26   that BCS has not produced Jensen's personal Signal communications.  *Id.*  While

27   Jensen has not provided his personal Signal communications to BCS' counsel, other

28   Signal communications that BCS produced would likely contain the majority of the

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1

1  same communications.  Lastly, Defendants argue that Jensen also took screenshots

2  of Defendants' unauthorized access, but BCS has not produced the originals.  *Id.*

3  Defendants admit, however, that BCS produced a version of these screenshots with

4  Jensen listed as custodian (*see id.* at 8 n.1).  As set forth above, Defendants' claim

5  that they are prejudiced by not having the "original" screenshots is unavailing.

6        BCS conducted a reasonable and good faith collection related to Jensen's

7  documents and communications.  Defendants have failed to show any prejudice

8  from his existing production or from the lack of any additional production.

9  Defendants should not be entitled to any sanctions in connection with Jensen.

10

11  Dated:  March 21, 2024              Respectfully submitted,

12                                     **DLA PIPER LLP (US)**

13                                     By:  */s/ Jason Lueddeke*

14                                           JOHN S. GIBSON
                                             JASON TAYLOR LUEDDEKE

15
                                           Attorneys for Plaintiff
16                                         BREAKING CODE SILIENCE

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on this 21st day of March, 2024, I electronically filed the

3   foregoing paper(s) with the Clerk of the Court using the ECF system which will

4   send notification to all parties of record or persons requiring notice.

5

6                                   /s/ Jason Lueddeke
                                      Jason Lueddeke

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATUS REPORT RE PHASE 1