Dirk O. Julander, Bar No. 132313
*doj@jbblaw.com*
Catherine A. Close, Bar No. 198549
*cac@jbblaw.com*
M. Adam Tate, Bar No. 280017
*adam@jbblaw.com*
JULANDER, BROWN & BOLLARD
9110 Irvine Center Drive
Irvine, California 92618
Telephone:  (949) 477-2100
Facsimile:  (949) 477-6355

Attorneys for Defendants
KATHERINE MCNAMARA and
JEREMY WHITELEY



# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) nonprofit,<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE MCNAMARA, an Individual; JEREMY WHITELEY, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-002052-SB-MAA<br><br>**REPLY BRIEF IN SUPPORT OF KATHERINE MCNAMARA'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  May 14, 2024<br>Time:  2:00 p.m.<br>Crtrm:  880<br><br>[*Assigned to the Hon. Maria A. Audero*] |



**TABLE OF CONTENTS**

<u>Page</u>

I.    INTRODUCTION ........................................................................................ 5

II.   LEGAL ARGUMENT ............................................................................... 6

    A.   BCS Cannot Show that McNamara Accessed the Google Search Console and Caused the .Org Domain to be Deindexed ....................... 6

        1.   BCS Misstates the Evidentiary Burden Shifting Standard .......... 6

        2.   Tried and True Standard: McNamara Proved That BCS's Theory of Liability is Impossible ................................................. 7

        3.   No Evidence Standard: BCS Failed to Present any Evidence that McNamara Deindexed the .Org Domain ............... 8

            (a)   *BCS Has Not Submitted Any Admissible Evidence that a Temporary Removal Request was Submitted by Anyone* ................................................................. 8

            (b)   *BCS's Circumstantial Evidence is Insufficient Under Brekka and is not Persuasive* ............................... 10

    B.   BCS Failed to Show Unauthorized Access ........................................ 14

    C.   BCS Has Not Presented Any Admissible Evidence Corroborating its Damage Theory ....................................................... 15

        1.   BCS Failed to Prove its Volunteer Time is a Cognizable Loss ............................................................................................ 15

        2.   BCS Failed to Prove its Attorney Time is a Cognizable Loss ............................................................................................ 17

        3.   BCS Failed to Prove That it Lost $5,000 in Donations ............. 18

III.  CONCLUSION ........................................................................................ 20

1

## TABLE OF AUTHORITIES

2
<u>**Page**</u>

3
## <u>CASES</u>

4

5
*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 158-60 (1970)..................................................................6

6
*Celotex Corp. v. Catrett*
477 U.S. 317, 325 (1986) .....................................................................6

7

8
*Coverdell v. Dep't of Soc. & Health Servs.*
834 F.2d 758, 769 (9th Cir. 1987)....................................................6, 8

9
*F.T.C. v. Publ'g Clearing House, Inc.*
104 F.3d 1168, 1171 (9th Cir. 1997)......................................................8

10

11
*Facebook, Inc. v. Power Ventures, Inc.*
844 F.3d 1058, 1067 (9th Cir. 2016)....................................................15

12
*Guangzhou Yuchen Trading Co. v. Dbest Prods. Inc.*
No. CV 21-04758-JVS-JDE, 2023 U.S. Dist. LEXIS 55007, at *6
13
(C.D. Cal. Feb. 24, 2023) ....................................................................17

14
*La Force v. GoSmith, Inc.*
No. 17-CV-05101-YGR, 2017 WL 9938681, at *3
15
(N.D. Cal. Dec. 12, 201 ...........................................................................9

16
*LVRC Holdings, LLC v. Brekka*
581 F.3d 1127, 1132 (9th Cir. 2009) ...................................................10

17

18
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574, 587 (1986)....................................................................13

19
*Nigro v. Sears, Roebuck & Co.*
784 F.3d 495, 497 (9th Cir. 2015) ..........................................................8

20

21
*Oregon Mut. Ins. Co. v. Victorville Speedwash, Inc.*
No. CV 14-07909-AB (SHX), 2015 WL 12656274, at *4 (C.D. Cal.
July 6, 2015) ..........................................................................................6

22

23
*Snapp v. United Transp. Union*
889 F.3d 1088, 1103 (9th Cir. 2018)....................................................17

24
*Subotincic v. 1274274 Ontario Inc.*
No. SACV 10-01946 AG (PJWx), 2013 U.S. Dist. LEXIS 110726, at
25
*51 (C.D. Cal. Apr. 9, 2013) ..................................................................9

26
*Super Future Equities, Inc. v. Wells Fargo Bank Minn.*
N.A., No. 3:06-CV-0271, 2007 U.S. Dist. LEXIS 91947
27
(N.D. Tex. Dec. 14, 2007) ...................................................................17

28
*United Fed'n of Churches, LLC v. Johnson*
522 F.Supp.3d 842, 851 (W.D. Wash. 2021)........................................12



JULANDER BROWN
— & BOLLARD —

*Van Buren v. U.S.*
    141 S.Ct. 1648, 1660 .................................................................................... 11, 14

*Vaughn v. City of Orlando*
    413 Fed. Appx. 175 (11th Cir. Feb. 7, 2011) ................................................. 10

*Villiarimo v. Aloha Island Air, Inc.*
    281 F.3d 1054, 1065 n. 10 (9th Cir. 2002) ..................................................... 10

**<u>STATUTES AND RULES</u>**

18 U.S.C. §1030 ............................................................................................... 15

Fed. R. Evid. 901 ............................................................................................... 9

Fed. R. Evid. 902 ............................................................................................... 9

Fed. R. Civ. Proc. 56 .......................................................................................... 6

**<u>OTHER AUTHORITIES</u>**

Cal. Code Regs., tit. 11, §999.9.4 ................................................................... 18

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

BCS's primary allegation is that someone went on the Google Search Console on March 9th and requested that Google temporarily remove the domain www.breakingcodesilence.org (the ".Org Domain") from the Google Search results (the alleged "deindexing"). BCS admits that it has no proof showing who actually submitted the alleged temporary removal request, but it assumes that it was Defendants because Defendants are technical experts and because Defendants left BCS on unfriendly terms. BCS has asked the Court to deny Defendants' motions for summary judgment based largely on this same assumption.

Despite having no proof whatsoever, BCS has consistently alleged throughout this action that Defendants used ***Whiteley's credentials*** to sign on to the Google Search Console and caused the alleged deindexing. BCS has steadfastly held to this allegation in its Complaint, discovery responses, and 30(b)(6) deposition testimony. The overwhelming evidence shows that this theory of liability is impossible. The Google records show that (1) Whiteley was not given the administrative access to the Google Search Console until March 11th (two days later), and (2) the first time Whiteley actually visited the Google Search Console (as opposed to the Google Webmaster Central) was on March 29th. To date, BCS has never presented any evidence refuting these facts.

Regardless of whose credentials were allegedly used, in order to defeat McNamara's motion for summary judgment, it was incumbent on BCS to present sufficiently probative evidence from which a jury could conclude that McNamara caused the deindexing. After hundreds of discovery requests, eight depositions, substantial motion work, and a forensic inspection, BCS has not been able to do so. In fact, BCS plainly admits that "[t]here is no direct evidence establishing who submitted the deindexing request." (Dkt. 169, p. 10.) The only "evidence" that BCS presented in its opposition is inadmissible character evidence and wild speculation.

JULANDER BROWN
— & BOLLARD —

1   Worse still, the lawsuit against McNamara lacks a legitimate purpose. As

2   close as can be determined, the .Org Domain was only not showing on the Google

3   Search results, if at all, for at most three days and perhaps as little as one day. BCS

4   has been unable to prove through any admissible evidence that it lost any donations

5   during that time, let alone $5,000 as required by the Computer Fraud and Abuse Act

6   (the "CFAA"). BCS also admits that it did not pay anyone anything to investigate

7   the alleged deindexing. At bottom, there is no evidence that BCS was even harmed.

8   **II.     LEGAL ARGUMENT**

9       **A.     BCS Cannot Show that McNamara Accessed the Google Search**

10          **Console and Caused the .Org Domain to be Deindexed**

11          1.     **BCS Misstates the Evidentiary Burden Shifting Standard**

12   In the most traditional form, a defendant seeking summary judgment submits

13   uncontroverted evidence that disproves an essential element of the plaintiff's claim.

14   *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-60 (1970). This is the so-called

15   "tried-and-true" form of summary judgment. Alternatively, the moving party can

16   carry its initial burden by arguing that the plaintiff lacks sufficient evidence to prove

17   its claim at trial. Fed. R. Civ. Proc. 56(c)(1)(B); *Celotex Corp. v. Catrett,* 477 U.S.

18   317, 325 (1986). This approach is sometimes known as a "no evidence" motion for

19   summary judgment. Fed. R. Civ. Proc. 56(d); *Celotex,* 477 U.S. at 326; *Oregon Mut.*

20   *Ins. Co. v. Victorville Speedwash, Inc*., No. CV 14-07909-AB (SHX), 2015 WL

21   12656274, at *4 (C.D. Cal. July 6, 2015). The no-evidence approach does not

22   require the defendant to do anything more than to "point[] out to the District Court –

23   that there is an absence of evidence…" *Coverdell v. Dep't of Soc. & Health Servs*.,

24   834 F.2d 758, 769 (9th Cir. 1987).

25   McNamara's Motion meets both the tried-and-true and no-evidence standards.

26   To meet the tried-and-true standard, McNamara declared that she did not access the

27   Google Search Console to deindex the .Org Domain and she proved that BCS's

28   theory is impossible because the credentials she allegedly used (Whiteley's

JULANDER BROWN
— & BOLLARD —

6

1  credentials) did not have administrative access to the Google Search Console when
2  the deindexing request was allegedly made. (Dkt. 172, p. 19-20.) To meet the no-
3  evidence standard, McNamara also demonstrated that BCS has no evidence that she
4  deindexed the website and, in support thereof, McNamara submitted the declaration
5  of her expert, Clark Walton, who opines that there is no evidence that McNamara
6  was the one who caused the alleged deindexing. (Dkt. 176, ¶23.) Under either the
7  tried-and-true or the no-evidence standard, the evidentiary burden shifts to BCS.

8       BCS misunderstands the above summary judgment standards. Over and over,
9  BCS asserts that the *lack* of evidence somehow creates triable issues of fact. BCS
10 specifically argues that Clark Walton's opinion that there is ***no proof*** that
11 McNamara deindexed the .Org Domain itself creates a triable issue of fact, which is
12 an absurd notion. BCS has misconstrued its own burden of proof.

13           2.    **Tried and True Standard: McNamara Proved That BCS's**
14                 **Theory of Liability is Impossible**

15      BCS's theory is that McNamara caused the de-indexing by signing on to the
16 Google Search Console ***with Whiteley's credentials***. BCS has consistently held to
17 this theory of liability in its Complaint (Dkt. 2, ¶36.), discovery responses (Dkt.
18 172-65, No. 3, Appendix A), and 30(b)(6) deposition testimony (Dkt. 172-57, pp.
19 59:14-60:2 ["the email address that was used to gain access belonged to Jeremy
20 Whiteley."].)

21      McNamara's Motion proves that BCS's theory is impossible because
22 Whiteley was not given access to the Google Search Console until March 11th – two
23 days after the alleged de-index request. (Dkt. 172, p. 19-20.) Tellingly, BCS's
24 opposition does address this fatal temporal flaw and certainly does not explain how
25 Whiteley's credentials could have been used before McNamara gave Whiteley
26 access to the Google Search Console on March 11th.

27      Rather than address McNamara's lead argument, BCS instead argues that
28 McNamara failed to shift the evidentiary burden because she submitted a self-

JULANDER BROWN
— & BOLLARD —

1  serving declaration, and according to BCS, self-serving declarations are

2  inadmissible. (Dkt. 183-2, p. 12.) Regrettably, BCS has misstated the law.

3  Applicable law merely provides that self-serving declarations presented *without any*

4  *other details or other supporting evidence* are insufficient to satisfy a defendant's

5  initial burden on summary judgment. *F.T.C. v. Publ'g Clearing House, Inc*., 104

6  F.3d 1168, 1171 (9th Cir. 1997). When declarations are presented along with other

7  evidence, or when they are based on personal knowledge, legally relevant, and

8  internally consistent, the Court is to consider them even if they are self-serving.

9  *Nigro v. Sears, Roebuck & Co*., 784 F.3d 495, 497 (9th Cir. 2015). McNamara's

10  declaration is submitted with a host of other legally relevant and consistent evidence

11  and must be considered.

12        3.    **No Evidence Standard: BCS Failed to Present any Evidence**

13           **that McNamara Deindexed the .Org Domain**

14        (a)    *BCS Has Not Submitted Any Admissible Evidence that a*

15           *Temporary Removal Request was Submitted by Anyone*

16       In addition to proving that BCS's theory of liability is impossible, McNamara

17  also invoked the no-evidence method of proving summary judgment by "pointing

18  out to the District Court – that there is an absence of evidence…" *Coverdell v. Dept*

19  *of Soc. & Health Servs*., 834 F.2d 758, 769 (9th Cir. 1987). Once McNamara did so,

20  the burden shifted to BCS to provide probative evidence that McNamara caused the

21  alleged deindexing.

22       BCS has failed to proffer *any* admissible evidence that *anyone* accessed the

23  Google Search Console and submitted a deindexing request, let alone that

24  McNamara did so. While BCS's Opposition and Separate Statement state in

25  conclusory fashion that "[o]n March 9, 2022, a request was submitted to de-index

26  the BCS website," BCS failed to present any admissible evidence supporting this

27  statement. The lone citation relied upon by BCS is "Magill Decl., Ex. J." (Dkt. 183-

28  3 p. 38; PMF 34.) Exhibit J, in turn, is a screenshot which appears to be of the

1  Google Search Console, but BCS laid no foundation for the introduction of this

2  screenshot other than saying that it was taken by Noelle Beauregard. BCS

3  specifically failed to establish how Magill knows that the screen shot was taken by

4  Ms. Beauregard, how it was taken, what it shows, and how it was preserved.

5  Without such foundation, the screenshot is inadmissible and cannot be relied upon

6  to defeat summary judgment. Fed R. Evid. 901; see also *Subotincic v. 1274274*

7  *Ontario Inc*., No. SACV 10-01946 AG (PJWx), 2013 U.S. Dist. LEXIS 110726, at

8  *51 (C.D. Cal. Apr. 9, 2013). Moreover, a screenshot typically can only be

9  authenticated by an expert or the person who took it, and accordingly, BCS's

10  attempt to authenticate the screenshot through Magill fails. Fed. R. Evid. 902; *La*

11  *Force v. GoSmith, Inc*., No. 17-CV-05101-YGR, 2017 WL 9938681, at *3 (N.D.

12  Cal. Dec. 12, 2017).

13      Even if the screenshot was admissible, BCS failed to present any

14  corroborating testimony from an expert explaining its significance. BCS instead

15  asks the Court to interpret the screenshot as proof that someone manually submitted

16  a temporary removal request through the Google Search Console. However, as

17  declared by Clark Walton, the screenshots of the Google Search Console do not

18  necessarily lead to that conclusion. Specifically, the "deindexing" could have been

19  the result of an automated Google response accidentally triggered by issues with

20  BCS's website. (Dkt. 176, ¶22-24.) Notably, BCS does not contest that there were

21  serious issues with its website at the time of the deindexing, including URLs marked

22  as "no-index" and several broken site maps. (See Dkt. 184-04, Nos. 8-10.) This

23  point cannot be emphasized strongly enough. BCS's entire case hangs on the

24  assumption that someone submitted a manual temporary removal request and that

25  Defendants are the most likely persons to have done so. It is possible, if not likely,

26  that no one submitted a temporary removal request at all.

27      In its Opposition, BCS attempts to twist the above facts by arguing that the

28  possibility that BCS's actions resulted in the.Org Domain being removed from the

9

1  Google Search results creates a disputed fact. (Dkt. 183-2, p. 12.) Once again,

2  BCS's argument reflects a misunderstanding of the applicable legal standards.

3  Under the no-evidence standard, McNamara need not prove how the .Org Domain

4  was deindexed. To meet her initial burden, all McNamara needed to show was that

5  BCS's evidence is insufficient to prove that McNamara submitted a deindexing

6  request. Once McNamara met this burden (which she did), it was incumbent upon

7  BCS to come forward with admissible evidence proving McNamara's culpability.

8  BCS's evidence – a single inadmissible screenshot submitted without any

9  explanation – fails to show that *anyone* manually submitted a deindexing request

10  and, accordingly, summary judgment is appropriate.

11                    (b)    ***BCS's Circumstantial Evidence is Insufficient Under***

12                    ***Brekka and is not Persuasive***

13         By BCS's own admission, BCS does not have any direct evidence which

14  proves that McNamara submitted the alleged deindexing request. (Dkt. 183, p. 9.)

15  Instead, BCS asks the Court to assume that McNamara is liable based on

16  circumstantial evidence. Specifically, BCS asks the Court to "reasonably infer" that

17  McNamara caused the deindexing because (1) she had credentials which would

18  allow her to access the Google Search Console, (2) McNamara granted Whiteley

19  access to the Google Tools on March 11th, (3) McNamara had motive to deindex the

20  website, and (4) she had the technical knowledge to be able to cause the deindexing

21  and she is supposedly the type of person who would "hack" a website. (Id., p. 14.)

22         At summary judgment, the Court need not draw all possible inferences in

23  favor of the non-moving party, only *reasonable* inferences. *Villiarimo v. Aloha*

24  *Island Air, Inc.*, 281 F.3d 1054, 1065 fn. 10 (9th Cir. 2002). Inferences based on

25  speculation and conjecture cannot be used to avoid summary judgment. *Vaughn v.*

26  *City of Orlando*, 413 Fed. Appx. 175 (11th Cir. Feb. 7, 2011).

27         As set forth in the Motion, in *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127,

28  1132 (9th Cir. 2009) ("*Brekka*"), the plaintiff asked the Court to "reasonably infer"

JULANDER BROWN
— & BOLLARD —

1  that an ex-employee had accessed the company website based on the following: (1)
2  someone logged on to the website using the defendant's credentials and no other
3  employees knew the log in information, (2) the computer that logged on to the
4  website was connected to an ISP near the defendant's known location, and (3) an
5  expert testified that the defendant's computer had been used to access the website.
6  Id. at 1136-1137. Despite all of this evidence, the Court noted that it "need not draw
7  inferences that are based solely on speculation," it found reasons to discredit the
8  plaintiff's arguments, and granted summary judgment for the defendant. Id.

9      BCS argues that *Brekka* is distinguishable because, in *Brekka*, the employee
10  argued that the unauthorized access occurred after his credentials had been
11  deactivated, and therefore, the employee could not have used his credentials to
12  access the website on the dates alleged; whereas, McNamara's credentials were
13  never revoked. (Dkt. 183-2, p. 15-16.) In its attempt to distinguish *Brekka*, BCS
14  actually highlighted the similarity between the cases. BCS's central allegation is that
15  Defendants used Whiteley's credentials to cause the alleged deindexing. (Dkt. 2,
16  ¶36; Dkt. 172-57, pp. 59:14-60:2.) It is undisputed that Whiteley's credentials were
17  deactivated well before March 9th. (See Dkt. 183-3, No. 26.) Thus, *Brekka* is nearly
18  perfectly on point.

19      BCS's circumstantial evidence is not persuasive anyway. BCS's first
20  argument is that McNamara likely caused the deindexing because she had
21  credentials to the Google Tools. (Dkt. 18302, p. 14.) As explained above, this
22  argument fails because BCS has alleged in its Complaint, written discovery
23  responses, and 30(b)(6) deposition testimony that the alleged deindexing was
24  accomplished through the use of Whiteley's credentials, which had been revoked.
25  Further, as discussed below, BCS's admission that McNamara had access to the
26  Google Search Console, and that access was never revoked, requires the Court to
27  grant summary judgment under *Van Buren v. U.S*., 141 S.Ct. 1648, 1660.

28

JULANDER BROWN
— & BOLLARD —

JULANDER BROWN
— & BOLLARD —

1    BCS then argues that the fact that McNamara granted Whiteley ownership

2    access to the Google Tools on March 11th and 12th somehow shows that she

3    submitted the deindex request on March 9th. (Dkt. 18-2, p. 14.) The argument is

4    nonsensical. If McNamara secretly submitted a deindexing request on March 9th,

5    why would she repeatedly and openly make changes to Google Tools two days later

6    using her own personal email address? The idea that McNamara, who everyone

7    agrees is a technical expert in cybersecurity, would have been openly using the

8    Google Tools two days after submitting a deindexing request strains credulity.

9    Next, BCS argues that McNamara likely caused the deindexing because she

10   volunteers with Unsilenced and at the time of the deindexing Unsilenced was

11   allegedly running adds with the key words "breaking code silence." (Dkt. 183-2, p.

12   14.) BCS would apparently have the Court believe that McNamara intended to cause

13   people searching for BCS's website to find Unsilenced's website instead. (Id.) The

14   flaw with this argument is that, if McNamara truly wanted to accomplish this

15   design, she easily could have taken a more direct path.

16   A domain name is an alphanumeric designation registered with or assigned by

17   a domain name registration authority as part of an electronic address on the Internet.

18   *United Fed'n of Churches, LLC v. Johnson*, 522 F.Supp.3d 842, 851 (W.D. Wash.

19   2021). In the simplest of terms, a user can type in a domain name into a web

20   browser and would be directed to an IP address where they can see a website's

21   content. Because the .Org Domain was housed in McNamara's Hover account, if

22   she wanted to, McNamara could have easily used her Hover account to direct the

23   .Org Domain to point directly to the IP address for Unsilenced's website. Anyone

24   looking for BCS's website would find the Unsilenced website instead even if they

25   typed www.breakingcodesilence.org directly into their web browser. By contrast,

26   merely deindexing the .Org Domain only affects a user's ability to find the website

27   through a Google search. Even during the time of the alleged deindexing, anyone

28   could have easily viewed BCS's website by either (1) typing the domain name

12

1  directly into their web browser, (2) clicking a link, or (3) searching for the website

2  on any search engine other than Google (such as Yahoo, Bing, or a host of others).

3      Finally, BCS argues that McNamara likely caused the alleged deindexing

4  because McNamara is a technical expert. BCS then points to irrelevant and

5  inadmissible character evidence to suggest that McNamara is the type of person who

6  would "hack" a website. (Dkt. 18-2, p. 14.) Such evidence is simply not admissible

7  and serves no purpose other than to drag McNamara's name through the mud. (See,

8  Objections to Evidence Nos. 11-12, 34, 40, and 42.)

9      As shown, BCS's circumstantial evidence is simply not persuasive. By

10  contrast, the evidence that BCS likely accidentally caused the deindexing itself is

11  highly probative. It is undisputed that the alleged deindexing was first noticed

12  immediately after a volunteer (Vanessa Hughes) made changes to the website. (Dkt.

13  2, ¶36, fn. 1.) It is also undisputed that immediately following the changes that were

14  made, BCS's website was presenting serious issues, including URLs marked as "no-

15  index" and several broken site maps. (See Dkt. 184-04, Nos. 8-10; Dkt. 172-4, ¶3.)

16  As declared by Clark Walton, these website issues may have resulted in Google

17  automatically delisting the .Org Domain from its search results. (Dkt 176, ¶22-24.)

18  Given the sequence of events (i.e. Hughes making changes to the website and then

19  immediately noticing that the domain cannot be found), by far the most plausible

20  explanation is that the changes Hughes made to the website are the reason the .Org

21  Domain was not appearing on Google Search.

22      Once again, McNamara need not prove that Hughes was responsible. The

23  burden was on BCS to present evidence on which a fair-minded jury could return a

24  verdict. Evidence that is "merely colorable," that is "not significantly probative," or

25  which only presents "some metaphysical doubt as to the material facts," is not

26  enough. *Anderson*, 477 U.S. at 249-250; *Matsushita Elec. Indus. Co. v. Zenith Radio*

27  *Corp.,* 475 U.S. 574, 587 (1986). Defendants respectfully submit that no jury could

28  find McNamara liable based on BCS's thinly circumstantial evidence, especially in

JULANDER BROWN
— & BOLLARD —

1  light of the evidence showing that the alleged deindexing was most likely caused by

2  Hughes.

### B.   BCS Failed to Show Unauthorized Access

4      McNamara's Motion argues that, although she did not submit the alleged

5  deindex request, had she done so, there would not be liability under the CFAA

6  because she had legitimate access to the Google Search Console. See *Van Buren v.*

7  *U.S.*, 141 S.Ct. 1648, 1660. Further, as long as McNamara's belief that she had

8  authorized to access the Google Search Console was reasonable, she lacked the

9  requisite *mens rea* to be liable. (Dkt. 172, p. 24-26.) BCS attempts to counter this

10 argument by claiming that, after her resignation, McNamara was not authorized to

11 access any "BCS account," including the "BCS Console." (Dkt. 183-2,  pp. 18-19.)

12     There are two flaws with BCS's argument. First, BCS has either deceptively

13 misused terms or it does not understand the how the Google Search Console works.

14 There is no such thing as a "BCS Console" and the Google Search Console is not a

15 "BCS account." Rather, Google affords webmasters and domain owners access to

16 the Google Search Console from their own personal Google accounts. Once signed

17 on to the Google Search Console, a person can view or manipulate Google's

18 interactions with one or more domains, provided that Google recognizes the person

19 as an owner or administrator of those domains. For example, when McNamara signs

20 on to the Google Search Console, she can see information for several different

21 domains, including the .Org Domain. (Dkt. 172-2, ¶37.)

22     There is no dispute that Google has always recognized McNamara as the

23 owner of the .Org Domain, nor is there any dispute that Google has always granted

24 McNamara the ability to use the Google Search Console to view and manipulate the

25 Google's interactions with the .Org Domain. Under *Van Buren's* "gates-up-or-

26 down" analogy, because Google gave McNamara access to the Google Search

27 Console, McNamara cannot be liable under the CFAA, even if McNamara allegedly

28 used her access for an improper purpose.

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

JULANDER BROWN
— & BOLLARD —

Second, even if the Google Search Console was a "BCS account," there is still no liability. Under Ninth Circuit law, once authorization is given to an account, it has to be ***explicitly*** revoked before there can be liability under the CFAA. See *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016). As argued in the Motion, BCS attempted to explicitly revoke McNamara's authority to access certain accounts, but BCS never explicitly revoked McNamara's access to the .Org Domain or the Google Search Console. (Dkt. 172, pp. 16, 26.) BCS has presented no evidence to the contrary.

## C.   BCS Has Not Presented Any Admissible Evidence Corroborating its Damage Theory

To have standing to assert its CFAA claim, BCS had to prove at least $5,000 in losses. (18 U.S.C. §1030(c)(4)(A)(i)(1).) As argued in the Motion, BCS has presented three theories of "losses": (1) volunteer time, (2) attorney hours, and (3) potential lost donations. As shown below, BCS cannot prove that any of these theories constitute recoverable losses.

### 1.   BCS Failed to Prove its Volunteer Time is a Cognizable Loss

It is undisputed that "BCS has never paid any amount of money to anyone to investigate the allegations of the Complaint." (Dkt. 183-3, UMF 60.) Accordingly, the Court must decide as a matter of law whether time spent by BCS's unpaid volunteers meets the CFAA's definition of a "loss." The CFAA defines "loss" as:

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damage incurred because the interruption of service.

18 U.S.C. §1030(e)(11). Thus, the term "loss" is defined as any "reasonable cost" and the statute provides several examples of such "reasonable costs." Id. As explained in the Motion, the plain and ordinary meaning of the word "cost" is "an amount paid or charge for something' price or expenditures." (See Dkt. 152, pp. 21-

JULANDER BROWN — & BOLLARD —

22.) Because BCS did not pay its volunteers anything, the time the volunteers allegedly spent conducting an investigation cannot be a "cost." BCS failed to cite a single case holding to the contrary. Instead, all of the cases cited by BCS involve *paid* salaried employees. (See Dkt. 169, p. 25.) Salaried employees are very different than persons who occasionally volunteer their time. A salaried employee is paid to work. If the employee is prevented from doing his ordinary work because he is conducting an investigation, the employer still has to pay the employee. There is a monetary *cost* to having a salaried employee perform an investigation.

Even if the Court determines that volunteer time is a "cost" within the meaning of the statute, once McNamara asserted that BCS has no evidence of damages, the burden shifted to BCS to prove its costs were "reasonable." At a minimum, BCS had to establish the amount of time spent, the value of that time, and the reasonableness of such time. BCS did not come close to carrying its evidentiary burden. Although BCS's Opposition and Separate Statement state that BCS spent at least 200 hours responding to the alleged deindexing, none of the evidence cited by BCS actually supports that proposition. Specifically, neither Magill nor Jensen's declarations specify what hours were worked by anyone other than Jensen (see Dkt. 185 and 187), nor does Jensen's deposition testimony (see Dkt. 186-2).

Jensen's declaration regarding the time he spent, and the value of that time, should be excluded in its entirety. On November 14, 2023, Defendants took the deposition of Jennifer Magill in her capacity as a 30(b)(6) witness on the topics of (1) "all costs incurred by BCS related to the cyber hacking incidents alleged in BCS' Complaint including: the amounts of each cost incurred," and (2) "[a]ll losses and damages suffered by BCS as a result of each instance of unauthorized or excessive access by Katherine McNamara and/or Jeremy Whiteley alleged in the Complaint." (Dkt. 172-92.) Magill was specifically asked how much time Jensen spent investigating the alleged deindexing and Magill plainly stated that she did not know. (Id., pp. 66:19-67:3.) Magill was later asked what the value of Jensen's time was

and she, once again, testified that she did not know. (Id., p. 71:21-25.) Magill was asked similar questions for her own time and for Hughes's time, but she was unable to answer these questions either. (Id., pp. 65:19-71:25.)

The Ninth Circuit has held, "because a Rule 30(b)(6) designee testifies on behalf of the entity, the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). In *Guangzhou Yuchen Trading Co. v. Dbest Prods. Inc.*, No. CV 21-04758-JVS-JDE, 2023 U.S. Dist. LEXIS 55007, at *6 (C.D. Cal. Feb. 24, 2023), Judge Selna explained:

> Because a Rule 30(b)(6) witness "speaks" on behalf of the corporation, the Rule obligates the corporate party to "prepare its designee to be able to give binding answers on behalf of [the corporation]." … Therefore, Rule 30(b)(6) prohibits "a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."

Judge Selna went on to cite to *Super Future Equities, Inc. v. Wells Fargo Bank Minn.*, N.A., No. 3:06-CV-0271, 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. Dec. 14, 2007) as an example of a properly-excluded declaration. The *Super Future Equities* decision is on all fours with the instant case in that the Court struck a declaration submitted in the summary judgment context which articulated damages when the 30(b)(6) representative was previously asked to quantify the plaintiff's damages and he stated that he could not do so. Id. at *27. Here, because BCS's 30(b)(6) representative failed to state how much time was spent by the volunteers investigating the alleged deindexing, or the value of that time, BCS is precluded from offering such evidence in opposition to the Motion.

### 2. **BCS Failed to Prove its Attorney Time is a Cognizable Loss**

BCS also asserts that its attorneys at DLA Piper spent time investigating the alleged deindexing. (Dkt 183-2, p. 24.) The only "evidence" BCS cites to in support

JULANDER BROWN — & BOLLARD —

of this conclusion is a single inadmissible spreadsheet. BCS failed to present any declarations supporting the spreadsheet or otherwise supporting BCS's claims that its attorney's participated in the investigation. (See Dkt. 183-3, PMFs 50-151.)

Although the spreadsheet should not even be considered, nothing in the spreadsheet suggests that the attorneys participated in the investigation. The only entries identified by BCS are on March 11 and March 12, 2022, which state "Correspondence regarding hacking incident" and "Dealing with website hacking issue." (Id.) Neither entry, in and of itself, suggests that the attorneys were involved in the investigation or remediation. And, of course, it is undisputed that the attorneys were never paid anything. (Dkt. 183-3, UMF 60.)

### 3. BCS Failed to Prove That it Lost $5,000 in Donations

It is undisputed that at the time of the alleged deindexing, BCS was not properly registered as a charitable organization with the California Attorney General. (Dkt. 183-3, UMF 63.) Pursuant to Cal. Code Regs., tit. 11, §999.9.4, BCS's failure to register precluded it from accepting charitable donations. The Court should find that BCS's lost donation theory fails for this reason alone. BCS's opposition largely fails to address this point. Instead, BCS suggests that its recent registration applies retroactively to 2020. BCS cites no authority for this proposition and Defendants are not aware of any.

BCS also fails to explain Noelle Beauregard's declaration in which she admits that she disabled the Google Analytics feature, rendering it impossible for BCS to monitor its website traffic. Notably, BCS did not provide any evidence which would contradict Beauregard's assertion that the Google Analytics had been deactivated. Instead, BCS desperately points out that Beauregard previously thought that the drop in traffic was due to a deindexing. (Dkt. 182-2, p. 23.) The alleged discrepancy is easily explained. As she stated in her declaration, Beauregard did not discover that the Analytics had been turned off until April 13, 2022 – well after the initial investigation. (Dkt. 172-4, ¶6.) What Beauregard previously believed before she

JULANDER BROWN
— & BOLLARD —

1 learned the real reason for the drop in Google web traffic is irrelevant.

2     Putting these fatal flaws aside, BCS's lost profit theory is more than

3 speculative; it is unbelievable. BCS asks the Court to assume that BCS would have

4 received more than $5,000 in donations in a 1-3 day period when the .Org Domain

5 was not appearing on Google Search, despite the fact that BCS's historical daily

6 average of donations and subscriptions was only $44.21. (Dkt. 172-6, ¶19(b).) BCS

7 does not dispute that it historically received less than $50 a day. Instead, BCS argues

8 that deindexing occurred about the same time as the premiere of two television

9 shows. BCS then speculates that it is reasonable to assume that BCS would have

10 received at least $5,000 in donations following these "high publicity events"

11 because BCS had previously received over $10,000 in donations in connection with

12 another high publicity event – lobbying with Paris Hilton. (See Dkt. 182-2 p. 23.)

13     There are two fundamental problems with BCS's argument. First, the math

14 does not work in BCS's favor. According to Magill's declaration and her

15 accompanying graphs, BCS received a total of $10,861 between October 9, 2021

16 and November 30, 2021. (See Dkts. 187-4 and 187-5.) Thus, during BCS's previous

17 "high publicity event" it only received an average of $208.87 per day over a 52-day

18 period. Accordingly, assuming an apples-to-apples comparison, BCS would have

19 only have lost less than $650 in donations during the 1-3 day window when the .Org

20 Domain was not appearing on Google Search.

21     Second, BCS admits its website was appearing on Google Search when the

22 Lifetime movie premiered. (Dkt. 183-3, UMF 56; Dkt. 179-2, p. 88:15-21 ["[T]he

23 moment that we resolved the issue was directly before the premiere of the Cruel

24 Instruction on Lifetime, like a few hours before."].) Notwithstanding that the fact

25 that the .Org Domain was appearing on Google Search at the time of the Cruel

26 Instruction premiere, BCS only received $170.23 in donations on March 12th. (Dkt.

27 172-6, ¶19(b).) The notion that BCS would have received more than 29 times that

28 amount in the 1-3 days *before* the movie premiered is simply not believable.

JULANDER BROWN
— & BOLLARD —

**III.   CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment.

DATED: March 29, 2024          JULANDER, BROWN & BOLLARD

By:   _____*/s/ M. Adam Tate*_____
M. Adam Tate
Catherine Close
Attorneys for Defendants
KATHERINE MCNAMARA and
JEREMY WHITELEY



REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1 | **L.R. 11-6.2 CERTIFICATION**

2 | The undersigned, counsel of record for Defendants certifies that this brief

3 | contains 5,057 words, which complies with the word limit of L.R. 11-6.1.

4 |

5 | Date: March 29, 2024         *_/s/ M. Adam Tate_*

6 |               M. Adam Tate

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of March, 2024, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification to all parties of record or persons requiring notice.

*/s/ Helene Saller*

Helene Saller

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT