

1  Dirk O. Julander, Bar No. 132313
    doj@jbblaw.com
2  Catherine A. Close, Bar No. 198549
    cac@jbblaw.com
3  M. Adam Tate, Bar No. 280017
    adam@jbblaw.com
4  JULANDER, BROWN & BOLLARD
   9110 Irvine Center Drive
5  Irvine, California 92618
   Telephone: (949) 477-2100
6  Facsimile: (949) 477-6355

7  Attorneys for Defendants
   KATHERINE MCNAMARA and
8  JEREMY WHITELEY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) nonprofit,<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE MCNAMARA, an Individual; JEREMY WHITELEY, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-002052-SB-MAA<br><br>**SUPPLEMENTAL JOINT STIPULATION RE: ATTORNEY'S FEES ON DEFENDANTS KATHERINE MCNAMARA AND JEREMY WHITELEY'S MOTION TO COMPEL SLACK COMMUNICATIONS AND FOR SANCTIONS**<br><br>Date of Motion: July 12, 2023<br>Action Filed: March 8, 2022<br>Pretrial Conf. Date: March 26, 2025<br>Trial: Vacated<br><br>[*Assigned to the Hon. Maria A. Audero*] |



# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTORY STATEMENT ............................................................................. 1

    A. Defendants' Introductory Statement ................................................................ 1

    B. Plaintiff's Introductory Statement .................................................................... 1

II. ISSUES IN DISPUTE .................................................................................................. 1

    A. Defendants' Statement of Issues in Dispute .................................................... 1

        1. Itemization of Attorney's Fees ............................................................... 1

        2. Whether attorneys' fees expended for time spent on (a) meeting and conferring, and (b) preparing for and attending at the IDCs related to the Slack Motion is recoverable under Rule 37(b)(c)(2) ............................ 1

    B. Plaintiff's Statement of Issues in Dispute ........................................................ 2

        1. Itemization of Attorney's Fees ............................................................... 2

        2. Whether attorneys' fees expended for time spent on (a) meeting and conferring, (b) reviewing discovery materials, and (c) preparing for and attending at the IDCs related to the Slack Motion is recoverable under Rule 37(b)(c)(2). ................................................................................. 2

III. PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES ....................... 2

    A. Statement of Facts ............................................................................................ 2

        1. Defendants' Statement of the Procedural History Since the Original Joint Statement was Filed ........................................................................ 2

        2. Plaintiff's Statement of the Procedural History ..................................... 4

    B. Issue No. 1 Itemization of Attorneys' Fees ...................................................... 6

    C. Issue No. 2: Whether Attorneys' Fees Expended for Time Spent in Connection with the Informal Discovery Conferences and "Meeting and Conferring" is Recoverable Under Rule 37(b)(c)(2) ........................................ 7

        1. Defendants' Contentions and Points and Authorities ............................. 7

            (a) The Fees Awardable under Rule 37(a)(5) and Rule 37(b)(c)(2) Are Different ................................................................. 7

            (b) BCS Violated at Least Two Court Orders ................................... 10

        2. Plaintiff's Contentions and Points and Authorities ............................... 11

# JOINT STIPULATION OF PARTIES PURSUANT TO LOCAL RULE 37-2

## I. INTRODUCTORY STATEMENT

### A. Defendants' Introductory Statement

On April 10, 2024, the Court issued a minute order directing the parties to submit an updated Joint Statement on the issue of attorneys' fees for the previously filed Motion to Compel Slack Communications and for Sanctions (the "Original Slack Motion"). (Dkt. 200.) As Defendants understand the April 10, 2024 order, the Court is requesting an itemization of attorney time spent on each type of task, rather than providing the Court with the total hours expended by each individual on a comprehensive list of tasks. The Court also informed Defendants that, if they contend that they should be able to recover fees for the time spent meeting and conferring and attending informal discovery conferences ("IDCs"), Defendants should brief that issue. This Joint Statement attempts to address these issues.

### B. Plaintiff's Introductory Statement

The Court's April 10, 2024, minute order states that Defendants "may not add more attorneys' fees than those originally requested in the Slack Motion". (Dkt. 200.) The fees requested by Defendants in their original Slack Motion included fees related to (a) preparing for and attending informal discovery conferences, (b) reviewing Slack productions, (c) meeting and conferring with BCS, and (d) communicating with clients and other attorneys. [Tate Decl. ¶ 12.] The Court's minute order requires that Defendants brief any contention that they were entitled to such fees under Fed. R. Civ. P. 37(b)(2)(C). BCS will show why fees for such activities would be improper and unjustified.

## II. ISSUES IN DISPUTE

### A. Defendants' Statement of Issues in Dispute

1. Itemization of Attorney's Fees
2. Whether attorneys' fees expended for time spent on (a) meeting and conferring, and (b) preparing for and attending at the IDCs

related to the Slack Motion is recoverable under Rule 37(b)(c)(2).

B. **Plaintiff's Statement of Issues in Dispute**

    1. Itemization of Attorney's Fees

    2. Whether attorneys' fees expended for time spent on (a) meeting and conferring, (b) reviewing discovery materials, and (c) preparing for and attending at the IDCs related to the Slack Motion is recoverable under Rule 37(b)(c)(2).

III. **PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES**

A. **Statement of Facts**

    1. **Defendants' Statement of the Procedural History Since the Original Joint Statement was Filed**

The history of the parties' "meet and confer" efforts and what occurred at the IDCs which predated the Original Slack Motion are set forth in the Original Slack Motion. (See Dkt. 94.) In the interest of brevity, Defendants will focus this restatement of the procedural history to the events which transpired after the Original Slack Motion was filed on July 12, 2023.

On July 14, 2023, and July 18, 2023, BCS produced additional Slack documents. (Tate Decl., ¶ 3.)

On July 25, 2023, the Court held a Further Status Conference in which Dennis Kiker represented to the Court that all of the Slack documents had been produced. The Court set a further telephonic status conference for July 27, 2023 to allow Defendants an opportunity to review the newly-produced documents and to address whether the Original Slack Motion was rendered moot. (Tate Decl., ¶ 4; Dkt. 104.)

On July 27, 2023, the Court held the Further Status Conference. During the conference, Defendants' counsel informed the Court that BCS's production of the Slack documents still was not complete. The Court ordered the parties to meet and confer and to reconvene again on August 8, 2023. (Tate Decl., ¶ 5; Dkt 106.)

On August 1, 2023, BCS's counsel sent Defendants' counsel an email attaching a "BCS Slack Collection Summary" Excel spreadsheet which showed the Slack channels BCS had reviewed and collected from. According to BCS's own chart, BCS failed to review the vast majority of its private Slack channels for responsive documents. (Tate Decl., ¶ 6.)

On August 7, 2023, after a further conference of counsel, BCS agreed to review the private channels that it had not yet searched for documents. (Tate Decl., ¶ 7, Ex. 1.)

On August 8, 2023, the parties reconvened for a Status Conference. During that conference, Defendants' counsel informed the Court that BCS had not yet produced all of the Slack documents but was apparently willing to do so. The Court ordered BCS to complete its production of the Slack documents by no later than August 18, 2023. To determine whether the Original Slack Motion would be rendered moot, the Court set a Further Status Conference for August 29, 2023. (Tate Decl., ¶ 8; Dkt 116.)

On August 29, 2024, the Court held another Status Conference. During the conference, Defendants' counsel informed the Court that he had a good faith reason to believe that BCS still had not finished its production of the Slack documents despite the Court's order to do so, but that the parties were conferring and that Defendants' counsel was optimistic the issue could be resolved. The Court set a Further Status Conference for September 12, 2023. (Tate Decl., ¶ 9; Dkt 135.)

 On September 8, 2023, BCS finally completed its Slack production.  (Tate Decl., ¶ 10, Ex. 2.)

On September 12, 2023, the Court held another Status Conference regarding the Slack documents. During the conference, Defendants' counsel informed the Court that the production of the Slack documents was finally complete. The Court took the attorneys' fees portion of the Original Slack Motion under submission and rendered the remainder of the Original Slack Motion moot. (Tate Decl., ¶ 11; Dkt.

138.)

2.  **Plaintiff's Statement of the Procedural History**

BCS feels that a more complete and accurate statement of the procedural history of this motion is necessary for the Court to evaluate the merits of Defendants' attorneys' fees request. As shown below, Defendants repeatedly attempted to turn a meet-and-confer process into a motion for sanctions, twice filing improper motions rather than pursuing the Court's established procedures for resolving discovery disputes. Certainly, following proper procedures

A prominent eDiscovery and forensics company offered to provide services to BCS on a pro bono basis for this matter, including the services of a forensic analyst to collect data for this litigation. [Kiker Decl. ¶ 2.] On February 22, 2023, the forensic analyst collected what he advised was all of the Slack data available for collection under BCS's "Pro" license, which had been provided to BCS at no cost as a charitable institution. [*Id.*]

On March 23, 2023, Defendants filed a Motion to Compel Compliance with Court Orders. [Dkt. 44.] The Court held that "the Motion appears to be a disguised discovery motion…violat[ing] the Court's pre-motion requirements" and proceeded to strike the motion in its entirety. [Dkt. 45.] Thereafter commenced a series of Informal Discovery Conferences ("IDC") with the Court during which the parties discussed and negotiated BCS's responses to discovery. [See Dkts. 52, 54, 56] At the IDC on May 1, 2023, BCS explained to the court that it had reviewed and produced all of the Slack documents that its forensic analyst had collected using the license available to BCS that hit on agreed-upon search terms and produced those that hit on search terms and were relevant to the litigation. The Court ordered BCS to produce any remaining relevant, non-privileged Slack documents by May 5, 2023. [Dkt. 56.] This is the first Court order instructing BCS to produce Slack documents. On May 3, 2023, the Court authorized Defendants to file a motion to compel discovery. [Dkt. 58.] There is no mention in the order of Slack documents.

In compliance with the Court's May 1, 2023, order, BCS produced additional Slack documents on May 4, 2023. [Kiker Decl. ¶ 3, Ex. 1.]

On June 14, 2023, Defendants filed their motion to compel Slack communications. [Dkt. 69.] In its initial order regarding the Slack motion, the Court found that Defendants had failed to "work[] with Plaintiff to prepare a joint stipulation" in violation of Local Rule 37-2.4, and denied the motion without prejudice. [Dkt. 72.]

Meanwhile, between mid- and late-June, BCS continued to confer with Defendants and with its forensic analyst about options for collecting Slack documents that were not previously collected due to BCS's license limitations. [*See* Kiker Decl. ¶ 4, Ex. 2 (extended email exchange between D. Kiker and A. Tate regarding efforts to collect and produce additional Slack documents).]

Defendants filed their Joint Stipulation re: Defendants' Motion to Compel Slack Communications on July 12, 2023. [Dkt. 94.] On July 14, 2023, BCS produced additional Slack documents that its forensic analyst had collected starting in late June using methods not previously disclosed to BCS. [Kiker Decl. ¶ 5, Ex. 3.]

On July 25, 2023, the Court held a Further Status Conference during which BCS advised the Court that it had reviewed and produced all of the Slack documents that had hit on the parties' agreed-upon search terms. BCS had, in fact, produced 2,373 documents. [Kiker Decl., ¶ 6, Ex. 4.]

After the IDC, Defendants asked BCS to identify the search terms that BCS had used to identify Slack documents for review. BCS informed Mr. Tate that it has used the same agreed-upon terms that had been used since the inception of the case. [Kiker Decl., ¶ 7, Exs. 5, 6.]

Further, in accordance with the parties' ongoing efforts to meet-and-confer, BCS also provided Defendants a complete list of the Slack channels that it had collected, identifying which had documents that hit on search terms and had been reviewed. BCS invited Defendants to identify any Slack channels that had not been

reviewed (because no documents hit on search terms) and ultimately agreed to review all of the Slack documents that had not hit on search terms. [Kiker Decl., ¶ 8, Ex. 7.]

Between August 2 and September 5, 2023, BCS and Defendants continued to meet-and-confer regarding BCS's ongoing production of Slack documents. [Kiker Decl., ¶ 9, Exs. 8, 9, 10.] On September 11, 2023, Defendants agreed that BCS had resolved all outstanding issues regarding Slack productions. [Kiker Decl., ¶ 10, Ex. 11.]

### B.  Issue No. 1 Itemization of Attorneys' Fees

The Court's April 10, 2024 order states that "Defendants may not add more attorneys' fees than those originally requested in the Slack Motion." (Dkt. 200.) As discussed below, Defendants believe that costs associated with the five (5) IDCs/Status Conferences which were held after the Original Slack Motion was filed, as well as the associated time spent meeting and conferring, should be recoverable. Notwithstanding, given the Court's April 10, 2024 order, Defendants have limited their analysis to only those fees incurred related to the Original Slack Motion. In the event that the Court determines that Defendants' interpretation of the law is correct, Defendants request the opportunity to present the additional fees.

The Original Slack Motion sought a total of $18,710 in fees. Of this time, $15,670 was spent drafting the motion/Joint Statement and the remainder was spent preparing for and attending informal discovery conferences, meeting and conferring, and otherwise evaluating whether BCS had finally produced all of the Slack documents. A breakdown of the total time spent by each attorney by task is included in the Declaration of M. Adam Tate filed concurrently herewith.

### C. Issue No. 2: Whether Attorneys' Fees Expended for Time Spent in Connection with the Informal Discovery Conferences and "Meeting and Conferring" is Recoverable Under Rule 37(b)(c)(2)

#### 1. Defendants' Contentions and Points and Authorities

##### (a) The Fees Awardable under Rule 37(a)(5) and Rule 37(b)(c)(2) Are Different

Generally speaking, Rule 37(a) governs situations where a party has failed to make a disclosure in response to discovery; whereas Rule 37(b) governs situations where a party has failed to comply with a court order.

While both Rule 37(a) and 37(b) state that the Court must issue sanctions against the culpable party, the language regarding what sanctions are awardable differs. Rule 37(a)(5) provides that the Court must require the party whose conduct necessitated bringing the motion, its attorney, or both, to pay the movant's reasonable expenses "incurred in making the motion." The statute states (emphasis added):

> *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses *incurred in making the motion*, including attorney's fees.

Rule 37(b)(2)(c), by contrast, is not limited to expenses incurred in making the motion. Rather, Rule 37(b)(2)(c) requires the Court to order a party, its attorney, or both, who has failed to comply with a court order to pay the reasonable expenses, including attorneys' fees, "caused by the failure" to comply with the court order. The statute states (emphasis added):

> *Payment of Expenses.* **Instead of or in addition to** the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, *caused by the failure*, unless the failure was substantially justified or

7
JOINT STIPULATION RE: MOTION TO COMPEL SLACK COMMUNICATIONS

other circumstances make an award of expenses unjust.

A general principle of statutory construction is that where a different language is used within the same statute, the differences are presumed to have meaning. *Lindsey v. Tacoma-Pierce Cty. Health Dep't*, 195 F.3d 1065, 1074 (9th Cir. 1999). Defendants submit that the most logical reading of Rule 37 is that (1) under rule 37(a)(5) a party can only recover those fees incurred in bringing a motion, but (2) under Rule 37(b)(2) a party can recover all of its "reasonable expenses" incurred as result of the failure to comply with the Court order "instead of or addition to" the fees awardable under Rule 37(a)(5). Complying with Court ordered "meet and confer" obligations and attending Court ordered IDCs and Status Conferences are "reasonable expenses" within the meaning of the statute "in addition to" those awardable under Rule 37(a)(5).

The Southern District of California's decision in *Sanchez Y Martin, S.A. De C.V. v. Dos Amigos, Inc.*, No. 17cv1943-LAB-LL, 2019 U.S. Dist. LEXIS 134739, at *28 (S.D. Cal. Aug. 9, 2019) is highly instructive and supports Defendants' interpretation. In *Sanchez*, the Plaintiff brought several discovery motions. In analyzing the first of the motions brought under Rule 37(a), the Court noted that Rule 37(a)(5)(A) only allowed for reasonable expenses "incurred in making the motion," and, accordingly, the Court declined to award sanctions for the time spent on meeting and conferring regarding discovery disputes, and reviewing discovery responses and document productions since such costs are normal expenses in the course of litigation. *Id.* at 27. However, when analyzing the second motion brought under Rule 37(b)(2)(c), the Court noted that the statute authorized fees "caused by the failure" to comply with court order. The Court then found that (1) meeting and conferring, (2) legal research, (3) opposing an ex parte application, and (4) drafting the motion for sanctions were all "reasonable expenses" under Rule 37(b)(2)(c). *Id.* at 28.

Defendants acknowledge that there are many cases, including cases within this Circuit, where Courts have refused to award fees for meeting and conferring or attending informal discovery conferences under Rule 37(a)(5). However, Defendants are not aware of any case within this Circuit which has explicitly reached the conclusion that attending Court ordered IDCs or complying with Court ordered obligations to meet and confer are not "reasonable expenses" within the meaning of Rule 37(b)(2)(c). By contrast, there are a handful of cases within this Circuit where the Court has found that the time spent "meeting and conferring" on discovery motions is awardable under Rule 37(b)(2)(c) as it is a "reasonable expense." See, e.g. *Andreoli v. Youngevity Int'l, Inc.*, No. 16-cv-02922-BTM-JLB, 2019 U.S. Dist. LEXIS 100298, at *25 (S.D. Cal. June 14, 2019) (awarding attorney's fees for meet and confer efforts under Rule 37(b)(2)(c)); *Premiere Innovations, Inc. v. Iwas Indus., LLC*, No. 07cv1083-BTM (BLM), 2009 U.S. Dist. LEXIS 142894, at *8 (S.D. Cal. May 8, 2009) (same).

The facts of this dispute are remarkable. As detailed in the Original Slack Motion, over the course of many months leading up to the Original Slack Motion, BCS's story regarding the Slack documents vacillated wildly. BCS first represented that BCS had already produced "even marginally relevant" Slack documents. (Dkt. 94-1, ¶11, Ex. 5.) BCS then changed its story and claimed that BCS was incapable of producing the majority of the Slack documents due restrictions with its Slack license. (Id. at ¶16, Ex. 9.) BCS then changed its story again and claimed that it was capable of producing the missing documents for an "associated cost" payable to Slack, but that it had not done so. (Id. at ¶21, Ex. 15.) Finally, BCS stated that it was supposedly working to produce the missing Slack documents, but refused to provide any timeline for when the documents would be produced. (Id. at ¶22, Ex. 16.)

After the Original Slack Motion was filed, BCS produced some additional documents and then expressly represented to the Court that its document production was complete – when it was not. (Tate Decl., ¶ 4.) The parties were then required to

9
JOINT STIPULATION RE: MOTION TO COMPEL SLACK COMMUNICATIONS

attend four more status conferences just so that the Court could be satisfied that BCS has finally produced all of the Slack documents. (See Tate Decl., ¶¶ 5, 8-9, 11.) In total, the Court held *seven* IDCs/Status Conferences on this motion – five of which were held after the Original Slack Motion had been filed.[1] The cost to Defendants to attend these informal discovery conferences was significant and were directly "caused by the failure" of BCS to produce the Slack documents. (See Rule 37(b)(2)(c).)

(b)    BCS Violated at Least Two Court Orders

BCS's failure to produce the Slack documents resulted in the violation of at least two Court Orders. First, on September 13, 2022, the Court issued the stipulated E-Discovery Order (the "EDO"). Among other things, the EDO provides that the parties would collect documents from each of the data sources identified in Section 4.4, including Slack communications, for each of the custodians listed in Section 4.3. (Dkt. 41, §4.4.) Section 7.1 then provides that "[t]he Parties will produce, on a rolling basis, ESI from the data sources and Custodians identified in paragraph 4.3 and 4.4" (Id. at §7.1.) Thus, the Court ordered Plaintiff to provide the relevant Slack communications. As of April 2023, BCS had not produced *any* Slack documents whatsoever. (Dkt. 94-1, ¶ 5.) BCS only completed its production of the Slack documents almost a year after being ordered to do so, and only after it attended numerous hearings during which its attorneys misrepresented to the Court that the documents had been produced. (See Tate Decl., ¶¶ 5, 8-9, 11.)

Second, on August 8, 2023, at one of the IDCs/Status Conferences on this motion, BCS was ordered to complete the production of Slack Documents by no later than August 18, 2023. (Dkt. 116.) BCS did not finally complete its production of Slack documents until September 8, 2023. (Tate Decl., ¶ 10.)

---

[1]    IDCs were held on April 19, 2023 (Dkt 52), May 1, 2023 (Dkt 56), July 25, 2023 (Dkt 104), July 27, 2023 (Dkt 106), August 8, 2023 (Dkt 116), August 29, 2023 (Dkt. 135), and September 12, 2023 (Dkt. 138).

### 2. Plaintiff's Contentions and Points and Authorities

The Court should not award attorneys' fees for any of the time attributed by Defendants to "meeting and conferring with opposing counsel", "communicating with the clients "preparing for and attending informal discovery conferences prior to the Original Slack Motion being filed". As demonstrated by the fact that the Court had to twice strike Defendants' putative motions for failure to comply with local rules requiring the parties to meet-and-confer *prior* to filing a motion, it is clear that Defendants have waged a concerted campaign to seek sanctions rather than engage in a "good faith effort to eliminate the necessity for hearing the motion or to eliminate as many disputes as possible". Local Rule 37-1. Discovery disputes are not uncommon, as is recognized by the Court's local rules, and those rules place the responsibility for arranging conferences with the producing party on the moving party. *Id.* When the parties met and conferred, particularly with the help of the Court during IDCs, issues were identified and ultimately resolved. That is the intent and purpose of the local rules. For Defendants to now request attorneys' fees for engaging in a mandatory process intended to avoid motion practice makes no sense and would undermine the Court's established process for resolving discovery disputes.

BCS has from the beginning acted in good faith with regard to its Slack productions. Relying on the guidance of a pro bono forensics analyst, BCS produced all the relevant Slack data that the analyst advised was available for collection. [Kiker Decl. ¶ 2.] Once the Court forced Defendants to engage in a meaningful meet-and-confer process, BCS continued to work with Defendants and its forensic analyst to identify and produce additional Slack documents. [Kiker Decl. ¶¶ 3-9.] Ultimately, Defendants agreed that all issues related to BCS's Slack productions had been resolved. [Kiker Decl. ¶¶ 3-10.] This is how the process is intended to work, and, with the Court's help, how it worked in this case.

Furthermore, the Court should not award Defendants for time spent

"reviewing the Slack documents". Obviously, Defendants would have had to review the Slack documents regardless of when and how they were produced. Any time reviewing Slack documents[2] specifically for purposes of filing any of their many motions should be encompassed in the time spent drafting those motions.

The Court should also question the hours that Defendants attribute to drafting their "Original Slack Motion". Defendants fail to identify whether the claimed hours are associated with drafting "the Motion [the Court determined] appears to be a disguised discovery motion…violat[ing] the Court's pre-motion requirements", the motion the Court denied due to Defendants' failure to "work[] with Plaintiff to prepare a joint stipulation" in violation of Local Rule 37-2.4, the motion filed after Defendants finally complied with the Court's local rules, or all three together. It would appear to be the latter, as the Defendants have claimed a combined 56.8 hours for drafting approximately 16 pages of the joint stipulation, but Defendants do not say. Absent further detail, the Court should reduce the number of hours to a reasonable minimum.

**IT IS SO STIPULATED.**

DATED: April 25, 2024    JULANDER, BROWN & BOLLARD

By: _____/s/ M. Adam Tate_____
M. Adam Tate
Catherine Close
Attorneys for Defendants
KATHERINE MCNAMARA and
JEREMY WHITELEY

---

[2] Ironically, after the many hours meeting and conferring over Slack communications, Defendants appear not to have relied on a single document in filing their motions for summary judgment.

DATED: April 25, 2024          DLA PIPER LLP

By: */s/ Jason Lueddeke*
John Gibson
Jason Lueddeke
Attorneys for Plaintiff
BREAKING CODE SILENCE

**ATTESTATION**

All other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

 */s/ M. Adam Tate*
M. ADAM TATE

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2024, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification to all parties of record or persons requiring notice.

*/s/ Helene Saller*
Helene Saller