JOHN SAMUEL GIBSON (SBN 140647)
john.gibson@us.dlapiper.com
JASON TAYLOR LUEDDEKE (SBN 279242)
jason.lueddeke@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Tel:   310.595.3000
Fax:  310.595.3300

Attorneys for Plaintiff
BREAKING CODE SILENCE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE, a California 501(c)(3) non-profit,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE MCNAMARA, an individual, JEREMY WHITELEY, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:22-CV-002052-SB-MAA<br><br>Hon. Maria A. Audero<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO FRCP 41(a)(2)**<br><br>Complaint Filed: March 28, 2022<br>Trial Date: Not Set |

DLA Piper LLP (US)
WWW.DLAPIPER.COM

PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO FRCP 41(a)(2)
CASE NO. 2:22-CV-002052-SB-MAA

Plaintiff Breaking Code Silence ("BCS") agrees with Defendants Katherine McNamara and Jeremy Whiteley ("Defendants") that the Court should grant BCS' request to dismiss the complaint with prejudice, and that the Court need not make any factual determinations in doing so. Indeed, Defendants state they "are not aware of any controlling case where a court has denied a request for dismissal with prejudice." Dkt. 202 at 5. All parties agree that this is where the matter should end.

However, should the Court be inclined to make factual determinations upon dismissing the complaint, BCS feels it necessary to clarify the many misrepresentations, false statements, and inaccuracies in Defendants' highly misleading response.

### A.     Procedural History

BCS will not belabor here the procedural history of this matter, as it is well documented in the many briefs, filings and orders already on record. However, BCS requests that the Court not simply take Defendants' statements regarding the procedural history at face value, but instead rely on the record, which demonstrates that, though the parties have disagreed strongly on a number of issues, BCS – the only plaintiff in this case – has acted in good faith within the constraints of its financial resources and legal authority.

### B.     BCS' Financial Condition

With regard to Defendants allegations that BCS' declaration of financial condition is "demonstrably false", BCS feels it necessary to correct the record for the Court and counsel's benefit.

#### 1.     Form 990s and Annual Registration Renewal Fee Reports

Defendants first cite to recent filings by BCS with the California Attorney General as evidence that Ms. Magill's declaration of BSC's financial condition was inaccurate. Dkt. 202 at 9-10. Using Defendants' own words, this is demonstrably false. Ms. Magill's declaration was intended to illustrate BCS's *current* financial

1

PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO FRCP 41(a)(2)
CASE NO. 2:22-CV-002052-SB-MAA

condition. The cited Annual Registration Renewal Fee Reports disclose historical information that does *not* reflect BCS' current financial condition.

The recent filings with the California Attorney General were made in connection with BCS updating its registration as a charitable organization. The documents filed in connection with the registration include BCS' most recent financial statements. Because BCS has a year-end of June 30, the most recent financial statement included in its filing was from June 30, 2023. That statement does not reflect BCS' *current* financial condition.

Moreover, Defendants state, "According to BCS's Form 990 for the fiscal year ending June 30, 2023, BCS had $452,182.00 ***in cash*** as of June 30, 2023 (the end of fiscal year 2022)." Dkt. 202 at 10. As Defendants well know, most of that sum, $450,076.32 to be exact, was earmarked for a multi-year research project, originally at the University of North Carolina Wilmington ("UNCW") and later transferred to Barry University under the direction of Dr. Athena Kolbe.[1] [Magill Decl. ¶ 2.] Thus, while BCS had $452,182.00 at the end of its last fiscal year, $450,076.32 was money received as part of a grant, and has since been transferred to a third-party for research purposes. BCS has none of it. So that the Court has complete transparency on this issue, BCS has provided copies of the following documents which show the provenance of the $452,182.00 at issue:

- Copy of the check from UNCW to BCS for $450,076.32. [Magill Decl. ¶ 3, Ex. 1.]
- Alpine Bank statement from November 2022, showing BCS' deposit of

---

[1] Defendants are also well aware that BCS received a $500,000 research grant from the Conrad Hilton foundation. Indeed, this fact is thoroughly discussed in Defendants' website, www.breakingcodesilencelawsuit.com, which Defendants have used to weaponize the current lawsuit. [Kiker Decl. ¶ 2-4, Ex. 1 (home page of Defendants' website), Ex. 2 (website page on "The Breaking Code Silence Research Grant"). Even the return of the funds from UNCW and the planned transfer to Barry University are documented in Defendants' website. [*Id.*]

- $450,076.32, representing UNCW's return of grant funds associated with research performed by Dr. Athena Kolbe, who left the university after harassment from Defendants and their associates led UNCW to deny her tenure and tell Dr. Kolbe that she should not be publicly volunteering with BCS. [Magill Decl. ¶¶ 2,4, Ex. 2.]

- Alpine Bank statement from July 2023, showing BCS' wire transfer in the amount of $450,076.32, representing the transfer of funds received from UNCW to Barry University to be used for the same research project by Dr. Athena Kolbe, who had joined the university, leaving BCS with a balance of $2,398.91. [Magill Decl. ¶ 5, Ex. 3.]

Of course, BCS could have provided the Court with this complicated history associated with restricted funds that were never available to the organization for any purpose other than a research grant, but it would not have changed BCS' *current* financial condition, which is reflected accurately in Ms. Magill's declaration. Defendants' attempts to obfuscate the record and cast aspersions against BCS in spite of their own knowledge of the history of these funds is disappointing.

### 2. Bank Statements

#### a. Charitable Donation Accounts

Defendants then allege, without any evidence, that BCS might have money "hidden" in other locations, including "GiveButter, Stripe and PayPal accounts". Dkt. 202 at 11-12. Contrary to Defendants' implication, these are not "deposit accounts" and are not locations that BCS would retain funds. Indeed, as can be seen from its Alpine Bank statements, BCS routinely transfers funds from charitable donation accounts to its interest-bearing bank accounts. [Magill Decl. ¶¶ 6-10, Ex. 4 (GiveButter Stripe Express activity report), Ex. 5 (Alpine Bank statement dated February 28, 2023, showing deposit from Amazon Smiles), Ex. 6 (Alpine Bank statement dated March 31, 2023, showing deposits from GiveButter and PayPal),

Ex. 7 (Alpine Bank statement dated April 28, 2023, showing deposit from CyberGrants).][2]

BCS has no deposit accounts other than its Alpine Bank account, which is what Ms. Magill relied upon and provided to the Court to show BCS' *current* financial condition. [Magill Decl. ¶ 6.]

With regard to the other accounts to which Defendants allude, Facebook and Stripe, BCS has not had access to the either due to the actions of Mr. Whiteley (Facebook) and Ms. Appelgate, a colleague and friend of Ms. McNamara (Stripe). [Magill Decl. ¶ 6, Ex. 8 (email showing that two-factor authentication goes to a phone number associated with Ms. Appelgate, who is no longer associated with BCS, is required for the former BCS Stripe account), Ex. 9 (screen shot showing that the two-factor access to the former BCS Stripe account is still in place today, preventing BCS from accessing the account), Ex. 10 (email showing that BCS does not have access to Facebook donations due to lack of cooperation by Mr. Whiteley, who at present is the only person who can rectify the account access, despite the Defendants' claims).]

### b.   US Bank Account

BCS acknowledges that it produced US Bank statements in the state case for the months of November 2021 through January 2022. The latter is the last bank statement in BCS' possession.

As Defendants are well aware but fail to inform the Court, that account was eventually closed, and the funds returned to BCS. As shown on the last statement, the closing balance on January 31, 2022, was $622.19. [Dkt. 152-121 at p. 676]. BCS deposited a US Bank cashier's check for $622.19 into its Alpine Bank account

---

[2] For instance, donors would make contributions to BCS via GiveButter, and the funds would then be transferred from GiveButter, using its own private Stripe Express account, to BCS' Alpine Bank account. [Magill Decl. ¶¶ 7-9, Ex. 4 (Stripe Express activity report from GiveButter showing transfers), Ex. 9 (Alpine Bank statement showing deposit attributed to GiveButter).

4

PLAINTIFF'S REPLY IN SUPPORT OF REQUEST FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO FRCP 41(a)(2)
CASE NO. 2:22-CV-002052-SB-MAA

on August 16, 2023, representing the account closure. [Magill Decl. ¶ 10, Ex. 11 (copy of cashier's check from US Bank dated August 15, 2023, in the amount of $622.19), Ex. 12 (Alpine Bank statement dated August 28, 2023, showing deposit of $622.19).]

Clearly, BCS had not accessed or used the US Bank account since the account was closed in February 2022. The final check with the closing account balance was not deposited into BCS' new account at Alpine Bank until a year and a half later because the check was originally sent to a UPS mailbox that Ms. McNamara refused to relinquish to the organization after she resigned. The check was not returned to sender or ever cashed, and BCS had no way of accessing the mailbox, so the process of obtaining those funds was both lengthy and complicated.

### c.     Bank of America Account

BCS does not have and has never had a Bank of America bank account. [Magill Decl. ¶ 6.][3] Defendants acknowledge that Dr. Hughes testified in her deposition that the document was a "fake email" created to test whether Defendants had access BCS's email environment. Dkt. 202 at 12 n.3. Defendants have no evidence to the contrary; instead, they say, as is their common refrain, that they simply do not believe Dr. Hughes. It is surprising and somewhat shocking that Defendants would offer this document as "evidence" of anything.

### C.     Conclusion

Defendants' response adds nothing of substance to this case but stands as a clear illustration of why BCS would like to voluntarily dismiss its complaint. It simply lacks the resources to continually respond to baseless and ill-informed

---

[3] On April 25, 2024, BCS promptly requested written confirmation of the same. Bank of America informed BCS that it would send a confirmatory letter, but it has not yet arrived as of the date of this filing.

allegations that are the hallmarks of Defendants' litigation strategy.[4] Therefore, BCS reiterates its request that the Court grant its request to voluntarily dismiss the case with prejudice.

Dated:  May 1, 2024    Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Jason Lueddeke*
    John Samuel Gibson
    Jason Taylor Lueddeke

    Attorneys for Plaintiff
    BREAKING CODE SILIENCE

---

[4] Defendants also contend that if the Court makes "any factual determination regarding BCS's motivation [for dismissing its Complaint], the Court should hold that BCS only dismissed the case to avoid an adverse ruling on the motions for summary judgment." Dkt. 202 at 6. BCS' motivation is irrelevant. *See Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001) (a defendant does not suffer legal prejudice "merely because…a plaintiff would gain a tactical advantage by [a] dismissal"; granting request for dismissal).

## L.R. 11-6.2 CERTIFICATION

The undersigned, counsel of record for Plaintiff certifies that this brief contains 1,829 words, which complies with the word limit of L.R. 11-6.1.

Date: May 1, 2024                                  */s/ Jason Lueddeke*
                                                   JASON LUEDDEKE