1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11   BREAKING CODE SILENCE,            Case No. 2:22-cv-02052-MAA

12            Plaintiff,               **ORDER GRANTING IN PART AND**
                                       **DENYING IN PART DEFENDANTS**
13                                     **KATHERINE McNAMARA'S AND**
        v.                             **JEREMY WHITELEY'S MOTION**
14                                     **TO COMPEL SLACK**
15   KATHERINE MCNAMARA, et al.,       **COMMUNICATIONS AND FOR**
                                       **SANCTIONS (ECF NO. 94)**
16            Defendants.

17

18

19   **I.      INTRODUCTION**

20            Filed on July 12, 2023 and presently before the Court—in this now-dismissed

21   matter[1]—is Defendants Katherine McNamara's and Jeremy Whiteley's Motion to

22   Compel Slack Communications and for Sanctions ("Motion").  (Mot., ECF No. 94.)

23   The Motion was filed jointly by Defendants Katherine McNamara ("McNamara")

24   and Jeremy Whiteley ("Whiteley") (together "Defendants") on the one hand, and

25

26   _____
     [1] On April 8, 2024, elven months after the filing of the instant motion, Plaintiff
27   BCS filed a request for voluntary dismissal of the case with prejudice pursuant to
     Federal Rule of Civil Procedure ("Rule") 41(a)(2).  (ECF No. 198.)  The Court
28   granted BCS's request on May 8, 2024.  (ECF No. 210.)

Plaintiff Breaking Code Silence ("BCS") on the other, in the form of a Joint

Stipulation as required by Central District of California Local Civil Rule ("Local

Rule") 37-2. (*Id.* at 2–3.[2])  As more fully explained below, because BCS produced

Slack communications to the satisfaction of Defendants before the case was

voluntarily dismissed by BCS, the only question pending before the Court is that of

monetary sanctions.  (ECF No. 138.)

In support of the Motion, Defendants filed the Declaration of M. Adam Tate

("Tate Declaration") (Tate Decl., ECF No. 94-1) with Defendant Exhibits 1 through

24 (Def. Exs., ECF Nos. 94–2–94-25), the Declaration of Catherine A. Close (ECF

No. 94-26) with Defendant Exhibits 25 through 29 (Def. Exs., ECF Nos. 94-27–94-

31), and the Declaration of Katherine McNamara (ECF No. 94-32).

BCS opposes the Motion.  (*See generally* Mot.)  In support of its opposition,

BCS filed the Declaration of Michael P. Brown (ECF No. 94-34) and the

Declaration of Dennis Kiker ("Kiker Declaration") (Kiker Decl., ECF No. 94-35).

Having read and considered the papers by the parties and other records in this

case, the undersigned finds the Motion suitable for disposition without a hearing.

*See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the reasons set forth below, the

Court **GRANTS in part** and **DENIES in part** the Motion.

## II.    FACTUAL BACKGROUND

### A.    BCS's Allegations

BCS brought this action under the Computer Fraud and Abuse Act (18

U.S.C. § 1030) ("CFAA"), and the California Computer Data Access and Fraud Act

(Cal. Penal Code § 502) ("CDAFA") ("Complaint").  (Compl., ECF No. 2.)  Based

on the Joint Stipulation to Strike Allegations and Limit Claims, the parties agreed to

narrow the claims asserted in the Complaint to the allegation that Defendants

---

[2] Pinpoint cites citations of page numbers in the Order refer to the page numbers
appearing in the ECF-generated headers of cited documents.

accessed a BCS computer or account without authorization, or in excess of authorized access, and caused BCS's website (breakingcodesilence.org and/or breakingcodesilence.com) to be de-indexed.  (ECF Nos. 146–47.)

According to the Complaint,[3] on or about March 10, 2022, Defendants accessed BCS's account with Google without permission or authorization from BCS and caused the website to be deindexed on Google.  (Compl. 10.)  The effect of the deindexing was that no one could find BCS's website on Google.  (*Id*. at 11.) The timing of the deindexing was problematic for BCS because, earlier that day, BCS had been featured on a television show and expected a rise in website traffic and, in turn, donations.  (*Id*.)  In addition, a made-for-TV film about the stories of two troubled-teen industry survivors that highlighted BCS's work was being promoted around this same time and was scheduled to debut on March 12, 2022, which also was expected to result in a rise in website traffic and donations.  (*Id*.) Instead, from the date of the deindexing, Google Analytics reported a significant and dramatic drop in traffic to the BCS website.  (*Id*.)

### B.    The Discovery Dispute

On June 14, 2022, McNamara propounded Requests for Production of Documents (Set 1) on BCS.  (Mot. 10; Tate Decl. ¶ 2; Def. Ex. 1, at 8.)  Request No. 15 asked BCS to produce: "all Slack chat messages and logs for BCS from March 14, 2021 to the present, including audit logs reflecting any alterations and deletions."  (*Id*.)  According to Defendants, the relevance of the Slack communications to this litigation is that BCS's leadership discussed BCS's investigation into the deindexing through Slack chat messages and those

---

[3] In summarizing the alleged claims, the Court neither opines on the veracity or merit of the allegations and claims, nor makes any findings of fact.  Indeed, any such opinions or findings would be unnecessary as the case was dismissed on May 8, 2024, before the Court had an opportunity to rule on the Motion.

communications could reveal what actually caused the deindexing. (Mot. 5.) In addition, Defendants contend that those Slack communications could reveal "the true reasons for the instant lawsuit," which Defendants believed to be retaliation against them by BCS's leadership for complaining about harassment, and to obtain a windfall by suing Defendants through pro bono attorneys. (*Id.*) On July 29, 2022, BCS responded to Request No. 15 with objections and a statement that "[s]ubject to and without waiving the foregoing objections, [BCS] will produce responsive, non-privileged documents that relate to the claims or defenses in this action, to the extent any exist." (*Id.* at 10; Tate Decl. ¶ 3; Def. Ex. 2, at 12.)

On September 13, 2022, pursuant to a stipulation by the parties, the Court issued a Stipulated Order re: Amended Joint E-Discovery Plan and Protocol for Discovery of Electronically Stored Information ("ESI") ("EDO"). (EDO, ECF No. 41.) In relevant part, the EDO provides the protocol that the parties were to follow in responding to discovery. Specifically, it provides that the parties would collect documents from each of the data sources identified in Section 4.4 ("EDO Data Sources"), including, relevant here, Slack text messages and audit logs, for each of the custodians listed in Section 4.3 ("EDO Custodians"). (EDO 6.) Section 7.1 of the EDO provides that the parties would "produce, on a rolling basis, ESI from the data sources and Custodians identified in paragraph 4.3 and 4.4." (*Id.* at 9.)

On March 23, 2023, Defendants filed a Motion to Compel Compliance with Court Orders and for Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Authority ("March 2023 Motion"). (March 2023 Mot., ECF No. 44.) Through the March 2023 Motion, Defendants sought sanctions against BCS for, among other things, failing to comply with provisions of the EDO, including failing to collect and produce Slack documents from the EDO Custodians. (*See generally* March 2023 Mot.) Although the title of the March 2023 Motion identified only two sources of sanctions sought by Defendants—28 U.S.C. § 1927 and the Court's inherent authority—Defendants also sought sanctions under Rule 37(b)(2)(C). (*See*

4

*id.* at 2, 9, 24, 27–28, 31.)  On March 28, 2023, the Court found that the March 2023 Motion "appear[ed] to be a disguised discovery motion seeking not only sanctions for discovery misconduct, but also an order compelling discovery" ("March 28, 2023 Order").  (March 28, 2023 Order, at 1, ECF No. 45.)  On this basis, the Court struck the March 2023 Motion and invited Defendants to follow its requirement to engage in a pre-motion informal discovery conference.  (*Id.* at 2.)

On April 18, 2023, the Court conducted the parties' third informal discovery conference in this matter[4] ("IDC 3") to address, in relevant part, Defendants' request for an order compelling BCS to collect and produce documents, including the Slack documents, as detailed in the EDO, by a date certain.  (IDC 3 Order 1, ECF No. 52.)  At the conference, the Court ordered BCS to provide a chart listing the EDO Custodians on one axis, the EDO Data Sources on the other axis, and for each cell a statement whether the particular data sources had been searched for as to each custodian.  (*Id*. at 3.)  The Court also set a further informal discovery conference for April 24, 2023 to monitor BCS's progress in its discovery production.  (*Id.* at 2.)

On April 24, 2023, the Court conducted the parties' fourth informal discovery conference ("IDC 4").  (ECF No. 53.)  BCS's chart showed, among other things, that BCS had collected 1,148 Slack documents from its own data sources (none of which had been produced) but had not collected Slack documents from the private channels of any of the EDO Custodians.  (Mot. 11–12; Tate Decl. ¶ 7; Def. Ex. 3.)  At IDC 4, the Court ordered BCS to provide additional information regarding, among other things, whether the EDO Custodians actually had any of the EDO Data Sources and a proposal for the searches to be conducted by the EDO Custodians of the EDO Data Sources for documents responsive to Defendants'

---

[4] The first two informal discovery conferences in this matter were not related to this Motion.

document requests, which necessarily included, without specific mention, the Slack documents.  (IDC 4 Order, ECF No. 54, at 1–2.)  The Court set a further informal discovery conference for May 1, 2023 to continue monitoring BCS's discovery progress.  (*Id.* at 2.)

On May 1, 2023, the Court conducted the parties' fifth informal discovery conference ("IDC 5").  At IDC 5, the Court learned that, although BCS previously had advised it had reviewed and was ready to produce in excess of 1,100 Slack documents, it had not made that production.  (IDC 5 Tr., 17:25 –18:1, ECF No. 84.)  On this basis, the Court ordered BCS to complete its production of the Slack documents by no later than May 5, 2024 ("IDC 5 Order").  (IDC 5 Order 1, ECF No. 56.)  The Court also ordered that, "[s]hould Defendants, upon review of the production, contend, on the basis of reasonable, non-speculative belief, that [BCS] [was] withholding relevant, non-privileged documents, they [could] file a discovery motion pursuant to [Rule] 37," holding for this purpose that "the parties ha[d] satisfied their pre-motion meet-and-confer obligations . . . ."  (*Id.* at 1–2.)

On June 14, 2023, Defendants filed a Motion to Compel Production of Slack Communications and for Sanctions ("June 2023 Motion," ECF No. 69), which the Court struck for failure to comply with the Local Rule 37-2 requirement that a discovery motion be submitted in the form of a joint stipulation (ECF No. 72).

As part of Defendants process to convert the June 2023 Motion into a joint stipulation, the parties met and conferred via email on June 19, 2023.  (*See generally* Def. Ex. 9.)  Through this email exchange, BCS advised Defendants that it was working with its vendor to produce screenshots of the private channel Slack communications.  (*Id.* at 1.)

On July 12, 2023, Defendants filed the instant Motion.  (Mot.)  Through the Motion, Defendants asks the Court to (1) order—for a second time—that BCS produce the Slack documents, and (2) award evidentiary and monetary sanctions against BCS and its counsel for their withholding of same.  (*Id.* at 6.)   In response,

BCS explains that its original Slack license permitted only the collection of Slack messages from the public channels, which it had produced on May 1 and 4, 2023, and that it subsequently identified a method permitting the collection from private channels and direct messages, which it had collected on June 27–30, 2023, and intended to produce by July 14, 2023, two days after the filing of the Motion. (*Id.* at 6–7; Kiker Decl. ¶¶ 5–6, 9–10, 26.)

Because BCS's intended July 14, 2023 production had the potential to moot the Motion in whole or in part, the Court convened a Status Conference related to the Motion on July 25, 2023. (ECF No. 104.) Although Defendants confirmed that BCS had made a production of the Slack private channel documents, they noted they had not had sufficient opportunity to review the production and could not advise the Court whether the production mooted the Motion. (*Id.* at 1–2.) The Court set a second Status Conference for July 27, 2023. (*Id.*) There, Defendants advised the Court that BCS's production still was not complete and identified a new issue related to the production, for which the Court ordered the parties to meet and confer and set a third Status Conference for August 8, 2023. (ECF No. 106.) There, the parties advised that, although BCS had not yet produced the Slack private channel documents, it was willing to do so. (Suppl. Mot. 6.) On this basis, the Court ordered BCS to complete its Slack private channel document production by August 18, 2023, and set a fourth Status Conference for August 29, 2023 ("August 8, 2023 Order"). (Aug. 8, 2023 Ord., ECF No. 116.) Despite their efforts in advance of the August 29, 2023 Status Conference to resolve the pending disputes regarding BCS's Slack private channel document production, the parties had not resolved all issues and jointly requested additional time to confer, upon which the court set a fifth Status Conference for September 12, 2023. (ECF No. 135.) It was at the September 12, 2023 Status Conference that Defendants finally were able to confirm that BCS's Slack document production was complete, which rendered moot the production component of the Motion ("September 12 Slack

Conference"). (Sept. 12 Slack Conf. at 1, ECF No. 138.) On this basis, the Court
took the monetary sanctions component of the Motion under submission. (*Id.*)

On April 10, 2024, the Court ordered the parties to supplement the Motion in
two respects ("April 10 Order"). (April 10 Order, at 3–4, ECF No. 200.) *First*,
because Defendants' request for attorneys' fees was presented in the Motion as a
lump sum for each attorney, Defendants were ordered to provide an itemization of
the time each attorney spent on each category of task. (*Id.* at 4.) The Court
prohibited Defendants from adding attorneys' fees beyond those originally
requested in the Motion. (*Id.*) *Second,* because Defendants contended—without
legal authority other than a statutory reference to Rules 37(a)(5) and 37(b)(2)(C)—
that they are entitled to recover fees incurred in, among other things, (i) meeting
and conferring before the Motion, and (ii) preparing for and appearing at IDCs
related to the Motion, Defendants were ordered to brief the question whether such
fees are recoverable under these rules. (*Id.*) BCS was ordered to respond on both
issues. (*Id.*)

On April 25, 2024, Defendants filed a Supplemental Joint Stipulation re:
Attorney's Fees on Defendants Katherine McNamara and Jeremy Whiteley's
Motion to Compel Slack Communications and for Sanctions ("Supplemental
Motion"). (Suppl. Mot., ECF No. 204.) In support of the Supplemental Motion,
Defendants filed the Declaration of M. Adam Tate ("Supplemental Tate
Declaration") (Suppl. Tate Decl., ECF No. 204-1) with Exhibits 1 and 2 (ECF Nos.
204-2–204-3). BCS opposes the Supplemental Motion. (*See generally* Suppl.
Mot.) In support of its opposition, BCS filed the Declaration of Dennis Kiker (ECF
No. 204-4) with Exhibits 1 through 11 (ECF Nos. 204-5–204-15). Accordingly, the
monetary sanctions component of the Motion is ripe for adjudication.

///

///

///

8

## III.    DISCUSSION

Through the Motion, Defendants seek $21,412.00[5] in monetary sanctions
against BCS and its counsel pursuant to Rule 37(a)(5)(A)[6] and 37(b)(2)(C) "to
cover the costs of the IDCs that Defendants' counsel was forced to attend on this
issue and the costs associated with the instant motion to compel."  (Mot. 26; Tate
Decl. ¶ 34.)  In the Supplemental Motion, Defendants provide the requested
itemization of fees and legal argument supporting the categories of fees they seek.
(*See generally* Suppl. Mot.)  In addition, respecting the Court's order that they not
include fees beyond those originally requested in the Motion, Defendants request an
opportunity to seek the attorneys' fees and costs associated with meeting and
conferring regarding, and attending, the five Status Conferences that followed the
filing of the Motion.  (Suppl. Mot. 8.)

### A.    Defendants Are Not Entitled to Their Reasonable Expenses in Bringing the Motion Under Rule 37(a)(5)(A).

Pursuant to Rule 37(a)(5)(A), if a discovery motion is granted or if the
requested discovery is provided after the motion is filed, the Court must "after
giving an opportunity to be heard, require the party . . . whose conduct necessitated
the motion, the party or attorney advising that conduct, or both to pay the movant's
reasonable expenses incurred in making the motion, including attorney's
fees."  Fed. R. Civ. P. 37(a)(5)(A).  Rule 37(a)(5)(A) also provides that, before

---

[5] Originally, Defendants sought $18,710.00 in monetary sanctions.  (Mot. 26.)
However, in preparing the Supplemental Motion, Defendants discovered a
calculation error and clarify that the corrected amount of attorneys' fees sought is
$21,412.00.  (*See* Suppl. Tate Decl. ¶¶ 12.a.iii, 12.b.iii, 12.c.iii, 12.d.iii, 12.e.iii.)

[6] Although Defendants do not specify the subsection of Rule 37(a)(5) pursuant to
which they seek monetary sanctions, they cite the substance of Rule 37(a)(5)(A).
(*See generally* Mot. 26; Suppl. Mot.)  This Order proceeds on this basis.

9

granting an award of reasonable expenses, a court must determine whether any of

the three exceptions to the rule apply.  *Id.*  Pursuant to these exceptions, the Court

may not order this payment if:  "(i) the movant filed the motion before attempting

in good faith to obtain the disclosure or discovery without court action; (ii) the

opposing party's nondisclosure, response, or objection was substantially justified;

or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

37(a)(5)(A)(i)–(iii).  The party contesting the discovery sanction bears the burden

of establishing substantial justification or that other circumstances make an award

of expenses unjust.  *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir.

1994).   The Ninth Circuit has made clear that "the opportunity to submit briefs"

satisfies the "opportunity to be heard" requirement.  *Paladin Assocs. v. Mont.*

*Power Co.*, 328 F.3d 1145, 1164–65 (9th Cir. 2003) (holding that, because the

Rule 37 sanctions issues to be resolved were such that an evidentiary hearing

would not have aided the decision-making process, district court did not abuse its

discretion by ruling on the briefing); *see also Pac. Harbor Cap., Inc. v. Carnival*

*Airlines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) ("an opportunity to be heard

does not require an oral or evidentiary hearing on the issue." (citations omitted));

*Lynch v. Cassavetes*, No. 13-4317 DSF (JC), 2014 U.S. Dist. LEXIS 195015, at

*10 (C.D. Cal. Oct. 1, 2014) (finding that an opportunity to be heard is satisfied by

an opportunity to respond in writing).

     Here, the Court concludes that the circumstances do not warrant an award of

attorneys' fees under Rule 37(a)(5)(A) for the simple reason that Defendants'

request that the Court compel production of the Slack communication documents

was unnecessary.  Indeed, the Court had issued an order compelling BCS to

produce the Slack communication documents more than two months before

Defendants filed their Motion.  At IDC 5 on May 1, 2023, the Court ordered BCS

to produce these documents by no later than May 5, 2023.  (IDC 5 Order 1.)

Defendants acknowledge this critical fact in the Motion:  "Defendants respectfully

request that the Court order [BCS] to produce the Slack communications (*for a second time*) . . . ."  (Mot. 6 (emphasis added).)  When BCS did not comply with the Court's May 1, 2023 order, Defendants' remedy was not to file a motion under Rule 37(a) to *once again* compel BCS's production of the Slack documents, but rather to file a motion for sanctions under Rule 37(b)(2) for BCS's failure to comply with the May 1, 2023 order.  Because Defendants' request to compel discovery under Rule 37(a) is redundant, it could not have been granted.  In the absence of such an order, Defendants are not entitled to their attorneys' fees under Rule 37(a)(5)(A).  For this reason, Defendants' request for the reasonable expenses it incurred in bringing the Motion under Rule 37(a)(5)(A) is **DENIED**.

### B.     Defendants Are Entitled, Under Rule 37(b)(2)(C), to Recover the Reasonable Expenses that BCS's Discovery Failure Caused Them to Incur.

Although Defendants may not be entitled to an award of attorneys' fees under Rule 37(a)(5)(A), the Court concludes that they are entitled to recover, under Rule 37(b)(2)(C), the reasonable expenses they incurred as a result of BCS's failure to comply with the Court's May 1, 2023 and August 8, 2023 orders to produce the Slack communication documents.

#### 1.     Legal Standard

Pursuant to Rule 37(b), a party may seek monetary and nonmonetary sanctions for another party's failure to comply with a discovery order.  Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2)(C) requires that a district court, instead of or in addition to nonmonetary sanctions allowed in Rule 37(b)(2)(A), "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the [discovery] failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Thus, for fees to be awarded pursuant to Rule

11

37(b)(2)(C), there must be a "causal connection" between a litigant's discovery

misconduct and the legal fees incurred by the opposing party.  *Goodyear Tire &*

*Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017).  "That kind of causal

connection . . . is appropriately framed as a but-for test: the complaining party . . .

may recover 'only the portion of his fees that he would not have paid but for' the

misconduct."  *Id*. at 109 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).  As

explained by the Supreme Court in *Haeger*:

> This but-for causation standard generally demands that a
> district court assess and allocate specific litigation
> expenses—yet still allows it to exercise discretion and
> judgment.  The court's fundamental job is to determine
> whether a given legal fee . . . would or would not have
> been incurred in the absence of the sanctioned conduct.
> The award is then the sum total of the fees that, except for
> the misbehavior, would not have accrued."

*Id*. at 109–10.

Trial courts, however, "need not, and indeed should not, become green-

eyeshade accountants."  *Id*. at 110.  "'The essential goal' in shifting fees is 'to do

rough justice, not to achieve auditing perfection.'  Accordingly, a district court

'may take into account [its] overall sense of a suit, and may use estimates in

calculating and allocating an attorney's time.'"  *Id*. (alteration in original) (internal

citations omitted) (quoting *Fox*, 563 U.S. at 838).  The disobedient party shoulders

the burden of avoiding such sanctions by establishing substantial justification for

the discovery misconduct or that special circumstances make the award of expenses

unjust.  *See* 1970 Advisory Comm. Notes to Rule 37(b).

2.    <u>Analysis</u>

Defendants contend that BCS's failure to produce the Slack documents until

September 8, 2023 constitutes a violation of at least two Court orders:  (1) the

EDO, which requires BCS to collect and produce documents from the EDO Data

Sources, including Slack communications, for each of the EDO Custodians, and

(2) the Court's August 8, 2023 order which required BCS to complete its Slack production by August 18, 2023.  (Suppl. Mot. 12; EDO ¶¶ 2.13, 3.1, 4.4, 8.1; Aug. 8, 2023 Order 1.)  In addition, the Court *sua sponte* notes that BCS's September 8, 2023 production also violated the Court's May 1, 2023 order requiring BCS's Slack document production to be completed by May 5, 2023.  (IDC 5 Order 1.)

a.    *Sanctions Are Not Warranted for Violation of the EDO.*

As a starting point, the Court is not persuaded that BCS violated the EDO, as Defendants contend.  (Suppl. Mot. 12.)  Defendants concede that BCS produced the Slack documents and, in fact, made that representation to the Court on September 12, 2023.  (*Id.*; Sept. 12 Slack Conf. 1.)  And they make no argument that BCS's ultimate Slack document production violated any particular term of the EDO.  (*See generally* Suppl. Mot.)[7]  While Defendants argue that BCS's production was completed only after many months of meeting and conferring over BCS's numerous and evolving explanations as to why a complete production was not

---

[7] Based on the Court's review of Defendants' exhibits, it appears that some portion of the Slack documents may have been produced in the form of screen shots (*see* Def. Exs. 8–10) rather than in their original form with metadata, obtained directly from the EDO Custodians, as required by the EDO (EDO ¶¶ 2.13, 3.1, 4.4, 8.1). This could constitute a violation of the EDO.  Apparently anticipating this argument, BCS contends that two provisions of the EDO expressly allow it to collect and produce Slack communications in whatever way it deems most efficient, presumably as screen shots:  (1) Section 4.5, which provides that the collection of ESI is subject to "industry standards and approved methods"; and (2) Section 6.1, which provides that production under the EDO is subject to the proportionality considerations of the Federal Rules of Civil Procedure.  (Mot. 27.)  However, this argument falls short because BCS fails to identify the industry standards and approved methods it contends apply to the collection of Slack communications as screen shots rather than original files, and provides no evidence suggesting that the collection and production of the Slack communications at issue here would be disproportional to the needs of the case, as contemplated by Rule 26(b)(1).  Either way, because neither the Motion nor the Supplemental Motion provide clarity as to the format of BCS's Slack document production, the Court cannot conclusively find that BCS's production violated the relevant provisions of the EDO.

possible (Suppl. Mot. 11), the interim deficient productions were cured, for
purposes of the EDO, by BCS's September 8, 2023 complete production.  Thus, the
only concern that remains after the filing of the Motion and the subsequent Status
Conferences is that BCS's Slack document production was untimely.  (Suppl. Mot.
12.)  But Defendants point to no provision in the EDO that in any manner addresses
the *timing* of a production, and the Court, through its own search, can find none.
(*See generally* EDO.)  As such, the Court cannot conclude that BCS violated the
EDO in connection with its Slack document production, significantly delayed as it
was.

> b.    *Sanctions Are Warranted for Violation of the Court's May*
> *1, 2023 and August 8, 2023 Orders.*

It cannot be disputed that BCS's failure to complete its Slack document
production until September 8, 2023 constitutes a violation of the Court's May 1,
2023 order (requiring production by May 5, 2023) and the Court's August 8, 2023
order (requiring production by August 18, 2023).  Notwithstanding this unassailable
fact, BCS contends that sanctions are not warranted because the Motion was
unnecessary in that Defendants knew, at least by June 19, 2023, that BCS intended
to take and produce screen shots of the Slack private channel communications at
issue.  (Mot. 27; Def. Ex. 9.)  But even this *after-the-fact June 19, 2023* statement
by BCS—that it intended to produce some unidentified Slack private channel
communications on some unidentified date—does not cure the violation of the
Court's *prior May 1, 2023* order to produce the Slack documents by *May 5, 2023*.
Moreover, BCS did not complete its Slack document production until September 8,
2023, also well after the August 18, 2023 deadline set by the Court's August 8,
2023 order.

BCS's single authority in its defense—*Bryant v. Mattel, Inc.*, No. 04-09049
SGL(RNBx), 2007 U.S. Dist. LEXIS 102034 (C.D. Cal. Jun. 20, 2007)—is
inapposite here.  As a starting point, the citation does not point to a discovery order;

1    instead, the order concerns an act of the court vacating a hearing date.  *See Bryant*,

2    2007 U.S. Dist. LEXIS 102034, at *1.  The Court is unable to locate the order to

3    which BCS refers and believes this is so because it appears to be an order issued by

4    a Discovery Master that is not contained in the Court's docket.

5         Even if the *Bryant* order stands as the example for which it is cited—one

6    court declining to award sanctions where the offending party offered to produce the

7    outstanding discovery one day before the opposition to a motion to compel was due

8    (Mot. 28)—it nevertheless is well-established in this Circuit that "[b]elated

9    compliance with discovery orders does not preclude the imposition of sanctions."

10   *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir.

11   1986).  As the Ninth Circuit has explained, the "[l]ast-minute tender of documents

12   does not cure the prejudice to opponents nor does it restore to other litigants on a

13   crowded docket the opportunity to use the courts."  *Id.*; *see also Fair Housing of

14   Marin v. Combs*, 285 F.3d 899, 905–06 (9th Cir. 2002) (rejecting defendant's

15   argument that sanctions should not have been entered against him because he

16   eventually produced the documents at issue); *Anheuser-Busch, Inc. v. Nat.

17   Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995) ("This court has squarely

18   rejected the notion that a failure to comply with discovery rules is purged by

19   belated compliance."); *G-K Properties v. Redevelopment Agency of San Jose*, 577

20   F.2d 645, 647–48 (9th Cir. 1978) (discussing the harm to both the opposing party

21   and litigants in other cases caused by disregard of discovery obligations and

22   orders).

23        Moreover, BCS offers no evidence that would preclude the Court from

24   awarding sanctions pursuant to either of the two exceptions to Rule 37(b)(2)(C).

25   Fed. R. Civ. P. 37(b)(2)(C).  The first exception—that the failure to comply with a

26   court order is substantially justified—does not apply.  Both the Ninth Circuit and

27   the Supreme Court have offered guidance regarding the standard for establishing

28   "substantial justification" sufficient to avoid a discovery sanction.  In *Hyde*, the

1    Ninth Circuit stated that "a good faith dispute concerning a discovery question

2    might, in the proper case, constitute 'substantial justification . . . .'" *Hyde*, 24 F.3d

3    at 1171 (citation omitted).  The Supreme Court has explained that the standard is

4    "satisfied if there is a 'genuine dispute'. . . or 'if reasonable people could differ as

5    to the appropriateness of the contested action.'"  *Pierce v. Underwood*, 487 U.S.

6    552, 565 (1998) (citations and alterations omitted).

7         Here, it was not until September 8, 2023—almost fifteen months after the

8    request was served, and almost two months after the Motion was filed—that BCS

9    completed its production of the Slack documents.  But BCS offers no persuasive

10    evidence of substantial justification for this untimeliness.  At best, BCS argues that

11    it "ha[d] been making efforts since November 2022 to produce Slack

12    communications" (Mot. 27) and that it "ha[d] from the beginning acted in good

13    faith with regard to its Slack productions" (Suppl. Mot. 13).  BCS explains that it

14    relied on the advice of its forensic analyst that BCS had produced all Slack data that

15    was available for collection, and that it was only when the Court "forced

16    *Defendants* to engage in a meaningful meet-and-confer process" that BCS was able

17    to make the production.  (*Id.* (emphasis added).)

18         Setting aside that the recollection of the Court differs pointedly from BCS's

19    contention that *Defendants* are to blame for BCS's discovery failures, the evidence

20    plainly shows that it was *BCS*, not Defendants, who failed to engage in meaningful

21    meet-and-confer efforts.  Indeed, it was Defendants who undertook the research and

22    demonstrated to BCS and the Court that, despite BCS's assertions to the contrary,

23    (1) BCS's forensic analyst not only could, but indeed advertised its ability to,

24    collect data "from private channels and [direct messages] with the license that BCS

25    ha[d]"; and (2) the website for Slack's help center stated that "regardless of the

26    level [of license], workplace owners may contact Slack and apply to export data

27    from private channels and direct messages."  (Def. Ex. 10, at 2, 6; Def. Ex. 12, at

28    2.)  And when Defendants asked the obvious follow-up questions—whether BCS

1   could provide evidence in support of its contention that its forensic analyst could

2   not ingest from private channels and whether BCS had contacted Slack to apply to

3   export data from private channels and direct messages—BCS dodged the questions

4   and responded only that it was its "understanding that [its forensic analyst's]

5   capabilities are necessarily limited by the Slack license permissions." (Def. Ex. 13,

6   at 2.)

7        BCS's argument that it acted in good faith fares no better. Indeed, the

8   presence or absence of a disobeying party's good or bad faith "is relevant to the

9   choice of sanctions rather than to the question whether a sanction should [be]

10  imposed." *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978); *see also*

11  *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v.*

12  *Rogers*, 357 U.S. 197, 208 (1958) (finding that, because Rule 37 requires only a

13  failure to obey an order and not a refusal, the question of willfulness is "relevant

14  only to the path which the district Court might follow in dealing with" the failure to

15  comply). "[E]ven negligent failures to allow reasonable discovery may be

16  punished." *Marquis*, 577 F.2d at 642.

17        The second exception—that other circumstances make an award of expenses

18  unjust—also does not apply. This is because BCS does not make this argument and

19  the Court finds no evidence of such circumstances. (*See generally* Mot.; *see*

20  *generally* Suppl. Mot.) Even liberally construing BCS's contention that "[s]ince

21  the documents were produced well before the close of discovery, Plaintiff's efforts

22  did not prejudice Defendants" (Mot. 27) as an argument under the second

23  exception, it is unpersuasive. As a starting point, BCS cites no authority to support

24  its contention that lack of prejudice somehow renders an award of expenses under

25  Rule 37(b)(2)(C) unjust. (*See generally* Mot.; *see generally* Suppl. Mot.)

26  Moreover, while delay alone does not constitute prejudice, "[f]ailure to produce

27  documents as ordered . . . *is* considered . . . prejudice." *Adriana Int'l Corp. v.*

28  *Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (internal citation omitted) (emphasis

added).  Finally, BCS appears to have forgotten that the Court extended the original

fact discovery cut-off not once, but twice—from June 1, 2023 (ECF No. 31) to

August 30, 2023 (ECF No. 58 at 2–3), and again to September 30, 2023 for

Defendants only (ECF No. 135 at 1)—on both occasions to allow BCS additional

time to complete its Slack document production.  Completing the Slack document

production on September 8, 2023—a full ninety-nine days after the original

discovery cut-off and only twenty-two days before the second-extended discovery

cut-off—hardly constitutes completion "well before the close of discovery."

Accordingly, the Court finds that Defendants are entitled, under Rule

37(b)(2)(C), to the reasonable expenses that BCS's discovery failure caused them to

incur.

### C.    Defendants Are Entitled to an Award of $15,342.

#### 1.    Legal Standard

When an award of attorneys' fees is authorized, the court must calculate the

proper amount of the award to ensure that it is reasonable.  *Hensley v. Eckerhart*,

461 U.S. 424, 433–34 (1983).  In the Ninth Circuit, the court must perform a two-

step process to determine the reasonableness of any fee award.  *Fischer v. SJB-

P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  First, the Court determines the

"lodestar figure."  *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing

party reasonably expended on the litigation by a reasonable hourly rate."  *Camacho

v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).

Second, where appropriate, the Court may adjust the lodestar amount based on

several factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*,

526 F.2d 67, 70 (9th Cir. 1975), known as the *Kerr* factors:

> (1) the time and labor required, (2) the novelty and
> difficulty of the questions involved, (3) the skill requisite

18

1
2
3
4
5
6
7

> to perform the legal service properly, (4) the preclusion
> of other employment by the attorney due to acceptance of
> the case, (5) the customary fee, (6) whether the fee is
> fixed or contingent, (7) time limitations imposed by the
> client or the circumstances, (8) the amount involved and
> the results obtained, (9) the experience, reputation, and
> ability of the attorneys, (10) the 'undesirability' of the
> case, (11) the nature and length of the professional
> relationship with the client, and (12) awards in similar
> cases.

8    *Kerr,* 526 F.2d at 70.

9        A strong presumption exists "that the lodestar figure represents a reasonable

10   fee." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).  The

11   Ninth Circuit has made clear that "[o]nly in rare instances should the lodestar figure

12   be adjusted on the basis of other considerations." *Id.* (citations omitted).  "Under

13   the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of

14   law." *Id.* (citation omitted).  The *Kerr* factors that are subsumed within the initial

15   lodestar calculation are the novelty and complexity of the issues, the special skill

16   and experience of counsel, the quality of representation, the results obtained in the

17   action, and the contingent nature of the fee agreement.  *Id.* at 364 n.9 (citations

18   omitted).  "Adjusting the lodestar on the basis of subsumed reasonableness factors

19   after the lodestar has been calculated, instead of adjusting the reasonable hours or

20   reasonable hourly rate at the first step . . . is a disfavored procedure." *Id.*  (citation

21   omitted).

22       The party seeking the award of fees must submit evidence to support the

23   request. *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

24   Specifically, the party must support the request with evidence regarding the

25   "number of hours worked and the rates claimed." *Id.*  The party opposing the fee

26   request bears the "burden of rebuttal that requires submission of evidence to the

27   district court challenging the accuracy and reasonableness of the hours charged or

28   the facts asserted by the prevailing party in submitted affidavits." *Common Cause*

*v. Jones*, 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002) (quoting *Gates*, 987 F.2d at 1397).

> 2. <u>Analysis</u>
>
> a. *The Attorney/Other Hourly Rates Claimed by Defendants Are Reasonable and Commensurate with the Prevailing Rate*.

Defendants claim the following hourly rates for their counsel:  $470.00 for Mr. M. Adam Tate;[8] $450.00 for Ms. Catherine Close; [9] $300.00 for Mr. Adam J. Schwartz; and $150.00 for Ms. Rebekah Chamberlain.  (Tate Decl. ¶¶ 12.a.iii; 12.b.iii; 12.c.iii; 12.d.iii.)  Defendants also claim an hourly rate of $200.00 for Ms. Helene Saller, a paralegal.  (*Id.* ¶ 12.e.iii.)  Although BCS does not dispute these rates (*see generally* Mot.; Suppl. Mot.), the Court nevertheless conducts an independent review to ensure that the lodestar requested is appropriate for this Motion.  For the reasons stated below, the Court approves the requested hourly rates.

In determining whether the hourly rate billed is reasonable for purposes of an attorneys' fees award, the Court must ensure that the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *accord Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (noting that the party seeking fees must prove that the rate

---

[8] In the Motion, Defendants claim two rates for Mr. Tate ($425.00 for Mr. Tate until February 2023 when his rate increased to $470.00 upon becoming a partner), but the billings detailed in the Supplemental Motion are at an hourly rate of $470.00.  (Tate Decl. ¶ 34.a.ii ; Suppl. Tate Decl. ¶ 12.a.iii.)

[9] In the Motion, Defendants claim two rates for Ms. Close ($430.00 for Ms. Catherine Close in 2022 and $450.00 commencing in January 2023), but the billings detailed in the Supplemental Motion are at an hourly rate of $450.00.  (Tate Decl. ¶ 34.b.ii; Suppl. Tate Decl. ¶ 12.b.iii.)

charged is in line with the "prevailing market rate of the relevant community."
(citation omitted)).  The burden is on the fee applicant "to produce satisfactory
evidence—in addition to the attorney's own affidavits—that the requested rates are
in line with those prevailing in the community. . . ."  *Camacho*, 523 F.3d at 980
(citation omitted).  For this purpose, "the relevant community is the forum in which
the district court sits."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).
"[R]ates outside the forum may be used if local counsel was unavailable, either
because they are unwilling or unable to perform because they lack the degree of
experience, expertise, or specialization required to handle properly the case."  *Id.*
(citation and quotation marks omitted).  Accordingly, the relevant community here
is the Central District of California.  In addition, the court may rely on its own
experience to determine a reasonable hourly rate.  *See Ingram v. Oroudjian*, 647
F.3d 925, 928 (9th Cir. 2011).  Finally, in exercising its discretion in setting a fee,
the court must assess the "reasonableness of the fee in light of the totality of the
circumstances."  *Jordan v. Multonah Cty.*, 815 F.2d 1258, 1262 n.7 (9th Cir. 1987).

Here, Defendants do not offer a declaration of an attorneys' fees expert.  (*See
generally* Mot; Tate Decl.)  Instead, Mr. Tate attests that the hourly rate of attorneys
and paralegals in Los Angeles and Orange Counties with similar levels of
experience as Mr. Tate, Ms. Close, Mr. Schwartz, Ms. Chamberlin, and Ms. Saller
typically meet or exceed their hourly rates.  (Tate Decl. ¶¶ 34.a.ii, 34.b.ii, 34.c.ii,
34.d.ii, 34.e.ii.)  In addition, Mr. Tate provides the following information about his
experience:

> I started as an associate for JBB in September 2016 and
> am now a partner. I received my J.D., with honors, from
> the J. Rueben Clark Law School (BYU) in 2011. I have
> practiced commercial litigation in Orange County since
> passing the bar in 2011. I am an experienced trial and
> appellate attorney.

(Tate Decl. ¶ 34.a.i.; Suppl. Tate Decl. ¶ 12.a.i.)

Mr. Tate provides the following information about Ms. Close's experience:

> Ms. Close has been an associate with JBB since May 2002. She received her J.D., with honors, from the Whittier College School of Law in 1998. She has practiced commercial litigation in Orange County since passing the bar in 1998. She is an experienced trial lawyer, participating in numerous trials of complex business matters in both state and federal courts. She has also drafted many appellate briefs.

(Tate Decl. ¶ 34.b.i.; Suppl. Tate Decl. ¶ 12.b.i.)

Mr. Tate provides the following information about Mr. Schwartz's experience:

> Adam J Schwartz has been a solo practitioner since 2012. Prior to that time, he was a litigation associate at Paul Hastings for nearly five years. Mr. Schwartz received his J.D., with honors, from The George Washington University Law School in Washington, D.C. in 2007, where he was a member of the International Law Review and was a Thurgood Marshall Scholar his 1L year. Mr. Schwartz has practiced white collar criminal and commercial litigation in Washington, D.C. and Los Angeles County since passing the bar in 2007. He is admitted to practice law in both California and the District of Columbia. He is an experienced litigator, with experience in business disputes, as well as white collar criminal, employment, defamation, copyright, and trademark matters.

(Tate Decl. ¶ 34.c.i.; Suppl. Tate Decl., ¶ 12.c.i.)

Mr. Tate provides the following information about Ms. Chamberlin's experience:

> Rebekah Chamberlin has worked for JBB as a law clerk since August 2021. She passed the California Bar this last month and was recently promoted to be an associate attorney. Ms. Chamberlin received her J.D. from the J. Rueben Clark Law School (BYU) in 2021.

22

(Tate Decl. ¶ 34.d.i.; Suppl. Tate Decl., ¶ 12.d.i.)

Mr. Tate provides the following information about Ms. Saller's experience:

> Helene Saller has worked for JBB as a litigation paralegal since 2019, specializing in legal research and filings, trial preparation, discovery and document control. She studied political science at Arizona State University and received her paralegal certificate from Pasadena City College in 1992. She has worked in the legal industry since 1992 for both large and small firms, with extensive experience in the areas of civil practice, employment law, medical malpractice, and complex litigation.

(Tate Decl. ¶ 34.e.i.; Suppl. Tate Decl., ¶ 12.e.i.)

The Court notes that, according to the Wolters Kluwer 2023 Real Rate Report (Mid-Year Update) ("Real Rate Report"),[10] $800.00 is the median hourly rate for commercial litigation partners in Los Angeles and $645.00 is the median hourly rate for commercial litigation associates in Los Angeles. (Real Rate Report 88.) Here, the hourly rates for Mr. Tate, Ms. Close, and Mr. Schwartz fall below the respective median rate for their positions. (*Compare* Tate Decl. ¶¶ 34.a.ii, 34.b.ii, 34.c.ii, 34.d.ii *with* Real Rate Report 88.) In addition, the Real Rate Report provides that $270.00 is the median hourly rate for commercial litigation paralegals

---

[10] The Court gives due weight to information contained in the Real Rate Report, a publication that provides data-driven benchmarking for attorney hourly rates. *See, e.g., Smith v. Cty. of Riverside*, No. EDCV 16-227 JGB (KKx), 2019 U.S. Dist. LEXIS 170421, at *5 (C.D. Cal. June 17, 2019) ("[A] number of district courts in California have relied on the Real Rate Report."). The information provided by the Real Rate Report is persuasive because, rather than using self-reported rates aggregated across all practice areas throughout the country, as appear in other surveys, it reflects actual legal billing through paid and processed invoices disaggregated for location, experience, firm size, areas of expertise, industry, and practice areas. (*See* Real Rate Report 5.)

in the United States[11].  (Real Rate Report 44.)  Ms. Saller's rate falls below this median rate.  (Tate Decl. ¶ 34.e.ii.)  The Real Rate Report does not include rates for law clerks, such as Ms. Chamberlin prior to her promotion to associate attorney. (*See generally* Real Rate Report; Tate Decl. ¶ 34.d.)  However, the Court finds Ms. Chamberlin's hourly rate of $150.00 to be reasonable.  *See, e.g., Kries v. City of San Diego*, Nos. 17-cv-1464-GPC-BGS, 17-cv-2014-GPC-BGS, 18-cv-0229-GPC-BGS, 2021 U.S. Dist. LEXIS 6826, at *26 (S.D. Cal. Jan. 13, 2021) (finding $150.00 hourly rate for law clerk reasonable); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 980–81 (S.D. Cal. 2014) (finding $200.00 hourly rate for law clerks reasonable).  With this, the Court is persuaded that the hourly rates of $470.00 for Mr. Tate, $450.00 for Ms. Close, $300.00 for Mr. Schwartz, $150.00 for Ms. Chamberlin, and $200.00 for Ms. Saller are appropriate here.

>    b.    *The Hours Billed Are Excessive and/or Unrecoverable*
>    *Under Rule 37.*

Defendants' request for $21,412 in attorneys' fees is based upon the following lodestar calculation of stated hours multiplied by the hourly rates detailed (and approved) above.

| Work Performed | Biller | Hours Billed | Sub-Total |
|---|---|---|---|
| **PREPARATION OF THE MOTION** | | | |
| Time spent drafting the Original Slack Motion and the supporting documents including the motion to seal. | Tate | 13.5 | $6,345 |
| Time spent drafting the slack Motion and the supporting documents including the motion to seal. | Close | 4.7 | $2,115 |
| Time spent drafting the Slack Motion and the supporting documents.  Primarily legal research and conferences discussing the Motion with Defendants' other counsel | Schwartz | 4.5 | $1,350 |

---

[11] Paralegal information is not available for commercial litigation in Los Angeles. (*See* Real Rate Report 44.)

| Work Performed | Biller | Hours Billed | Sub-Total |
|---|---|---|---|
| Time spent drafting the slack Motion and the supporting documents including the motion to seal. | Chamberlin | 19.2 | $2,880 |
| Time spent drafting templates for the motion and supporting documents. | Saller | 1.2 | $240 |
| Time spent revising the motion and supporting documents. | Saller | 13.7 | $2,740 |
| **Subtotal:  Preparation of the Motion** | | **56.8** | **$15,670** |
| | | | |
| **INFORMAL DISCOVERY CONFERENCES** | | | |
| Time spent preparing for and attending informal discovery conferences prior to the Original Slack Motion being filed. | Tate | 4.6 | $2,162 |
| Time spent preparing for and attending informal discovery conferences prior to the Original Slack Motion being filed. | Close | 2.1 | $945 |
| Draft IDC request | Schwartz | 2.5 | $750 |
| **Subtotal:  Informal Discovery Conferences** | | **9.2** | **$3,857** |
| | | | |
| **DOCUMENT REVIEW** | | | |
| Time spent reviewing the Slack documents to ensure that the production was complete | Tate | 0.5 | $235 |
| Time spent reviewing the Slack documents to ensure that the production was complete | Chamberlin | 0.4 | $60 |
| **Subtotal:  Document Review** | | **0.9** | **$295** |
| | | | |
| **MEET AND CONFER** | | | |
| Time spent meeting and conferring with opposing counsel | Tate | 1.0 | $470 |
| **Subtotal:  Meet and Confer** | | **1.0** | **$470** |
| | | | |
| **CLIENT / TEAM COMMUNICATIONS** | | | |
| Time spent communicating with the clients and Defendants' other attorneys about the resolution of the Slack issue | Tate | 2.0 | $940 |

25

| Work Performed | Biller | Hours Billed | Sub-Total |
|---|---|---|---|
| Time spent communicating with the clients and Defendants' other attorneys about the Slack issue | Close | 0.4 | $180 |
| **Subtotal:  Client/Attorney Communications** | | **2.4** | **$1,120** |
| | | | |
| **TOTAL** | | 70.3 | **$21,412** |

(Tate Suppl. Decl. ¶¶ 12.a.iii, 12.b.iii, 12.c.iii, 12.d.iii, 12.e.iii.)

Defendants note that, consistent with the Court's April 10, 2024 order requiring supplementation, this itemization is limited to the fees incurred in connection with the Motion.  (Suppl. Mot. 8.)  Nevertheless, they request an opportunity to seek the attorneys' fees and costs associated with meeting and conferring regarding, and attending, the five Status Conferences that followed the filing of the Motion.  (*Id.*)

BCS challenges the number of hours requested by Defendants, arguing that the fees attributed to the following tasks are not recoverable because they are part and parcel of the normal course of discovery:  (1) meeting and conferring with opposing counsel, (2) communicating with clients, (3) preparing for and attending informal discovery conferences prior to the filing of the Motion, and (4) reviewing the Slack documents.  (Suppl. Mot. 13–14.)  In addition, BCS challenges the number of hours spent on preparing the Motion and asks the Court to reduce the number of hours to a reasonable minimum. (*Id.* at 14.)  Finally, BCS does not respond to Defendants' request to seek the attorneys' fees and costs expended in connection with the five Status Conferences.  (*See generally* Suppl. Mot.)

The Court addresses each challenge in turn and, for the reasons stated below, concludes that the some of the hours requested by Defendants are excessive and/or unrecoverable under Rule 37 and reduces the requested attorneys' fees from $21,412 to **$15,342**.

///

26

(i)    The 56.8 hours requested for the preparation of the Motion are not fully warranted.

Defendants request a combined 56.8 hours for preparing the Motion.  They clarify that the hours sought are those expended by Defendants in relation to what Defendants call, without expressly defining, the "Original Slack Motion."  (Suppl. Mot. 8.)  BCS argues that these hours should be reduced to a reasonable, but unspecified, amount because it is unclear to which of Defendants' three Slack-related motions the hours pertain.  (Suppl. Mot. 14.)

BCS is correct that Defendants have filed three Slack-related motions: (1) the motion for discovery and other sanctions filed on March 23, 2023, which the Court struck as a disguised discovery motion filed without first participating in the required IDC procedure (March 2023 Mot.; March 28, 2023 Order); (2) the motion for discovery sanctions filed on June 14, 2023, which the Court struck because it was not filed in the form of a joint stipulation as required by Local Rule 37-2 (June 2023 Mot.; ECF No. 72); and (3) the instant Motion (ECF No. 94).   However, the Court is not confused.  In light of Defendants' request for an opportunity to seek attorneys' fees for the five Status Conferences "which were held after the Original Slack Motion was filed" (Suppl. Mot. 8), the Court reverse-engineers the reference and concludes that the "Original Slack Motion" can only mean the instant Motion.

With that issue resolved, the Court now turns to a consideration of whether an award of 56.8 hours is warranted.  As a starting point, the documented 56.8 hours exceed those awarded in this district for the preparation of a discovery motion by at least forty-seven percent (47%).  *See, e.g., Nguyen v. Regents of the Univ. of Cal.,* No. 8:17-cv-00423-JVS-KESx, 2018 U.S. Dist. LEXIS 226622, at *9–12 (C.D. Cal. May 18, 2018) (approving 38.9 hours for the preparation of a joint stipulation); *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 2:18-cv-9768-FMO (KSx), 2019 U.S. Dist. LEXIS 221869, at *18 (C.D. Cal. Nov. 8, 2019) (approving 32 hours for the preparation of a discovery motion).   However, the Motion did not

stand alone; rather, it was supported by two declarations totaling 19 pages (ECF Nos. 94-1,94-26) and approximately 500 pages of exhibits (ECF Nos. 94-2–25, 94-27–31), all of which take time to compile and assemble.  In addition, because certain documents had been designated by BCS as "Confidential" under the Stipulated Protective Order issued in this case (ECF No. 29), Defendants were forced to file an application to file four exhibits under seal, which involved approximately 185 pages of documents (ECF Nos. 95, 96).  For these reasons, the Court finds that 56.8 hours represents a reasonable amount of time for the preparation of the Motion as written, yielding an award of $15,670.00.

In addition, the Court recognizes that Defendants spent time preparing the Supplemental Motion requested by the Court to include supporting evidence that was not provided in the original Motion.  (*See generally* April 10 Order.)  However, in requesting the Supplemental Motion, the Court prohibited the addition of any hours beyond those sought in the Motion.  (*Id.*)  Thus, the Court has no information regarding the amount of time spent on the preparation of the Supplemental Motion.  Nevertheless, in the interest of fairness, and considering the complexity of the legal arguments raised therein, the Court adds five (5) hours to Defendants' total hours for motion preparation.  Assuming the same $275.89 blended hourly rate as for the Motion,[12] this yields an award of $1,379.45 for the Supplemental Motion.

That said, the Court notes that Defendants were only partially successful in the Motion.  The Motion sought two orders—a second order to compel the production of the Slack documents and an initial order awarding sanctions for BCS's failure to comply with the Court's discovery orders—the former herein found to be unnecessary.  (*See* Section III.A., *supra*.)  Thus, the Court must discount the hours Defendants' counsel spent working on the unnecessary, and denied, portion of the Motion.  *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)

---

[12] Calculated by dividing the $15,670.00 fees by to the 56.8 hours.

("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained".)  While not based on "exact science," the Court finds it appropriate to strike thirty percent (30%) of the 61.8 hours for the preparation of the Motion and Supplemental Motion by each biller.

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' request for attorneys' fees expended in the preparation of the Motion and the Supplemental Motion.  The Court will award a total of **<u>43.3 hours</u>**, and based on the applicable hourly rates, **<u>$11,935</u>**, for this category of work.

(ii)    <u>The 9.2 hours requested for time spent in informal discovery conferences are not fully warranted</u>.

Defendants request a combined 9.2 hours for preparing for and attending informal discovery conferences held before the filing of the Motion, including the preparation of the Request for Informal Discovery Conference.  (*See supra.*)  BCS objects to any award of fees for hours related to informal discovery conferences because the Court's local rules contemplate the need for, and provide a mechanism for, discovery dispute resolution which includes informal discovery conferences. (Suppl. Mot. 13.)  It notes that Defendant's "request for fees for engaging in a mandatory process intended to avoid motion practice makes no sense and would undermine the Court's established process for resolving discovery disputes." (*Id.*)

Courts in this Circuit have awarded attorneys' fees under Rule 37 for time spent preparing for and attending informal discovery conferences.  *See, e.g., MP Nexlevel of Cal, Inc. v. CVIN, LLC*, No. 1:14-cv-00288-LJO-EPG, 2016 U.S. Dist. LEXIS 139407, at *10 (E.D. Cal. Oct. 5, 2016) (awarding attorneys' fees under Rule 37(b)(2)(C) for time spent preparing for and participating in informal discovery conference); *Alutiiq Int'l Sols., LLC v. Lyon*, No. 2:11-cv-01104-GMN-PAL, 2012 U.S. Dist. LEXIS 133070, at *10–11 (D. Nev. Sept. 17, 2012) (awarding attorneys' fees under Rule 37(a)(3) for preparing for and attending

multiple discovery conferences); *Project Sentinel v. Komar*, No. 19-CV-00708 DAD-EPG, 2020 U.S. Dist. LEXIS 119048, at *26 (E.D. Cal. July 6, 2020) (including fees for participating in informal discovery conference in Rule 37(a)(5)(A) award); *Maclay v. Sahara*, No. C12-512-RSM, 2012 U.S. Dist. LEXIS 177516, at *10 n.5 (W.D. Wash. Dec. 14, 2012) (awarding attorneys' fees under Rule 37(a)(5)(A) for time spent preparing for and attending discovery conference).

Here, Defendants prepared for and attended three informal discovery conferences that involved BCS's production of the Slack communication documents—IDC 3 on April 18, 2023, IDC 4 on April 24, 2023, and IDC 5 on May 1, 2023.  IDC 3 lasted two hours (*see* IDC 3 Order); IDC 4 lasted two hours and ten minutes (*see* IDC 4 Order); and IDC 5, where the first order compelling BCS's production of the Slack communication documents was issued, lasted two hours and ten minutes (*see* IDC 5 Order), for a total of six hours and ten minutes. Defendants seek a combined total of 6.7 hours for the work of two attorneys preparing for and attending the three conferences; thus, there does not appear to be any duplication and it appears that Defendants already have reduced their preparation and attendance time substantially.  Defendants also seek 2.5 hours in preparing the informal discovery conference request.  The Court finds this amount of time to be excessive given that (1) informal discovery conference requests are one page, of which each side prepares one half, and (2) the request was prepared by an attorney of Mr. Schwartz's extensive litigation experience (*see* Tate Decl. ¶ 34.c.i.; Suppl. Tate Decl., ¶ 12.c.i.).  As such, the Court finds it appropriate to reduce the hours for preparing the informal discovery conference request from 2.5 hours to 1 hour, at Mr. Schwartz's $300.00 hourly rate, for a total reduction of $450.00.  Thus, the Court will award **7.7 hours** for the preparation for and attendance of IDCs 3, 4, and 5 and the preparation of the informal discovery conference request, for a total of **$3,407.00**.

///

1                    (iii)     <u>The 0.9 hours requested for document review are</u>

2                                  <u>not recoverable.</u>

3        Defendants request a combined 0.9 hours for review of BCS's supplemental

4 Slack document production to determine if it was complete.  (*See supra.*)  BCS

5 objects to any award of fees for hours related to this document review because

6 "Defendants would have had to review the Slack documents regardless of when and

7 how they were produced," and any such time necessitated by the filing of any

8 discovery motion should be encompassed in the time spent drafting those motions.

9 (Suppl. Mot. 14.)

10        Time spent reviewing documents produced in discovery generally is not

11 recoverable under Rule 37.  *See, e.g., Notorious B.I.G. LLC v. Yes Snowboards*, No.

12 CV 19-1946-JAK (KSx), 2021 U.S. Dist. LEXIS 252735, at *17–19 (C.D. Cal.

13 Dec. 22, 2021) (finding that time spent reviewing documents are not recoverable

14 under Rule 37 because they "do not reflect additional work caused by . . . failure to

15 comply with the Court's Order" and "reflect general discovery tasks that would

16 have to be done whether or not Defendant complied with the Court's Order"); *True*

17 *Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG (DMR), 2015

18 U.S. Dist. LEXIS 70620, at *8–9 (N.D. Cal. Feb. 27, 2017) (declining to award

19 Plaintiffs' fees for time spent reviewing Defendants' documents "because that is a

20 task Plaintiff would have had to perform 'in any event' in order to properly evaluate

21 their claims"); *Logtale, Ltd. v. IKOR, Inc.*, No. C-11-5452 EDL (DMR), 2015 U.S.

22 Dist. LEXIS 16853, at *18 (N.D. Cal. Feb. 11, 2015) ("Reviewing documents

23 produced in discovery is part of the normal course of litigation, and Plaintiff has not

24 shown that it would not have reviewed those documents but for Defendants'

25 discovery misconduct").  *But see DCD Partners, LLC v. Transam. Life Ins. Co.*,

26 No. 2:15-cv-03238-CAS (GJSx), 2018 U.S. Dist. LEXIS 226010, at *6–8 (C.D.

27 Cal. June 13, 2018) (acknowledging that several district courts have excluded fees

28 for document review from Rule 37(b)(2)(C) sanction awards, but awarding fees

1  where the document review "was performed solely to assess the adequacy of

2  defendant's production and defendant's compliance with the court's orders, rather

3  than for substantive purposes").

4          The Court is persuaded by the reasoning of the courts finding that document

5  review is not recoverable under Rule 37.  Although Defendants did review the

6  supplemental Slack document productions in temporal relation to the Motion,

7  Defendants would have had to review these documents whether or not a motion was

8  pending.  There was nothing unique or particular about the Court's May 1, 2023

9  and August 8, 2023 orders regarding the Slack production that would have required

10  an extraordinary or uncommon review to ensure compliance therewith; they merely

11  ordered BCS to produce the Slack documents, the completeness of which

12  production Defendants would have had to review regardless of whether it followed

13  a court order or not.  (*See* IDC 5 Order 1 ("Plaintiff shall produce to Defendants . . .

14  the relevant, non-privileged documents of the subset of 919 documents that remain

15  from the original 1,148 document collection of Slack documents, **by no later than**

16  **May 5, 2023**."); *see also* Aug. 8, 2023 Order 1 ("Pursuant to the agreement of the

17  parties, Plaintiff is **ORDERED** to complete its production of Slack documents to

18  Defendants by no later than **August 18, 2023**.").)  For this reason, the Court

19  **DENIES** Defendants' request for 0.9 hours of document review.

20                              (iv)    The 1.0 hour requested for meeting and conferring

21                                      is not factually supported.

22          Defendants request one hour for its counsel to meet and confer with BCS.

23  (*See supra.*)  BCS objects to any award of fees for meeting and conferring to

24  resolve the discovery dispute because such conferences are embedded into the

25  process that is intended to resolve the dispute.  (Suppl. Mot. 13.)

26          "Courts are divided on the compensability of [time spent meeting and

27  conferring], but the prevailing view is that they are not."  *Infanzon v. Allstate Ins.*

28  *Co.*, 335 F.R.D. 305, 314 (C.D. Cal. 2020) (finding that attorneys' fees for meeting

and conferring are not compensable under Rule 37(a) and Rule 37(b)).  *Compare, e.g., Notorious B.I.G. LLC v. Yes Snowboards*, No. CV 19-1946-JAK (KSx), 2021 U.S. Dist. LEXIS 252735, at *19–20 (C.D. Cal. Dec. 22, 2021) (explaining that "[c]ourts in this Circuit generally hold that time spent to meet and confer is not recoverable" and denying attorneys' fees for meeting and conferring under Rule 37(b)(2)(C)), *and Halo Unlimited, Inc. v. Anthem Blue Cross Life & Health Ins. Co*., No. 8:20-cv-00399-JAK-KES, 2023 U.S. Dist. LEXIS 13864, at *14 (C.D. Cal. Jan. 25, 2023) (concluding that attorneys' fees for meet-and-confer efforts are not compensable under Rule 37(b)(2)(C)), *with DCD Partners, LLC v. Transam. Life Ins. Co*., No. 2:15-cv-03238-CAS (GJSx), 2018 U.S. Dist. LEXIS 226010, at *8–10 (C.D. Cal. June 13, 2018) (discussing split in authority but awarding fees and costs for meet-and-confer efforts under Rule 37(b)(2)(C)), *and Andreoli v. Youngevity Int'l, Inc.*, No. 16-cv-02922-BTM-JLB, 2019 U.S. Dist. LEXIS 100298, at *26–27 (S.D. Cal. June 14, 2019) (awarding attorneys' fees, pursuant to Rule 37(b)(2)(C), incurred from meet-and-confer efforts), *and Premiere Innovations, Inc. v. Iwas Indus., LLC*, No. 07cv1083-BTM(BLM), 2009 U.S. Dist. LEXIS 142894, at *8 (S.D. Cal. May 8, 2009) (awarding attorneys' fees for meeting and conferring pursuant to Rule 37(b)).

Here, the Court need not decide whether meet-and-confer fees are recoverable because, even if they were, the Court would be constrained from approving such a request in that the relevant billing entry—"Time spent meeting and conferring with opposing counsel"—is devoid of any information that would inform the question of when this meet-and-confer occurred and its subject matter. (*See supra*.)  While Defendants note that the fees requested are those in connection with the bringing of the Motion (Mot. 26), it remains unclear whether the conference/s was/were for the purpose of compelling the production in the first instance—fees the Court would not approve because they are not permitted under Rule 37(a)(5)—or for seeking compliance with the Court's orders—fees the Court

1   would consider under Rule 37(b)(2)(C) if the evidence supported it.  Courts

2   reviewing hours billed for purposes of a lodestar calculation have the discretion to

3   discount hours that are impermissibly vague and do not appear to pertain to the

4   preparation of the discovery motion.  For example, in *Dubose v. Cty. of Los*

5   *Angeles*, No. CV 09-7832 CAS (AJWx), 2012 U.S. Dist. LEXIS 81362, at \*14–18

6   (C.D. Cal. June 11, 2012), the court imposed a 20% across-the-board reduction on

7   fees because they were, among other things, not related to the motion.  *Id.*

8   Similarly, in *Sandoval v. Yeter*, CV 18-0867-CBM (JPRx), 2019 U.S. Dist. LEXIS

9   227406, at \*9–10 (C.D. Cal. Oct. 31, 2019), the court discounted time entries on the

10  ground that they were not for motion-related work.  *Id.*  For this reason, the Court

11  **DENIES** Defendants' request for 1.0 hour of meeting and conferring.

12                                    (v)    <u>The 2.4 hours requested for communicating with</u>

13                                           <u>clients and among counsel are not recoverable</u>.

14          Defendants request a combined 2.4 hours for the time its counsel spent

15  communicating with them and among the litigation team regarding the Motion.

16  (*See supra*.)  Although BCS objects to an award of such fees, it does not set forth

17  the basis for its objection.  (Suppl. Mot. 13–14.)   Still, the Court is not aware of

18  any authority, and Defendants offer none, that contemplate awarding attorneys' fees

19  for the very basic function of communicating with a client and with the litigation

20  team about the litigation.  *See, e.g., Notorious B.I.G. LLC v. Yes Snowboards*, No.

21  CV 19-1946-JAK (KSx), 2021 U.S. Dist. LEXIS 252735, at \*17–19 (C.D. Cal.

22  Dec. 22, 2021) (finding that hours spent conferring with clients and counsel are not

23  recoverable under Rule 37 because they "do not reflect additional work caused by .

24  . . failure to comply with the Court's Order" and "reflect general discovery tasks

25  that would have to be done whether or not Defendant complied with the Court's

26  Order").  For this reason, the Court **DENIES** Defendants' request for 2.4 hours of

27  their attorneys communicating with them and among themselves.

28  ///

1        (vi)    <u>Fees for attending five post-Motion Status</u>

2        <u>Conferences are not justified.</u>

3        Defendants request an opportunity to further supplement the Motion for the

4 purpose of seeking fees related to their preparation for, and attendance at, the five

5 Status Conferences that followed the filing of the Motion.  (Suppl. Mot. 8; ECF

6 Nos. 104, 106, 116, 135, 138.)  The Court finds that an award of such fees is not

7 warranted.  Each of the five Status Conferences was necessitated by Defendants'

8 having jumped the proverbial gun and filed the Motion after being informed that

9 BCS intended to produce Slack documents two days after the Motion was to be

10 filed, which triggered the question whether the Motion would become moot in two

11 days.  The first Status Conference—convened on July 25, 2023—was completely

12 unproductive because, despite having been served with a production of Slack

13 documents by BCS eleven days earlier, Defendants were not prepared to advise the

14 court if that document production was complete and thereby mooted the Motion.

15 (ECF No. 104.)  At the three Status Conferences that followed—July 27, 2023,

16 August 8, 2023, August 29, 2023—the parties reported that new issues had arisen in

17 connection with BCS's Slack document production necessitating more time to meet

18 and confer to resolve Defendants' new concerns.  (ECF Nos. 106, 116, 135.)  It was

19 not until the final Status Conference—September 12, 2023—that Defendants were

20 able to report to the Court that the production had been completed on September 8,

21 2023 and all issues were resolved.  (Sept. 12 Slack Conf. 1.)  Thus, the Status

22 Conference process that followed the filing of the Motion was one in which the

23 parties would have had to engage even without the filing of the Motion as BCS

24 continued to supplement its document production.  As such, the Court **DENIES**

25 Defendants' request to further supplement the Motion to include a request for fees

26 associated with those Status Conferences.

27 ///

28 ///

35

c.    *The re-calculated Lodestar results in an attorneys' fees*
*award of $15,342 and no Kerr adjustment is necessary.*

The Court re-calculates the lodestar for a total of $15,342 as follows:

| Work Performed | Approved Hours | Sub-Total |
|---|---|---|
| Subtotal:  Preparation of the Motion | 43.3 | $11,935 |
| Subtotal:  Informal Discovery Conferences | 7.7 | $3,407 |
| Subtotal:  Document Review | 0.0 | $0 |
| Subtotal:  Meet and Confer | 0.0 | $0 |
| Subtotal:  Client/Team Communications | 0.0 | $0 |
| Subtotal:  Post-Motion Status Conferences | 0.0 | $0 |
| **TOTAL** | **51.0** | **$15,342** |

Neither party requests an adjustment to the lodestar based on the *Kerr* factors.  (*See generally* Mot.)  Indeed, upon a review of the *Kerr* factors not already subsumed within the lodestar, the Court sees no reason to make such an adjustment. On this basis, the final attorneys' fee award pursuant to Rule 37(b)(2)(C) is $**15,342**.

**D.    BCS Is Responsible for Paying the Sanction.**

Defendants request that the Court impose the requested monetary sanctions against BCS and its counsel, but sets forth no argument as to why counsel, in addition to BCS, should be sanctioned.  (Mot. 6.)  Beyond stating that there is no basis for sanctions against either BCS or its counsel, BCS does not address who should be responsible for paying any awarded monetary sanctions.  (*Id*. at 8; 27–28.)  Based on its review of the record, the Court imposes the sanctions ordered herein against BCS only.  The Court finds no reason to order BCS's counsel to pay the mandated sanctions.  *See, e.g., Lee v. Dennison*, No. 2:19-cv-1332-KJD-DJA, 2020 U.S. Dist. LEXIS 185985, at *13 (D. Nev. Oct. 7, 2020) (declining to impose sanctions against counsel in addition to sanctioned party because the "parties

36

expressed no opinion on this aspect" and the court found "no reason to include Plaintiff's counsel" in the monetary sanctions order).

## IV.    ORDER

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion as follows:

1.    The production component of Defendants' Motion is **DENIED as moot**.

2.    The monetary sanctions component of Defendants' Motion is **GRANTED in part** and **DENIED in part**.  BCS is **ORDERED** to pay Defendants' attorneys' fees in the amount of **$15,342** by **no later than thirty (30) days after the date of this Order** or on a later date or dates by agreement of the parties or further order of the Court upon properly-noticed motion.

3.    BCS is **ORDERED** to (a) serve, pursuant to Rule 4, a copy of this Order on every person who, as of the date of this Order, held or holds a position as Member of BCS's Board of Directors ("Current Board Member") or Officer of BCS ("Current Officer") by **no later than fourteen (14) days after the date of this Order**, and (b) file either (i) a proof of such service, or (ii) an under-oath declaration by the highest ranking Current Board Member or Current Officer as to why any such service has not been made, by **no later than twenty-one (21) days after the date of this Order**.

4.    BCS is **ORDERED** to (a) serve, pursuant to Rule 4, a copy of this Order on every person who, subsequent to the date of this Order, takes on a position as Member of BCS's Board of Directors ("Future Board Member") or Officer of BCS ("Future Officer") by **no later than seven (7) days after such person takes on such position**, and (b) file either

(i) a proof of such service, or (ii) an under-oath declaration by the then highest ranking Board Member or Officer as to why such service has no been made, by **no later than fourteen (14) days after such person takes on such position**.  This is an ongoing obligation that expires only at such time as BCS has fully complied with the Order to pay to Defendants the sum of $15,342.

5.      **BCS is hereby cautioned that failure to obey this Order, including making payment on a <u>timely</u> basis, may result in the imposition of further sanctions pursuant to Rule 37(b), including treating its failure to obey this Order as contempt of court.  BCS also is cautioned that instead of or in addition to the above sanctions, the Court could order BCS, its attorney, or both, to pay the reasonable expenses, including attorneys' fees, caused by their failure to comply with this Order.**

4.      **BCS's Current and Future Officers and Board Members are hereby cautioned that, under certain circumstances, they too could be held personally liable for sanctions, including sanctions for contempt of court, for BCS's failure to comply with this Order.**

DATED:  July 25, 2024

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE