# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE MCNAMARA, et al.,<br><br>Defendants. | Case No. 2:22-cv-02052-MAA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PAYMENT PLAN AND EXTENSION TO PAY DISCOVERY SANCTIONS AMOUNT (ECF No. 218)** |

## I. INTRODUCTION

Before the Court is Plaintiff Breaking Code Silence's ("BCS") Motion for Payment Plan and Extension to Pay Discovery Sanctions Amount ("Motion"). (Mot., ECF No. 218.) Through the Motion, BCS seeks an order approving a plan it proposes for payment of the Court's July 25, 2024 sanctions order for $15,342.00.[1] In support of the Motion, BCS filed the Declaration of Jennifer Magill ("Magill Declaration"). (Magill Decl., ECF No. 218-1.)

---

[1] Plaintiff misstates the Court's order as $15,432.00. (*See generally* Mot.) The correct amount is $15,342.00, which the Court uses throughout its Order. (*See generally* ECF No. 212.)

Defendants Katherine McNamara and Jeremy Whiteley (collectively, "Defendants") filed an opposition to the Motion ("Opposition"). (Opp., ECF No. 220.) In support of their Opposition, Defendants filed the Declaration of M. Adam Tate (ECF No. 220-1) and its accompanying Defendants' Exhibit 1 (Defs.' Ex. 1, ECF No. 220-2).

BCS filed a reply to the Opposition ("Reply"). (Reply, ECF No. 222.) In support of its Reply, BCS filed the Declaration of John S. Gibson (ECF No. 222-1) and its accompanying BCS Exhibit 1 (ECF No. 222-2).

Having read and considered the papers by the parties and other records in this case, the undersigned finds the Motion suitable for disposition without a hearing. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. On this basis, the Court vacated the September 27, 2024 hearing date. (ECF No. 223.) For the reasons set forth below, the Court **DENIES** the Motion.

## II. FACTUAL BACKGROUND

On July 25, 2024, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Compel Slack Communications and Sanctions ("Slack Order"). (Slack Order, ECF No. 212.) Through the Slack Order, BCS was ordered to pay Defendants the sum of $15,342.00 as and for monetary sanctions in connection with the parties' Slack document discovery dispute. (*Id.* at 38.)[2] Payment was due thirty days after the date of the order, or on a different schedule either by agreement of the parties or further order of the court. (*Id.*) On July 30, 2024, BCS began negotiations with Defendants regarding a payment plan. (Mot. 3.) Unable to reach an agreement, this Motion followed on August 26, 2024. (*See generally* Mot.)

///

---

[2] Pinpoint citations of page numbers in this Order refer to the page numbers appearing in the ECF-generated headers of the cited documents.

Through the Motion, BCS seeks approval of the payment plan proposed to, but rejected by, Defendants. (*See generally* Mot.)[3] Specifically, BCS proposes the following plan:

- An initial cash payment of $2,500.00 on or before September 30, 2024, to be funded by a BCS Board member who would borrow that amount;
- Quarterly payments of a minimum of 50% of all non-grant funds raised during the preceding quarter until the balance is paid in full, plus interest on the payment amount at an annualized rate of 5.5%, supported by a fund-raising accounting; and
- The final order of the Court to create a security interest on behalf of Defendants as to BCS, intended to protect Defendants should BCS dissolve or file for bankruptcy prior to completing the payment schedule.

(*Id.* at 3–5.)

BCS explains that this payment plan is necessary because it "finds itself in dire financial conditions" and must rely fully on its fundraising efforts to pay the ordered sanction. (Id. at 4–5, n.1.) It explains that it has less than $300.00 in its bank account, "has no liquid assets or other meaningful investments," and, significantly, "relies entirely on volunteers and charitable contributions to continue to operate." (*Id.* at 5.) BCS suggests that the ordered sanctions could be completely paid in a few quarters if its fundraising efforts are favorable, and points to positive past fundraising results, including a single donation of $5,000.00. (*Id.*)

///

///

---

[3] Actually, the payment plan proposed in the Motion is less robust than the payment plan offered to Defendants in that it proposes an initial cash payment that is fifty percent (50%) less than that offered to Defendants. (*Compare* Mot. 3–4 *with* Defs.' Ex. 1.) BCS explains that this decrease is due Magill's inability to secure a loan she sought to cover one-half of the initial cash payment. (Magill Decl. ¶ 6.)

3

## III. ANALYSIS

BCS urges the Court to exercise its discretion to set the payment terms of its ordered sanction, and relies on *Burkhardt v. Golden Aluminum, Inc.*, No. 22-cv-01573-NYW-MEH, 2024 U.S. Dist. LEXIS 1368, at *8–10 (D. Colo. Jan. 3, 2024), in support of this request.  But even exercising the discretion exemplified in *Burkhard* to consider a payment plan, the Court is unconvinced that BCS's proposed plan is acceptable for the following reasons:  (1) there is insufficient credible evidence of BCS's claimed dire financial circumstances; (2) the proposed payment plan is illusory; and (3) the payment plan seeks to shift the risk of non-payment to Defendants.  The Court discusses each in turn.

### A. There is Insufficient Credible Evidence of BCS's Claimed Dire Financial Circumstances.

As a starting point, other than the self-serving Magill Declaration, BCS offers no evidence of the dire financial circumstances it claims.  (*See generally* Mot.)  It avers it has less than $300.00 in its bank account (Mot. 2) but provides no bank statement showing this amount (*see generally* Magill Decl.).  It avers that it has no liquid assets or investments (Mot. 5) but provides no Balance Sheet (*see generally* Magill Decl.).  It avers that it relies on contributions to operate (Mot. 5) but provides no Profit and Loss Statement (*see generally* Magill Decl.).[4]  Despite this, BCS argues in its Reply that it, indeed, has "presented credible evidence

---

[4] In connection with its April 2024 motion for voluntary dismissal of the case pursuant to Rule 41(a)(2), BCS made similar claims of financial duress.  (*See* ECF No. 198 at 2) ("Proceeding with the litigation under these circumstances would likely force BCS into bankruptcy or other financial predicament that could end its existence and prevent it from continuing its mission.")  The Court ordered BCS to submit, among other evidence in support of that argument, its Balance Sheet and Profit and Loss Statement.  (ECF No. 200 at 3.)  BCS did not comply with that order.  (*See generally* ECF No. 201.)

demonstrating that BCS has no means to timely pay the sanctions amount by the deadline." (Reply 2.) The Court disagrees. And, while BCS offers in its Motion to submit "additional documentation" in a redacted format (Magill Decl. at 2 n.1), it fails to do so in its Reply despite Defendants' explicit challenge to the veracity of Magill's assertions. (Opp. 2.) In any event, even if BCS were able to convince this Court of its claimed financial difficulties, the proposed payment plan is not acceptable.

### B. The Proposed Payment Plan is Illusory.

Other than the initial cash payment of $2,500.00, the plan for payment of the $12,842.00 balance is illusory. Although BCS argues that it just needs more time to raise the funds needed to pay the sanctions (Mot.5), it ignores the reality that its fundraising results turn not only on its *ability* to raise the funds, but also its *willingness* to do so. Both are in question.

*First*, BCS itself creates doubt as to its ability to raise funds by conceding that its fundraising has been, and could continue to be, negatively impacted by Defendants' criticism of BCS through various social media, including a website created by Defendants with a domain name "breakingcodesilencelawsuit.com." (Magill Decl. ¶ 4; Reply 2.) Although BCS points to one substantial donation of $5,000.00 in February 2022 as an example of its fundraising prowess (Mot. 5 (citing ECF No. 187-15)), it ignores that this generous donation was made before the public deterioration of the parties' relationship and before BCS filed this lawsuit against Defendants, leaving the Court to question the representative value of that event to today's acrimonious state of affairs. Indeed, the current disorder is punctuated by BCS's admission that it "has been receiving limited donations" and that "[i]t stands to reason that people will not donate to BCS while they are taken to such statements when they conduct a search on Google for 'Breaking Code Silence.'" (Mot. 3; Reply 2.) But while the Court is not unmindful of the

5

sorrowful plight the parties have created for themselves and each other through this and related litigation—previously described by the Court as "mutual assured destruction"[5]—BCS cannot now, after suing Defendants and being aware of the negative social media as it was taking the intransigent discovery positions that resulted in these monetary sanctions,[6] expect a different result.

*Next*, BCS does little, if anything, to reassure Defendants and the Court that it will undertake any efforts to raise the funds to begin with. Indeed, even if Defendants were to instantly shut down the website that purportedly negatively impacts BCS's fundraising, no funds could be raised unless BCS actually made the effort to raise them. But nowhere in the Motion does BCS offer a plan—let alone a commitment for which it could be held accountable—for its future fundraising activities. (*See generally* Mot.; *see generally* Reply.)

Blame whom it will for its fundraising struggles, the fact remains that BCS is so unsure it can deliver on its fundraising promises that conspicuously absent from

---

[5] The Court cautioned the parties in May 2023 that continuing with their discovery battles (including the battle regarding Slack documents that resulted in the sanctions at issue here) was an exercise in mutual assured destruction and that nobody would win from that. (Transcript, IDC 6, ECF No. 85 at 56.)

[6] The website BCS complains of—"breakingcodesilencelawsuit.com"—appears to have been in existence since May 2022. *See* "We are breaking code silence" (May 21, 2022, 6:35:04 AM), https://www.breakingcodesilencelawsuit.com [http://web.archive.org/web/20220521063504/https://www.breakingcodesilencelawsuit.com/]. A court "may take judicial notice on its own," Fed. R. Evid. 201(c)(1), and "district courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule." *Metricolor LLC v. L'oreal S.A.*, No. 2:18-CV-00364-CAS(Ex), 2020 U.S. Dist. LEXIS 119052, at *23 (C.D. Cal. July 7, 2020); *In re Facebook, Inc. Sec. Litig.*, 405 S. Supp. 3d 809, 829 (N.D. Cal. 2019); *Erickson v. Nebraska Machinery Co.*, No. 15-cv-01147-JD, 2015 U.S. Dist. LEXIS 87417, at *4 n.1 ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

its offer are any personal guarantees of dollars certain for future installments from its officers and directors. (*See* Mot. 3–4.) BCS's offer to create some unspecified security interest against itself by operation of a Court order (*see id.*) lacks even a modicum of clarity that would compel any meaningful consideration. BCS provides no explanation of the security interest that would be created, its maturity date, its interest rate, its priority position over other existing security interests (if any), and, most importantly given its alleged financial situation, the collateral (if any) that would back that security. (*See id.*)

On this basis, the Court finds the proposed payment plan to be illusory.

### C. The Proposed Payment Plan Seeks to Shift the Risk of Non-Payment to Defendants.

Finally, the Court agrees with Defendants that this payment plan seeks to shift the risk of non-payment to Defendants. (Opp. 2.) Other than Director Vanessa Hughes's proposed contribution of the first $2,500.00, no BCS officer or director—or anyone else associated with BCS—is willing (or able) to step up and loan BCS the money to pay this debt on the same terms BCS seeks to impose on Defendants. Instead, the proposed payment plan, in effect, seeks an order making Defendants the involuntary lenders to BCS and the unwilling, but obligatory, underwriters of its debt. This the Court cannot do.

* * *

For the reasons stated above, the Court is unconvinced that BCS's proposed payment plan would result in full payment to Defendants in any meaningful period of time or at all.

///

///

## IV. CONCLUSION

On the basis of the foregoing, the Court **DENIES** BCS's Motion. Accordingly, the Court **ORDERS** as follows:

1. In light of the passage of the original payment deadline on the Court's July 25, 2024 Order, the Court hereby **EXTENDS** the payment due date to **no later than thirty (30) days after the date of this Order**.

2. BCS is **ORDERED** to (a) serve, pursuant to Rule 4, a copy of this Order on every person who, as of July 25, 2024, held or holds a position as Member of BCS's Board of Directors ("Current Board Member") or Officer of BCS ("Current Officer") by **no later than fourteen (14) days after the date of this Order**, and (b) file either (i) a proof of such service, or (ii) an under-oath declaration by the highest ranking Current Board Member or Current Officer as to why any such service has not been made, by **no later than twenty-one (21) days after the date of this Order**.

3. BCS is **ORDERED** to (a) serve, pursuant to Rule 4, a copy of this Order on every person who, subsequent to July 25, 2024, takes or took on a position as Member of BCS's Board of Directors ("Future Board Member") or Officer of BCS ("Future Officer) by **no later than seven (7) days after such person takes or took on such position**, and (b) file either (i) a proof of such service, or (ii) an under-oath declaration by the then highest ranking Board Member or Officer as to why such service has not been made, by **no later than fourteen (14) days after such person takes or took on such position**. This is an ongoing obligation that expires only at such time as BCS has fully complied with the Court's July 25, 2024 Order to pay to Defendants the sum of $15,342.00.

///

4. **BCS is hereby cautioned that failure to obey this Order, including making payment on a <u>timely</u> basis, may result in the imposition of further sanctions pursuant to Rule 37(b), including treating its failure to obey this Order as contempt of court. BCS also is cautioned that instead of or in addition to the above sanctions, the Court could order BCS, its attorney, or both, to pay the reasonable expenses, including attorneys' fees, caused by their failure to comply with this Order.**

5. **BCS's Current and Future Officers and Board Members are hereby cautioned that, under certain circumstances, they too could be held personally liable for sanctions, including sanctions for contempt of court, for BCS's failure to comply with this Order.**

DATED: September 17, 2024

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE